# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### NEWPORT NEWS DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| MICHAEL D. VICK, | ) Case No. 08-50775 (FJS) |
| | ) |
| Debtor. | ) |
| | ) |

---

## DEBTOR'S MEMORANDUM OF LAW IN SUPPORT OF CONFIRMATION OF DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION

---

Michael V. Blumenthal, Esq.
Steven B. Eichel, Esq.
Crowell & Moring LLP
590 Madison Avenue – 20th Floor
New York, New York 10022
Telephone:     (212) 223-4000
Facsimile:     (212) 223-4134
Counsel for the Debtor
and

Paul K. Campsen, Esq. (VSB No. 18133)
Dennis T. Lewandowski, Esq. (VSB No. 22232)
Kaufman & Canoles, a professional corporation
150 W. Main Street, Suite 2100
Norfolk, Virginia 23510
Telephone:     (757) 624-3000
Facsimile:     (757) 624-3169
Counsel for the Debtor

Dated:  August 25, 2009

<u>**PRELIMINARY STATEMENT**</u>

On July 7, 2008 (the "Petition Date"), Michael D. Vick, the debtor and debtor in possession (the "Debtor"), filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Virginia, Newport News Division (the "Bankruptcy Court").

On July 2, 2009, the Debtor filed his third amended plan of reorganization ("Plan") and an accompanying disclosure statement ("Disclosure Statement") (Docket No. 703). On July 30, 2009, the Debtor filed conforming amendments to the Disclosure Statement (Docket Nos. 744 and 745) and to the Plan. By order dated August 2, 2009, the Bankruptcy Court approved the Disclosure Statement (Docket No. 749).

The Debtor submits this memorandum of law in support of the confirmation of the Plan.[1] In formulating the Plan, the Debtor, after extensive negotiations, reached an agreement with counsel to the Official Committee of Unsecured Creditors (the "Committee") and with Joel Enterprises, Inc. ("JEI") resulting in a Plan that maximizes the potential recovery for creditors. The Department of Labor, the Internal Revenue Service and Old Point National Bank each filed objections to the Plan. The Debtor has resolved these objections and now seeks confirmation of his Plan.

<u>**VOTING**</u>

**I.     All Classes Voted to Accept the Plan.**

On August 25, 2009, Kaufman & Canoles filed the certification of Paul K. Campsen, which summarizes the ballots voted by the Debtor's creditors listed in the voting report (the "Ballot Report") (Docket No. 790).

---

[1] Unless otherwise noted, capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan.

Creditors in Classes 1 through 4 are impaired under the Plan and are entitled to vote on the Plan. As indicated in the Ballot Report, creditors in Classes 1, 2, 3 and 4 voted to accept the Plan (collectively, the "Accepting Classes"). Although the sole member of Class 4 voted to accept the Plan, its vote was one day late. The Debtor has accepted the ballot. Even if the vote is not counted and Class 4 is deemed to reject the Plan, the Debtor can confirm the Plan under § 1129(b) as set forth below.

## II. Modifications To The Plan Do Not Materially And Adversely Affect Any Holders Of Claims.

To resolve a number of objections to the Plan, the Debtor has made certain non-material modifications to the Plan.

Section 1127(a) of the Bankruptcy Code provides a plan proponent the right to modify the plan "at any time" before confirmation,[2] and section 1127(d) provides that all parties that previously have accepted the plan also should be deemed to have accepted the modified plan.[3] Courts routinely allow proponents to make non-material changes to a plan without requiring the proponent to resolicit the plan for acceptances.[4]

---

[2] 11 U.S.C. § 1127(a) provides:

> The proponent of a plan may modify such plan at any time before confirmation, but may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and 1123 of this title. After the proponent of a plan files a modification of such plan with the court, the plan as modified becomes the plan.

[3] 11 U.S.C. § 1127(d) provides:

> Any holder of a claim or interest that has accepted or rejected a plan is deemed to have accepted or rejected, as the case may be, such plan as modified, unless, within the time fixed by the court, such holder changes such holder's previous acceptance or rejection.

[4] See, e.g., In re New Power Co., 438 F.3d 1113, 1117-18 (11th Cir. 2006) ("the bankruptcy court may deem a claim or interest holder's vote for or against a plan as a corresponding vote in relation to a modified plan unless the modification materially and adversely changes the way that claim or interest holder is treated"); In re Calpine, No. 05-60200 (Bankr. S.D.N.Y. Nov. 8, 2007) (approving immaterial modification to plan without requiring the debtors to resolicit the plan); In re Kmart Corp., No. 02 B 02474, 2006 WL 952042, at *27 (Bankr. N.D. Ill. Apr. 11, 2006 (if modification does not adversely change the treatment of claims, then resolicitation is not required); In re Winn-Dixie Stores, Inc., 356 B.R. 813, 823 (Bankr. M.D. Fla. 2006) (same), aff'd, 286 Fed. Appx. 619 (11th Cir. 2008).

The Debtor submits that all modifications to the Plan are non-material, technical changes that do not affect the recoveries of Holders of Claims.  As such, the Debtors are not required to re-solicit votes for Plan acceptances and all Holders of Claims that previously voted to accept the Plan should be deemed to accept the Plan as modified.[5]

## ARGUMENT

The Plan satisfies all of the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

**I.    The Plan Should Be Confirmed.**

To confirm the Plan, the Bankruptcy Court must find that the Debtor has satisfied the provisions of section 1129 of the Bankruptcy Code by a preponderance of the evidence.[6]  The Debtor submits that the Plan complies with all relevant sections of the Bankruptcy Code, Bankruptcy Rules and applicable non-bankruptcy law.  In particular, the Plan fully complies with the requirements of sections 1122, 1123 and 1129 of the Bankruptcy Code.  This memorandum addresses each requirement individually.

**A.    The Plan Complies With Applicable Provisions Of The Bankruptcy Code (Section 1129(a)(1)).**

Section 1129(a)(1) of the Bankruptcy Code requires that a plan of reorganization comply with the applicable provisions of the Bankruptcy Code.[7]  A principal objective of section

---

[5] See 11 U.S.C. § 1127(d).

[6] See In re Byrd Foods, Inc., 253 B.R. 196, 199 (Adams, J.) (Bankr. E.D. Va. 2000) (the debtor must demonstrate by a preponderance of the evidence that it meets all section 1129 requirements); In re DeLuca, Nos. 95-11924- AM, 95-11893, 1996 WL 910908, at *18 (Mitchell, J.) (Bankr. E.D. Va. Apr. 12, 1996) (a debtor's standard of proof for satisfying general confirmation requirements, including feasibility, is "the ordinary civil standard of preponderance of the evidence"); see also In re Bally Total Fitness of Greater New York, Inc., No. 07-12395, 2007 WL 2779438, at *3 (Bankr. S.D.N.Y. Sept. 17, 2007) ("The Debtors, as proponents of the plan, have the burden of proving the satisfaction of the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence.").

[7] 11 U.S.C. § 1129(a)(1); In re Schwarzmann, 203 B.R. 919, 923 (Tice, J.) (Bankr. E.D. Va. 1995) (a chapter 11 plan must meet all of the elements of section 1129 to be confirmed), aff'd, 103 F.3d 120 (4th Cir. 1996).

1129(a)(1) is to assure compliance with the sections of the Bankruptcy Code governing classification of claims and interests and the contents of a plan of reorganization.[8]  Accordingly, the determination of whether the Plan complies with section 1129(a)(1) requires an analysis of sections 1122 and 1123 of the Bankruptcy Code.  As explained below, the Plan complies with sections 1122 and 1123 in all respects.

> **1.  The Plan Satisfies The Classification Requirements Of Section 1122 Of The Bankruptcy Code.**

The Plan satisfies section 1122's classification requirements.  Section 1122 of the Bankruptcy Code provides:

> (a)  Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.

> (b)  A plan may designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience.[9]

Plan proponents have significant flexibility in placing similar claims into different classes, provided there is a rational basis to do so.  Bankruptcy courts have identified grounds justifying separate classification, including where members of a class possess different legal rights[10] and where there are good business reasons for separate classification.[11]

---

[8] See Kane v. Johns-Manville Corp. (In re Johns-Manville), 843 F.2d 636, 648-49 (2d Cir. 1988) (suggesting that Congress intended the phrase "'applicable provisions' in this subsection to mean provisions of chapter 11 . . . such as section 1122 and 1123."); In re Mirant Corp., No. 03-46590-DML-11, 2007 WL 1258932, at *7 (Bankr. N.D. Tex. Apr. 27, 2007) (objective of § 1129(a)(1) is to assure compliance with the sections of the Bankruptcy Code governing classification and the contents of a plan of reorganization); S. Rep. No. 989, 95th Cong., 2d Sess. 126 (1978); H.R. Rep. No. 595, 95th Cong., 1st Sess. 412 (1977).

[9] 11 U.S.C. § 1122.

[10] See Mirant Corp., 2007 WL 1258932, at *7 (permitting separate classification because holders of claims had different legal interests in the debtor's estate); In re Kaiser Aluminum Corp., No. 02-10429, 2006 WL 616243 (Bankr. D. Del. Feb. 6, 2006) (permitting classification scheme after consideration of the diverse characteristics of each class and creditors' legal rights), aff'd, 343 B.R. 88 (D.Del 2006).

[11] See In re Chateaugay Corp., 10 F.3d 944, 956-57 (2d Cir. 1993) (finding separate classification appropriate because classification scheme had a rational basis; separate classification based on bankruptcy court-approved

The Plan's classification of Claims and interests into 4 Classes satisfies the requirements of section 1122 because the Claims in each Class differ from the Claims in each other Class in a legal or factual nature or are based on other relevant criteria. Here, secured debt is classified separately from unsecured debt.[12] Moreover, each secured creditor and purported secured creditor is divided further into separate Classes according to their relative priority and the collateral securing their Claims.[13]

Thus, in each instance of separate classification, the Plan classifies Claims based upon the different rights and attributes of such Holders. As such, valid factual and legal reasons exist for classifying separately the various Classes of Claims under the Plan. Additionally, each of the Claims in each Class is substantially similar to the other Claims in such Class. Thus, the Plan satisfies section 1122 of the Bankruptcy Code.

> **2.      The Plan Satisfies the Eight Mandatory Plan Requirements Contained in Section 1123(a)(1)-(a)(8) Of the Bankruptcy Code.**

The Plan meets the eight mandatory requirements contained in section 1123(a). Specifically, section 1123(a)(1)-(8) requires that a plan:[14]

(1)      designate classes of claims and interests;

(2)      specify unimpaired classes of claims and interests;

(3)      specify treatment of impaired classes of claims and interests;

---

settlement); In re Avia Energy Dev., L.L.C., No. 05-39339-BJH-11, 2007 WL 2238039, at *2 (Bankr. N.D. Tex. Aug. 2, 2007) (permitting separate classification based on valid business, factual and legal reasons).

[12] See Plan, Art. III.

[13] See Plan, Art. III; Fed. Home Loan Mortgage Corp. v. Bugg (In re Bugg), 172 B.R. 781, 784 (E.D. Pa. 1994) ("secured creditors may not be classified together when they have liens in different property . . . since their respective legal rights are not substantially similar.") (citation omitted).

[14] 11 U.S.C. § 1123(a)(6) and (7) are applicable in cases where the debtor is a corporation, not an individual Chapter 11 case.

(4)     provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim agrees to a less favorable treatment of such particular claim or interest;

(5)     provide adequate means for implementation of the plan;

(6)     provide for the prohibition of nonvoting equity securities and provide an appropriate distribution of voting power among the classes of securities; and

(7)     contain only provisions that are consistent with the interests of the creditors and equity security holders and with public policy with respect to the manner of selection of the reorganized company's officers and directors.

(8)     provide for the payment to creditors under the plan of all or such portion of earnings from personal services performed by the debtor after the commencement of the case or other future income of the debtor as is necessary for the execution of the plan.

Article III of the Plan satisfies the first two requirements of section 1123(a) by: (a) designating Classes of Claims, as required by section 1123(a)(1),[15] (b) specifying that all Classes of Claims are either impaired or unimpaired, as required by section 1123(a)(2).[16]  Article IV of the Plan satisfy section 1123(a)(3) because it specifies the treatment of the impaired classes.  The Plan also satisfies section 1123(a)(4) because the treatment of each Claim within a Class is the same as the treatment of each other Claim within that Class.[17]

Article V of the Plan and various other provisions of the Plan provide adequate means for the Plan's implementation, thus satisfying the fifth requirement of section 1123(a), which is set forth in section 1123(a)(5) of the Bankruptcy Code.[18]  The provisions of Article V of the Plan relate to, among other things:  (a) the transfer of Assets to Plan Agent; (b) the transfer of Assets to Liquidating Trust; (c) sale of real property; (d) the establishment of Liquidating Trust; (e) the

---

[15] There are no classes of interests under the Plan because the Debtor is an individual.

[16] See Plan, Art. III. Under the Plan, all classes of Claims are impaired.

[17] Plan Art. IV.

[18] Section 1123(a)(5) specifies that adequate means for implementation of a plan may include the transfer of property of the estate to one or more entities.

manner of commencing and continuing litigation and (f) Debtor's post-confirmation contributions.[19]

The <u>sixth</u> requirement of section 1123(a) -- i.e., that a plan prohibit the issuance of nonvoting equity securities -- does not apply to an individual Chapter 11 debtor.

Similarly, section 1123's <u>seventh</u> element, which requires that the Plan "contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the plan. . . ."[20] does not apply in this case.

Section 1123(a)(8) provides that a plan that is filed in a case in which the debtor is an individual must "provide for the payment to creditors under the plan of all <u>or</u> such portion of earnings from personal services performed by the debtor after the commencement of the case <u>or</u> other future income of the debtor as is necessary for the execution of the plan." 11 U.S.C. § 1123(a)(8). The requirement of a debtor to contribute earnings subsequent to the commencement of the case is only necessary to the extent required to execute the Plan, provided that such contributions are in compliance with section 1129(a)(15) discussed below. Thus, an individual debtor's future income must be used to fund payment to creditors under a chapter 11 plan. This requirement is satisfied because the Debtor will be funding the Plan with, among other things, the Post-Confirmation Contributions.[21] Moreover, the Debtor will pay from Non-Plan Assets approximately $2 million of administrative claims that will be owed to the Debtor Professionals. Therefore, the Debtor's requirement to contribute "all or such portion" of his future earnings is clearly satisfied.

---

[19] <u>See</u> Plan, Art. V.

[20] 11 U.S.C. § 1123(a)(7).

[21] <u>See</u> Plan Section 5.3.

### 3. The Discretionary Contents Of The Plan Are Appropriate.

Section 1123(b) of the Bankruptcy Code identifies various discretionary provisions that may be included in a plan of reorganization. For example, a plan may impair or leave unimpaired any class of claims or interests and provide for the assumption or rejection of executory contracts and unexpired leases. A plan also may provide for: (a) "the settlement or adjustment of any claim or interest belonging to the debtor or to the estate"; or (b) "the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any such claim or interest."[22] A plan may also "provide for the sale of all or substantially all of the property of the estate, and the distribution of the proceeds of such sale among holders of claims or interests.[23] Finally, a plan may "modify the rights of holders of secured claims, other than a claim secured by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims" and may "include any other appropriate provision not inconsistent with the applicable provisions of [the Bankruptcy Code]."[24]

Here, the Plan employs various provisions in accordance with section 1123(b)'s discretionary authority. For example, the Plan: (i) leaves the Classes of Claims impaired; (ii) proposes treatment for and settlement of executory contracts; (iii) provides a structure for Claim allowance and disallowance; (iv) provides for the sale and distribution of the Debtor's

---

[22] 11 U.S.C. § 1123(b)(3)(A), (B).

[23] 11 U.S.C. § 1123(b)(4).

[24] 11 U.S.C. § 1123(b)(5), (6).

assets; (v) sets forth a process to govern the distributions to Holders of Allowed Claims; and (vi) provides for the implementation of release, exculpation and injunction provisions.[25]

### 4. The Discharge, Third Party Release, Exculpation And Injunction Provisions Are Integral Components Of The Plan.

The Plan provides for: (a) a discharge of the Debtor pursuant to 11 U.S.C. § 1141(d) (the "Discharge"); (b) the third party releases of Brenda Boddie and Kijafa Frink; (c) the exculpation of the Debtor, the Committee (and its members in such capacity) and their professionals (the "Exculpation"); and (d) the injunction provisions prohibiting parties from pursuing claims against the Debtor that are discharged under the Plan. These provisions are proper because, among other things, they are the product of arm's-length negotiations, have been crucial to obtaining the support of the various constituencies for the Plan and have been a part of the Plan that received overwhelming support from the Holders of Claims in the Classes. The Discharge, third party releases, Exculpation and injunction provisions are: (w) fair and equitable; (x) given for valuable consideration; (y) in the best interest of the Debtor and the Bankruptcy Case; and (z) not inconsistent with the Bankruptcy Code. Thus, the requirements under section 1123(b) of the Bankruptcy Code are satisfied.

Discharge

Section 1141(d)(5) of the Bankruptcy Code provides, in pertinent part, as follows:

In a case in which the debtor is an individual—

(A)     unless after notice and a hearing the court orders otherwise for cause, confirmation of the plan does not discharge any debt provided for in the plan until the court grants a discharge on completion of all payments under the plan;
* * *

---

[25] See, respectively, Plan, Art. III (Classification of Claims), Art. V (Means of Implementation), Art. VII (Provisions Governing Distributions), Art. IX (Executory Contracts), and Art. X (Effectiveness of the Plan).

(C)     unless after notice and a hearing held not more than 10 days before the date of the entry of the order granting the discharge, the court finds that there is no reasonable cause to believe that—

> (i)     section 522 (q)(1) may be applicable to the debtor; and

> (ii)     there is pending any proceeding in which the debtor may be found guilty of a felony of the kind described in section 522 (q)(1)(A) or liable for a debt of the kind described in section 522 (q)(1)(B).

Here, the Plan includes provides for a discharge as set forth in section 1141(d)(5)(A).

<u>Third Party Release</u>

In <u>In re A.H. Robins, Inc.</u>, 880 F.2d 694 (4th Cir. 1989), the United States Court of Appeals for the Fourth Circuit held that section 524(e) does not prohibit consensual third party releases under a plan of reorganization.[26]  The <u>Robins</u> court noted that a third party release provision may be particularly appropriate where the release is overwhelmingly approved by creditors and where the release is of central importance to the debtor's reorganization.[27]  On the Effective Date of the Plan, Brenda Boddie and Kijafa Frink shall be granted a limited release only from claims in connection with specific enumerated payments they received within two years prior to the Petition Date, which aggregate approximately $300,000 and are identified in Schedule 8.4 annexed to the Plan.  These payments were in connection with their support as well as that of two of the Debtor's children. To the extent other claims exist, the Liquidating Trustee may pursue such claims.

---

[26] <u>Id.</u> at 702.

[27] <u>Id.</u>  <u>See also</u> <u>In re Peramco Int'l, Inc.</u>, 3 Fed. Appx. 38, 42 (4th Cir. Feb. 7, 2001) (unpublished) (approving third party releases where the creditors agreed to them by voting for the plan); <u>In re Specialty Equip. Cos.</u>, 3 F.3d 1043, 1047 (7th Cir. 1993) (noting that releases that are consensual and non-coercive are in accord with the Bankruptcy Code); <u>In re Drexel Burnham Lambert Group, Inc.</u>, 960 F.2d 285, 293 (2d Cir. 1992) (courts may approve nondebtor releases where the injunction is an essential element of the plan).

As stated above, the Fourth Circuit approves of third party releases where the plan was approved by creditors and the release was essential to a debtor's reorganization.[28] The third party releases satisfy these conditions. First, each of the voting Classes approved the Plan.[29] Second, the release is being given by only those Holders of Claims who receive a distribution under the Plan. Third, the Debtor bargained for the release on behalf of his mother and fiancée in consideration for contributions to the Debtor's reorganization.

As set forth in the Plan, Brenda Boddie and Kijafa Frink have agreed to contribute all of their right, title and interest in the Contributed Notes and Investments to the Liquidating Trustee. In consideration, Ms. Boddie and Ms. Frink shall be released from certain claims described above. Accordingly, the release is appropriate and should be approved.

Exculpation. In requesting that the Bankruptcy Court approve the Exculpation, the Debtor is essentially asking the Bankruptcy Court to make a finding of fact that the Exculpated Parties[30] have participated in good faith with respect to: (a) formulating, negotiating, preparing, disseminating, implementing, confirming or consummating the Plan and Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with the Plan; or (b) any Distributions made pursuant to the Plan.[31] The Debtor is also requesting that the Bankruptcy Court conclude, as a matter of law, that the Exculpated Parties are entitled to protection from lawsuits from disgruntled Holders of Claims or any other parties in interest with respect to the Exculpated

---

[28] See A.H. Robins, 880 F.2d at 702.

[29] See Ballot Report. Note, Class 4 voted for the Plan, but the sole creditor filed its ballot one day late.

[30] The term "Exculpated Parties" includes: (a) the Debtor; (b) the Reorganized Debtor; (c) the Committee (and its members in such capacity); and (d) any professionals retained by the foregoing (in their respective capacities as such), or successors in interest to the foregoing Persons

[31] See Plan, Section 8.2.2.

Parties' participation in the Bankruptcy Case.[32]  The scope of the Exculpation is targeted, has no effect on liability that is determined in a Final Order to have resulted from fraud, gross negligence, willful misconduct, malpractice, criminal conduct, unauthorized use of confidential information that causes damages, or ultra vires acts.[33]

An exculpation provision is "fundamentally different" from a mandatory release provision.[34]  Likewise, the Debtor requests that the Bankruptcy Court approve the Exculpation and similarly adopt an appropriate standard of liability for the Exculpated Parties with respect to the Bankruptcy Case.  The Exculpation does not amount to a release provision, but rather represents a conclusion of law that flows inevitably from several different findings of fact that the Bankruptcy Court must reach in confirming the Plan.

First, the Bankruptcy Court's good faith findings with respect to the Bankruptcy Case should extend to the Exculpated Parties.  Moreover, the Plan was negotiated in good faith and the courts good faith finding should be extended to the Exculpated Parties.

Second, it is well established that the liability of statutory committees and their professionals, under section 1103 of the Bankruptcy Code, is limited to acts of gross negligence

---

[32] See Plan, Section 8.2.2.

[33] See Plan, Section 8.2.2.

[34] See In re PWS Holding Corp., 228 F.3d 224, 246-47 (3d Cir. 2000) (reasoning that the exculpation provision "does not affect the liability of third parties, but rather sets forth the appropriate standard of liability . . . ."); see also In re Enron Corp., 326 B.R. 497, 501 (S.D.N.Y. 2005) (in creditors' appeal of confirmation based on the plan's exculpation provision moot, the court specifically noted that the bankruptcy court addressed the exculpation provision and found it appropriate because it excluded gross negligence and willful misconduct).

and willful misconduct.[35]  Finally, exculpation for participating in the plan process is appropriate where plan negotiations could not have occurred without protection from liability.[36]

Because the Exculpated Parties are entitled to a finding that they participated in good faith in the Bankruptcy Case, the Bankruptcy Court may properly conclude, as a matter of law, that the standard of liability applying to the Exculpated Parties for all actions or omissions to acts related to this Chapter 11 Case should be limited to gross negligence or willful misconduct.  This conclusion is consistent with public policy governing such provisions and is entirely supported by the facts of the Bankruptcy Case.  Therefore, the Bankruptcy Court should approve the exculpation provision set forth in Section 8.2.2 of the Plan.

Discharge Injunction.  Section 8.1.2 of the Plan provides that all parties that have held, hold or may hold claims against the Debtor that will be discharged pursuant to Section 8.1.1 of the Plan will be permanently stayed, restrained and enjoined from taking any actions prohibited by § 1141 of the Bankruptcy Code.[37]  The confirmation order will provide, however, that the discharge injunction will not apply to Priority Income Tax Claims. The injunction, as modified, is necessary to preserve and enforce the Exculpation and the discharge granted by the Plan and is narrowly tailored to achieve that purpose.

---

[35] See PWS Holding, 228 F.3d at 246-47 (holding that the appropriate standard of liability under section 1103 of the Bankruptcy Code is "willful misconduct or ultra vires acts," and approving an exculpation of the creditors committee and its professionals subject only to liability for willful misconduct or gross negligence).

[36] See Drexel Burnham, 960 F.2d at 293; Enron Corp., 326 B.R. at 503 (excising similar exculpation provisions would "tend to unravel the entire fabric of the Plan, and would be inequitable to all those who participated in good faith to bring it into fruition.").

[37] See Plan, Section 8.1.2.

### B.    The Debtor Has Complied With The Applicable Provisions Of The Bankruptcy Code (Section 1129(a)(2)).

The Debtor has satisfied section 1129(a)(2) of the Bankruptcy Code, which requires that the proponent of a plan of reorganization comply with the applicable provisions of the Bankruptcy Code. This section principally embodies the disclosure and solicitation requirements of section 1125 of the Bankruptcy Code.[38] The Debtor has complied with section 1129(a)(2) of the Bankruptcy Code by distributing the Disclosure Statement and soliciting acceptances of the Plan in the manner (described in the Disclosure Statement) that was approved by the Bankruptcy Court.

Section 1125 prohibits the solicitation of acceptances or rejections of a plan of reorganization "unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information."[39] The purpose of section 1125 is to ensure that parties in interest are fully informed regarding the condition of the debtor so that they may make an informed decision whether to approve or reject the plan.[40]

Here, the Debtor has satisfied the requirements under section 1125. The Bankruptcy Court approved the Disclosure Statement as containing adequate information pursuant to the Disclosure Statement Order and the Debtor mailed the Plan, Disclosure Statement and the

---

[38] See In re Worldcom, Inc., No. 02-13533, 2003 WL 23861928, at *49 (Bankr. S.D.N.Y. Oct. 31, 2003) (stating that section 1129(a)(2) requires plan proponents to comply with applicable provisions of the Bankruptcy Code, including "disclosure and solicitation requirements under sections 1125 and 1126 of the Bankruptcy Code").

[39] 11 U.S.C. § 1125(b).

[40] See In re A.H. Robins Co., Inc., No. 98-1080, 1998 WL 637401, at *3 (4th Cir. Aug. 31, 1998) ("The disclosure statement must contain 'adequate information,' i.e. sufficient information to permit a reasonable, typical creditor to make an informed judgment about the merits of the proposed plan.").

ballots.  Moreover, the Debtor tabulated the votes on the Plan and has filed that tabulation with the underlying ballots with the Bankruptcy Court.

### C.     The Plan Has Been Proposed In Good Faith And Not By Any Means Forbidden By Law (Section 1129(a)(3)).

Section 1129(a)(3) of the Bankruptcy Code requires that a plan of reorganization be "proposed in good faith and not by any means forbidden by law."[41]  In the context of section 1129(a)(3), the measure of good faith is whether there is "a reasonable likelihood that the plan will achieve a result consistent with the standards prescribed under the Bankruptcy Code."  In re United Marine, 197 B.R. 942, 947 (Bankr. S.D. Fla. 1996).

To determine whether a plan seeks relief consistent with the Bankruptcy Code, courts consider the totality of the circumstances surrounding the development of the plan.[42] Accordingly, where the plan satisfies the purposes of the Code and has a good chance of succeeding, the good faith requirement of section 1129(a)(3) is satisfied.[43]

Here, the Debtor has proposed the Plan in good faith, with the legitimate and honest purposes of reorganizing his affairs and maximizing the value of the recovery to his creditors. Indeed, the Plan was the product of negotiations with the Committee and its members, Bank of America, JEI and ultimately with the IRS as well.

---

[41] 11 U.S.C. § 1129(a)(3).

[42] See In re Sylmar Plaza, L.P., 314 F.3d 1070, 1074 (9th Cir. 2002); see also In re Madison Hotel Assocs., 749 F.2d 410, 425 (7th Cir. 1984) (stating that to determine compliance with section 1129(a)(3), the court examines the plan "in light of the totality of the circumstances surrounding confection of the plan.")  (citation omitted).

[43] See Fin. Sec. Assurance v. T-H New Orleans Ltd. P'ship, 116 F.3d 790, 802 (5th Cir. 1997) ("A debtor's plan may satisfy the good faith requirement even though the plan may not be one which the creditors would themselves design . . .."); In re Briscoe Enters., Ltd., II, 994 F.2d 1160, 1167 (5th Cir. 1993) ("This Court has held that, 'Where the plan is proposed with the legitimate and honest purpose to reorganize and has a reasonable hope of success, the good faith requirement of section 1129(a)(3) is satisfied.'") (quoting In re Sun Country Dev., Inc., 764 F.2d 406, 408 (5th Cir. 1985)).

Given that the Plan is the product of negotiations among substantially all key constituents, there is ample evidence to support that the Plan has been proposed in good faith as interpreted under the Bankruptcy Code. Additionally, the Plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code.

The Debtor's good faith is demonstrated by his contribution of property for the benefit of unsecured creditors far in excess of that required pursuant to section 1129(a) (15) discussed at pages 33-37 below.

### D. The Plan Provides For Bankruptcy Court Approval of Certain Administrative Payments (Section 1129(a)(4)).

Section 1129(a)(4) of the Bankruptcy Code requires that certain professional fees and expenses paid by the plan proponent, by the debtor or by a person issuing securities or acquiring property under the plan, be subject to approval of the bankruptcy court as reasonable. Specifically, section 1129(a)(4) provides that:

> Any payment made or to be made by the proponent, by the debtor, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to approval of, the court as reasonable.[44]

This section of the Bankruptcy Code has been construed to require that all payments of professional fees that are made from estate assets be subject to review and approval by the Bankruptcy Court as to their reasonableness.[45]

Here, all payments made, or to be made, by the Debtor for services rendered and expenses incurred in connection with the Bankruptcy Case, including, without limitation, all fees

---

[44] 11 U.S.C. § 1129(a)(4).

[45] See, e.g., Worldcom, 2003 WL 23861928, at *54; In re Drexel Burnham Lambert Group, Inc., 138 B.R. 723, 760 (Bankr. S.D.N.Y. 1992).

of the Professionals, have been approved by, or are subject to approval of, the Bankruptcy Court as reasonable. In particular, section 2.2 of the Plan provides for the payment of only <u>Allowed Fee Claims</u>.[46] Moreover, the Bankruptcy Court will retain jurisdiction to hear, and to determine, any motion for allowance of compensation and costs payable to the Debtor or the Debtor's Estate.[47] Thus, the Plan complies fully with the requirements of section 1129(a)(4) of the Bankruptcy Code.

**E.      Section 1129(a)(5) Does Not Apply or Has Been Satisfied.**

Section 1129(a)(5) of the Bankruptcy Code does not apply because the Debtor is an individual. However, the Debtor has disclosed that Mr. Joseph Luzinsky will be the Liquidating Trustee and Development Specialists, Inc. will be the Plan Agent. The nature of the compensation for Mr. Luzinsky has been disclosed in the Disclosure Statement.

**F.      The Plan Does Not Require Governmental Regulatory Approval (Section 1129(a)(6)).**

Section 1129(a)(6) of the Bankruptcy Code permits confirmation only if any regulatory commission that will have jurisdiction over the debtor after confirmation has approved any rate change provided for in the debtor's plan.[48] Section 1129(a)(6) of the Bankruptcy Code is inapplicable because the Debtor is an individual not subject to approval of any governmental regulatory commission.

---

[46] <u>See</u> <u>In re Elsinore Shore Assocs.</u>, 91 B.R. 238, 268 (Bankr. D.N.J. 1988) (holding that requirements of section 1129(a)(4) were satisfied where the plan provided for payment of only "allowed" administrative expenses).

[47] <u>See</u> Plan, Section 11.1.

[48] 11 U.S.C. § 1129(a)(6).

### G. The Plan Is In The Best Interest Of Creditors And Interest Holders (Section 1129(a)(7)).

Section 1129(a)(7) of the Bankruptcy Code, also known as the "best interest test," requires that, with respect to each class, each holder of a claim or an equity interest in such class either:

(i)     has accepted the plan;

(ii)    or will receive or retain under the plan property of a value, as of the effective date of the plan, which is not less than the amount that such holder would receive or retain if the debtors liquidated under chapter 7 of the Bankruptcy Code.[49]

The best interest test applies to individual dissenting holders of claims and interest rather than classes, and is generally satisfied through a comparison of the estimated recoveries for a debtor's stakeholders in a hypothetical chapter 7 liquidation of that debtor's estate against the estimated recoveries under that debtor's plan of reorganization.[50]  As section 1129(a)(7) makes clear, the best interest test applies only to non-accepting impaired claims or interests.  Here, the Plan satisfies the best interest tests as demonstrated by comparing the projected recoveries with the Liquidation Analysis and Comparative Analysis contained in the Bankruptcy Court approved Disclosure Statement.[51]

The Debtor has performed a detailed analysis of the likely creditor recoveries in a hypothetical chapter 7 liquidation scenario and this liquidation analysis projects expected total distributable value of approximately $8,913,601.  In liquidation, the secured creditors would be

---

[49] 11 U.S.C. § 1129(a)(7)(A)(i)-(ii).

[50] See Bank of Am. Nat'l Trust and Sav. Ass'n. v. 203 N. LaSalle St. P'ship, 526 U.S. 434, 441 n.13 (1999) ("The "best interests" test applies to individual creditors holding impaired claims, even if the class as a whole votes to accept the plan."); see also In re Adelphia Commc'ns Corp., 368 B.R. 140, 251 (Bankr. S.D.N.Y. 2007) (section 1129(a)(7) satisfied when impaired holder of claim would receive "no less than such holder would receive in a hypothetical chapter 7 liquidation"), aff'd, 544 F.3d, 420 (2d Cir. 2008).

[51] See Disclosure Statement, Exs. D, E.

paid in full, followed by the Chapter 7 Trustee and the Chapter 11 Professionals, which would result in no distribution to unsecured creditors.

On the other hand, under the Plan, creditors will benefit from a stream of additional income that is not otherwise available to the Debtor's creditors in liquidation. A comparison of the estimated recoveries under the Plan with estimated recoveries under a hypothetical chapter 7 case as set forth in the Liquidation Analysis and Comparative Analysis, which are annexed as Exhibits D and E to the Disclosure Statement.

The Debtor believes that the value of distributions if the Bankruptcy Case was converted to a case under chapter 7 of the Bankruptcy Code would be less than the value of distributions under the Plan because, among other reasons, the Debtor's assets would be liquidated quickly rather than sold over time to maximize the value of the assets. Further, proceeds received in a chapter 7 liquidation are likely to be significantly discounted due to the distressed nature of the sale of the Debtor's assets. In addition, the Debtor would incur the additional costs and expenses of a chapter 7 trustee and other professional fees relating to the chapter 7 wind-down. Furthermore, under the Plan, the creditors will receive a portion of the potential revenue stream of the Debtor. In liquidation, the creditors do not get the benefit of this future revenue stream.

As demonstrated by the estimated recoveries in the Disclosure Statement, the Plan is expected to provide vastly higher recoveries to Holders of Claims than they would receive in liquidation under chapter 7. The estimate of the Debtor's value under the Plan substantially exceeds the estimate of values set forth in the Liquidation Analysis; therefore, the Debtor satisfies the best interest test.

### H. Acceptance Of Impaired Classes (Section 1129(a)(8)).

Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests must either accept a plan or be unimpaired under a plan.[52]  Pursuant to section 1126(c), a class of impaired claims accepts a plan if holders of at least two-thirds in dollar amount and more than one-half in number of the claims in that class actually vote to accept the plan.[53]  A class that is not impaired under a plan, and each holder of a claim or interest in such class, is conclusively presumed to have accepted the plan.[54]  Conversely, a class is deemed to have rejected a plan if the plan provides that the claims or interests of such class do not receive or retain any property under the plan on account of such claims or interests.[55]

As set forth in the Ballot Report, all 4 Impaired Classes actually voted to accept the Plan. Thus, section 1129(a)(8) is satisfied.  As noted above, although the sole member of Class 4 voted for the Plan, its vote was filed one day late.  The Debtor has treated this vote as timely.  Even if the vote is not counted and Class 4 is deemed to have rejected the Plan, the Plan can be confirmed under § 1129(b) as set forth below.

---

[52] 11 U.S.C. § 1129(a)(8).

[53] 11 U.S.C. § 1126(c).

[54] 11 U.S.C. § 1126(f); see In re Econ. Cast Stone Co., 16 B.R. 647, 651 (Shelley, J.) (Bankr. E.D. Va. 1981); Drexel, 960 F.2d at 290 (an unimpaired class is presumed to have accepted the plan); S. Rep. No. 989, 95th Cong. 2d Sess. 123 (1978) (section 1126(f) of the Bankruptcy Code "provides that no acceptances are required from any class whose claims or interests are unimpaired under the Plan or in the order confirming the Plan.").

[55] See 11 U.S.C. § 1126(g)

## I.     The Plan Complies With Statutorily Mandated Treatment Of Administrative And Priority Tax Claims (Section 1129(a)(9)).

Section 1129(a)(9) of the Bankruptcy Code requires that persons holding claims entitled to priority under section 507(a) receive payment in full in cash unless the holder of a particular claim agrees to a different treatment with respect to such claim.[56]

Pursuant to Article II of the Plan, and in accordance with section 1129(a)(9), the Plan provides for the payment of Administrative Expense Claims and Priority Claims. Under section 2.2.1, unless an administrative claimant agrees to a different treatment, the Debtor or Plan Agent shall make certain payments to each holder of an Allowed Non Debtor Administrative Expense Claim on the later of the effective date or the date such claims referred to in section 2.2.1 are allowed. Moreover, section 2.2.3 provides for the payment of the Administrative Expense Claims of the Debtor's Professionals.[57]

Article II also provides for the payment of priority claims. Specifically, Section 2.3.1 of the Plan provides for the payment of Priority Real Estate Tax Claims relating to the Surry Farm, Darlington Run Property, West Creek Property and Carlas Hope Property from the proceeds of sale of such properties. With respect to the Haywagon Trail Property, real estate taxes are paid current.

Sections 2.3.2 provides for the payment of the Priority Income Taxes described in section 507(a)(8) in quarterly payments. Similarly, section 2.3.3 provides for the payment of Other Priority Tax Claims not included in section 507(a)(8) in full on the Effective Date. These treatments have not been objected to by the Claimants falling into those categories.

---

[56] 11 U.S.C. § 1129(a)(9).

[57] The Debtor Professionals have agreed to a deferral of their fees which will be paid by the Debtor from the Non-Plan Assets over a period of years.

Therefore, the Plan complies with the relevant provisions of section 1129(a)(9) of the Bankruptcy Code.

## J. At Least One Impaired Class Of Claims Has Accepted The Plan, Excluding The Acceptances Of Insiders (Section 1129(a)(10)).

Section 1129(a)(10) of the Bankruptcy Code is an alternative requirement to section 1129(a)(8)'s requirement that each class of claims or interests must either accept the plan or be unimpaired under the plan. Section 1129(a)(10) provides that to the extent there is an Impaired Class of Claims, at least one Impaired Class of Claims must accept the Plan, excluding acceptance by any Insider.[58] Here, Classes 1, 2, 3 and 4 voted to accept the Plan.[59] Therefore, the Plan satisfies the requirement of section 1129(a)(10).

## K. The Plan Is Feasible (Section 1129(a)(11)).

Section 1129(a)(11) of the Bankruptcy Code requires that the Bankruptcy Court find that a plan is feasible as a condition precedent to confirmation. Specifically, the Bankruptcy Court must determine that:

> [c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.[60]

To demonstrate that a plan is feasible, it is not necessary that success be guaranteed.[61] Rather, only a reasonable assurance of success is required.[62]

---

[58] 11 U.S.C. § 1129(a)(10); see also Econ. Cast Stone, 16 B.R. at 651 (at least one impaired class must actively accept the plan).

[59] See Ballot Report.

[60] 11 U.S.C. § 1129(a)(11).

[61] See In re Adamson Co., Inc., 42 B.R. 169, 174 (Shelley, J.) (Bankr. E.D. Va. 1984).

[62] See In re Whittaker Mem'l Hosp. Ass'n, Inc., 149 B.R. 812, 816 (Bankr. E.D. Va. 1993) (holding with respect to the debtor's obligation to provide feasibility, that "[i]t is not a blanket guarantee which is required, but rather a reasonable likelihood of success."); Adamson, 42 B.R. at 174.

As demonstrated below, the Plan meets the feasibility requirement set forth in section 1129(a)(11) of the Bankruptcy Code, as confirmation is not likely to be followed by liquidation or the need for further financial reorganization because the Debtor is liquidating his assets and paying his creditors from those assets and potential future income. In connection with the development of the Plan and for the purposes of determining whether the Plan satisfies this feasibility standard, the Debtor analyzed his ability to satisfy his financial obligations.

The Plan provides and the testimony to be adduced at the confirmation hearing, will be that the Plan liquidates substantially all of the Debtor's assets (the Plan Assets) to pay the secured claims as well as certain of the administrative and priority claims. The Debtor has sufficient cash to enable him to make the initial payments required for the Plan to become effective. In addition, the Debtor has been conditionally reinstated into the National Football League. He has signed a contract with the Philadelphia Eagles that will enable the Debtor to generate income that the general unsecured creditors will receive a percentage. The details of the Debtor's post-confirmation contributions are set forth in Plan section 5.3.

The Administrative Claims will be paid pursuant to Article 2.2, to which the Holders of Administrative Claims consent. Thus, the Plan is feasible.

**L.     The Plan Provides For The Payment Of All Fees Under 28 U.S.C. § 1930 (Section 1129(a)(12)).**

Section 1129(a)(12) of the Bankruptcy Code requires the payment of all fees payable under 28 U.S.C. § 1930.[63] Section 2.2.5 of the Plan provides that either the Liquidating Trustee, Plan Agent or Reorganized Debtor, as the case may be, shall pay all quarterly fees and to the

---

[63] 11 U.S.C. § 1129(a)(12).

U.S. Trustee on the Effective Date and thereafter, as and when due, until the bankruptcy case is closed. The Plan, therefore, complies with section 1129(a)(12) of the Bankruptcy Code.

**M.  The Plan Does Not Modify Retiree Benefits (Section 1129(a)(13)).**

Section 1129(a)(13) of the Bankruptcy Code requires that all retiree benefits continue to be paid post-confirmation at any levels established in accordance with section 1114 of the Bankruptcy Code.[64] The Debtor does not have any obligations on account of retiree benefits (as such term is used in section 1114) and, therefore, section 1129(a)(13) of the Bankruptcy Code is inapplicable.

**N.  Section 1129(a)(14) Is Inapplicable.**

Section 1129(a)(14) of the Bankruptcy Code provides that "[i]f the debtor is required by a judicial or administrative order, or by statute, to pay a domestic support obligation, the debtor has paid all amounts payable under such order or such statute for such obligation that first becomes payable after the date of the filing of the petition." 11 U.S.C. § 1129(a)(14). Here, this provision is inapplicable because there is currently no order or statutes requiring the Debtor make a domestic support obligation.

**O.  The Plan Satisfies Section 1129(a)(15).**

In 2005, Bankruptcy Code section 1129(a)(15) was added as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). Section 1129(a)(15) provides, in pertinent part, as follows:

> (a)  The court shall confirm a plan only if all of the following requirements are met:
>
> ***

---

[64] 11 U.S.C. § 1129(a)(13).

(15)    In a case in which the debtor is an individual and in which the holder of an allowed unsecured claim objects to the confirmation of the plan —

(A)    the value, as of the effective date of the plan, of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B)    the value of the property to be distributed under the plan is not less than the projected disposable income of the debtor (as defined in section 1325(b)(2)) to be received during the 5-year period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer.

Due in part to the short period of time since it was enacted, the case law under § 1129(a)(15) is sparse.  See, e.g, In re Bennett, No. 07-10864-SSM, 2008 Bankr. LEXIS 1354 n.6, at **7-8 (Bankr. E.D. Va. Apr. 23, 2008) (Mitchell, J.) (discussing in a footnote that projected disposable income is calculated in an individual Chapter 11 case the same as in a Chapter 13, by multiplying a debtor's disposable income as calculated on Form 22 by 60 months the plan commitment period); In re Roedemeier, 374 B.R. 264, 273 (Bankr. D. Kan. 2007) (Although 11 U.S.C. § 1129(a)(15) was not at issue, the bankruptcy court stated in dicta that a plan that proposes to pay more than $0 (the amount calculated using Form 22b minus court determined expenses) satisfied confirmation requirements of the new section.)

However, "projected disposable income" is not a new term to the Bankruptcy Code – that same language can be found in 11 U.S.C. § 1325 (b) (2), which provides, in pertinent, part:

(2)    For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended—

(A)(i)  for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and
(ii)    for charitable contributions (that meet the definition of

"charitable contribution" under section 548(d)(3) to a qualified religious or charitable entity or organization (as defined in section 548(d)(4)) in an amount not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made; and

(B)    if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

Prior to BAPCPA, in the context of a Chapter 13 case interpreting "projected disposable income" under 11 U.S.C. § 1325 (b)(2), the Fourth Circuit concluded that "[r]ather than engaging in hopeless speculation about the future, a court should determine projected disposable income by calculating a debtor's present monthly income and expenditures and extending those amounts over the life of the plan." Solomon v. Cosby (In re Solomon), 67 F.3d 1128, 1132 (4th Cir. 1995) (rejecting a speculative approach to determining "projected disposable income" and instructing that the figure is calculated by taking the debtor's disposable income and extending that amount over the course of the plan). In that case, "[p]rojected disposable income [was] calculated by multiplying a debtor's monthly income at the time of confirmation by 36 months, the normal duration of a Chapter 13 plan, then determining the portion of the income which is 'disposable' according to the statutory definition." Id.

Courts have analyzed the term "projected disposable income" under two different approaches: (i) the "Multiplicative Approach" and (ii) the "Forward Looking Approach." The courts in the Eastern District of Virginia have analyzed the term "projected disposable income" under the Multiplicative Approach citing to the Fourth Circuit in In re Solomon, 67 F.3d 1128.

Under this approach, projected disposable income is determined by multiplying a debtor's disposable income as calculated on Form 22 by 60 months (the plan commitment

period).[65]   "What is now considered 'disposable' is based on historical data – current monthly income derived from the six – month period preceding the bankruptcy filing."[66]   "[I]n order to arrive at 'projected disposable income,' one simply takes the calculation mandated by § 1325(b)(2) and does the math."[67]   The Alexander court applied Solomon and concluded that "debtors with no disposable income under the new law have no projected disposable income." Id. at 750.  The approach used in Alexander, was adopted by the Honorable Robert G. Mayer in In re Winokur, 364 B.R. 204, 205 (Bankr. E.D. Va. 2007) and applied again in In re Hoskings, No. 07-13785-RGM, 2008 Bankr. LEXIS 1785, at *20 (Bankr. E.D. Va. May 29, 2008). Moreover, Judge Mitchell stated that same standard applies to an individual Chapter 11 debtor in Bennett, 2008 Bankr. LEXIS 12354 n.6, at **7-8 (discussing the approach to calculate projected disposable income in the context of a Chapter 11 case).

Calculating the Debtor's disposable income using the multiplicative approach would provide unsecured creditors with payments of zero.  Form 22B filed in this case provides that his total current monthly income was $277.69 from interest, dividends and royalties plus work performed in prison. Thus, the Debtor's monthly income is slightly under $300 per month.  Over 60 months, this is the equivalent of approximately $18,000.  Deducted from this are the allowances for food, housing, transportation and other expenses.  The result is that the Debtor will have no disposable income.  Although the Debtor has no projected disposable income, he may still confirm a plan.

---

[65] This approach uses a debtor's disposable income as calculated on Form 22 (Form 22a for Chapter 7 debtors, Form 22b for individual chapter 11 debtors, Form 22c for chapter 13 debtors).  See In re Bennett, 2008 Bankr. LEXIS 1354 n.6.

[66] In re Alexander, 344 B.R. 742, 749 (Bankr. E.D.N.C. 2006).

[67] Id.

Notwithstanding that under well established Fourth Circuit precedent that would require the Debtor to pay nothing to unsecured creditors under Bankruptcy Code section 1129 (a) (15), the Plan "property" being distributed to unsecured creditors is comprised of, <u>inter alia</u>, the Governor's Pointe Property (with an assessed value of nearly $1.5 million), the Pending Actions, Third Party Claims and the Post-Confirmation Income Contributions.

**P.      The Plan Satisfies The "Cram Down" Requirements (Section 1129(b)).**

If the Bankruptcy Court deems the late vote of the sole Class 4 member to not count and that Class 4 rejected the Plan, then the Debtor may "cram down" Class 4.  Section 1129(b) of the Bankruptcy Code provides that if all applicable requirements of section 1129(a), except for section 1129(a)(8), are met, a plan shall be confirmed so long as it does not discriminate unfairly and is fair and equitable with respect to each class of claims and interests that is impaired and has not accepted the plan.[68]  Thus, to confirm a plan that has not been accepted by all impaired classes, the plan proponent must show that the plan "does not discriminate unfairly" and is "fair and equitable" with respect to the non-accepting impaired classes.[69]  As discussed below, the Debtor meets the "cram down" requirements in section 1129(b) of the Bankruptcy Code to confirm the Plan.

---

[68] <u>See</u> 11 U.S.C. § 1129(b)(1).

[69] <u>See</u> <u>In re Catron</u>, 186 B.R. 194, 197 (J. Tice) (Bankr. E.D. Va. 1995); <u>Schwarzmann</u>, 203 B.R. at 923, 925; <u>Adamson</u>, 42 B.R. at 173-74.

1.    **The Plan Is Fair And Equitable With Respect To Impaired Classes That Have Not Voted To Accept The Plan.**

    a.    **The Plan Satisfies The Standards To Cram Down Class 4.**

Class 4 consists of a sole creditor – the City of Newport News, which holds a claim of $148.54 secured by the personal property of the Debtor. The applicable section with respect to the fair and equitable treatment of a secured creditor is section 1129(b)(2)(A):

> (2)    For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a claim includes the following requirements:

> (A)    With respect to a class of secured claims, the plan provides

>> (i)    (I) that the holders of such claims retain the lien securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and

>> (II) that each holder of a claim of such claim receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

>> (ii)    for the sale, subject to section 363(k) of this title, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds under clause (i) or (iii) of this subparagraph; or

>> (iii)    for the realization by such holders of the indubitable equivalent of such claims.

The City has liens on the Debtor's personal property. Under the Plan, it will be paid as the property is sold. The Plan satisfies this section because the City has retained its lien and will receive an amount in deferred cash payments of at least the allowed amount of such claims.

Thus, the Plan is fair and equitable with respect to Class 4.

## 2. The Plan Does Not Unfairly Discriminate With Respect To Impaired Classes That Have Not Voted To Accept The Plan.

The Plan also does not discriminate unfairly with respect to Impaired Classes that have rejected or not voted to accept the Plan. The Bankruptcy Code does not provide a standard for determining when "unfair discrimination" exists. Rather, courts typically examine the facts and circumstances of the particular case to determine whether unfair discrimination exists.[70] At a minimum, however, the unfair discrimination standard prevents creditors and interest holders with similar legal rights from receiving materially different treatment under a proposed plan without compelling justifications for doing so.[71] In the instant case, the sole Class 4 creditor is being paid it from the proceeds of its collateral. The secured creditors in classes 1, 2 and 3 have liens on different classes of property, as well as different properties. Thus, separate classification is appropriate. Unsecured creditors are being paid only: (a) from assets that are not secured by liens of other creditors; or (b) from those assets which secure claims of other creditors, but only after such secured claims are paid in full. Additionally, creditors of similar priority are being treated on a pari passu basis. Here, there is no unfair discrimination.

## CONCLUSION

For the reasons set forth above, the Debtor submits that the Plan fully satisfies all applicable requirements of the Bankruptcy Code and respectfully requests that the Bankruptcy Court confirm the Plan.

---

[70] See In re Bowles, 48 B.R. 502, 507 (J. Shelley) (Bankr. E.D. Va. 1985) ("[W]hether or not a particular plan does so [unfairly] discriminate is to be determined on a case-by-case basis."); see also In re Freymiller Trucking, Inc., 190 B.R. 913, 916 (Bankr. W.D. Okla. 1996) (holding that a determination of unfair discrimination requires a court to "consider all aspects of the case and the totality of all the circumstances").

[71] See In re Aztec Co., 107 B.R. 585, 589-91 (Bankr. M.D. Tenn. 1989); In re Johns-Manville Corp., 68 B.R. 618, 636 (Bankr. S.D.N.Y. 1986).

Date:  August 26, 2009                          MICHAEL D. VICK


                                        By:   _/s/ Paul K. Campsen_____
                                                    Of Counsel

Michael V. Blumenthal, Esq.
Steven B. Eichel, Esq.
Crowell & Moring LLP
590 Madison Avenue, 20th Floor
New York, NY 10022
(212) 223-4000 – Telephone
(212) 223-4134 – Facsimile

and

Paul K. Campsen, Esq. (VSB No. 18133)
Dennis T. Lewandowski, Esq. (VSB No. 22232)
Kaufman & Canoles, a professional corporation
150 West Main Street, Suite 2100
Norfolk, VA  23510
(757) 624-3000 – Telephone
(757) 624-3169 – Facsimile
Counsel for Debtor

## CERTIFICATE OF SERVICE

       I certify that on this 26th day of August, 2009, a copy of the foregoing Debtor's
Memorandum of Law in Support of Confirmation of Debtor's Third Amended Plan of
Reorganization was sent by the Bankruptcy Court's ECF e-mail notification system.


                                               _/s/ Paul K. Campsen_____


::ODMA\PCDOCS\DOCSNFK\1520877\3