**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division**

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| **MICHAEL D. VICK,** | ) | **Case No. 08-50775-FJS** |
| | ) | |
| Debtor. | ) | **Chapter 11** |

**ORDER CONFIRMING THIRD AMENDED PLAN OF
REORGANIZATION OF MICHAEL D. VICK
DATED JULY 2, 2009, AS MODIFIED**

On August 27, 2009, Michael D. Vick ("Vick"), the debtor and debtor-in-possession, appeared before the United States Bankruptcy Court for the Eastern District of Virginia, Newport News Division ("Bankruptcy Court"), for the confirmation hearing ("Confirmation Hearing") on his third amended plan of reorganization ("Plan") dated July 2, 2009.

Based upon a full and complete record of the Confirmation Hearing and all matters and proceedings made part of the record of this Bankruptcy Case, and after due deliberation and sufficient cause, the Bankruptcy Court finds and concludes:

1.     Capitalized terms used, but not defined in this Order, shall have the meanings ascribed to them in the Plan.

2.     On the Petition Date, the Debtor filed the Bankruptcy Case in the Bankruptcy Court.  From and after the Petition Date, he has continued to operate and manage his property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtor was then, and is now, eligible for relief under §109 of the Bankruptcy Code.  The Bankruptcy Court has jurisdiction over the Bankruptcy Case pursuant to 28 U.S.C. §§ 157 and 1334.

3.     Venue of the Bankruptcy Case in the Bankruptcy Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.     Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L). The Bankruptcy Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

5.     The Bankruptcy Court shall retain jurisdiction over the Bankruptcy Case as set forth in the Plan and in this order.

6.     On July 2, 2009, the Debtor filed his third amended disclosure statement with respect to the Plan ("Disclosure Statement") (Docket No. 703), which he modified on July 30, 2009 (Docket Nos. 746 and 747).   On July 2, 2009, he filed the Plan (Docket No. 702), which he modified on July 7, 2009 (Docket No. 709) and July 30, 2009 (Docket Nos. 744 and 745).   Notice of the hearing on the Disclosure Statement was sent to all necessary parties on July 2, 2009 (Docket No. 704).   Such notice was timely and adequate in all respects.   On July 31, 2009, the Bankruptcy Court approved the Disclosure Statement and set a hearing on Plan confirmation.

7.     On August 6, 2009, pursuant to:  (a) the terms of the order approving disclosure statement and fixing hearing on confirmation and times for filing objections to confirmation and acceptances or rejections of plan entered on August 31, 2009 (Docket No. 749) (the "Disclosure Statement Order"); and (b) § 1125 of the Bankruptcy Code, the Debtor solicited acceptance of the Plan.  In accordance with the Disclosure Statement Order, a Ballot was transmitted to each Holder of a Claim in the Classes eligible to vote.

8.     On August 25, 2009, in accordance with Local Rule 3016-1(D), the Debtor filed a summary of ballots with the Bankruptcy Court ("Ballot Summary")(Docket No. 790).   As

delineated on the Ballot Summary, and as represented at the Confirmation Hearing, the Plan was accepted by all the Classes of creditors whose acceptances are required by law.

9.      Objections to the Plan were filed by Old Point National Bank ("Old Point"), the IRS and the DOL.  The objections were resolved prior to the Confirmation Hearing, as indicated by the endorsement of counsel for each below.  Objections by the BofA and the Committee were resolved prior to the deadline for filing objections to the Plan, as indicated by the endorsement of the counsel for each party below.

10.      Proper notice of the Confirmation Hearing, the Plan and the payment provisions under the Plan were provided to all creditors and parties in interest as required by the Disclosure Statement Order.  The notice was adequate and sufficient under the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), including but not limited to § 1128 of the Bankruptcy Code, Bankruptcy Rules 2002(b), 3017 and 3020(b) and other applicable law and rules.

11.      Votes to accept and reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Disclosure Statement Order, and all other applicable rules, laws and regulations. The Debtor waived any defects or irregularities in late ballots filed by the City of Newport News.

12.      As set forth below, the Plan complies with the applicable provisions of the Bankruptcy Code and satisfies § 1129(a)(1) of the Bankruptcy Code.

13.      The Debtor has complied with the applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Bankruptcy Court, thereby satisfying § 1129(a)(2) of the Bankruptcy Code.  Specifically, the Debtor is a proper debtor under § 109 of the Bankruptcy Code and is a proper plan proponent under § 1121(a) of the Bankruptcy Code.

The Debtor has satisfactorily complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order in transmitting the Plan, the Disclosure Statement, the Ballot, the notice of the Confirmation Hearing and related documents and notices and in soliciting and tabulating votes on the Plan. The Plan has been accepted by Holders of Claims holding in excess of two-thirds in amount and one-half in number of the Allowed Claims in each of the Impaired Classes entitled to vote.

14.    The Debtor has proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying § 1129(a)(3) of the Bankruptcy Code. In determining that the Plan has been proposed in good faith, the Bankruptcy Court has examined the totality of the circumstances surrounding the filing of the Bankruptcy Case. The Debtor's good faith is further demonstrated by the facts and records of the Bankruptcy Case and the record of the Confirmation Hearing and other proceedings held in the Bankruptcy Case. The Plan was proposed by the Debtor with the legitimate and honest purpose of reorganizing his affairs and maximizing the value of the recovery to his creditors. The Plan is the product of negotiations with the Committee and other parties in interest.

15.    Any payment made, or to be made, by the Debtor for services or for costs and expenses in or in connection with the Bankruptcy Case, or in connection with the Plan and incident to the Bankruptcy Case, has been approved by, or is subject to the approval of, the Bankruptcy Court as reasonable, thereby satisfying § 1129(a)(4) of the Bankruptcy Code.

16.    Section 1129(a)(5) of the Bankruptcy Code does not apply to the Plan because the Debtor is an individual. The Debtor did disclose that Joseph J. Luzinsky of Fort Lauderdale, Florida, will serve as the Liquidating Trustee and that Development Specialists, Inc., of Miami Florida, will serve as the Plan Agent. The Bankruptcy Court finds that each is capable of, and

competent to, fulfill the respective duties prescribed for them by the Plan and the Liquidating Trust Agreement.

17.    Section 1129(a)(6) of the Bankruptcy Code does not apply because the Debtor is an individual and does not have rates subject to approval of any governmental regulatory commission.

18.    The Plan satisfies § 1129(a)(7) of the Bankruptcy Code.  Each Holder of a Claim in an Impaired Class of Claims has either accepted the Plan or will receive or retain under the Plan property of a value, as of the Effective Date of the Plan, that is not less than the amount that such Holder would receive if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.  In a Chapter 7 liquidation, the Bankruptcy Case is administratively insolvent.  Under the Plan, the Holders of Claims in each Impaired Class of Claims who did not accept the Plan will receive or retain property of a value, as of the Effective Date of the Plan, that is not less than the amount that such Holder would receive if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code.

19.    The Plan satisfies § 1129(a)(8) of the Bankruptcy Code.  The Plan has been accepted by all the Classes of Creditors whose acceptances are required by law.

20.    The treatment of Administrative Expense Claims and Priority Claims pursuant to the Plan satisfies the requirements of § 1129(a)(9)(A), (B) and (C) of the Bankruptcy Code. Specifically, creditors holding Claims entitled to priority pursuant to § 507 of the Bankruptcy Code are being paid as required by law or as they have otherwise agreed.

21.    At least one Class of Claims that is Impaired under the Plan has accepted the Plan, determined without including any acceptance of the Plan by any insider, thus satisfying the requirements of § 1129(a)(10) of the Bankruptcy Code.

22.    Confirmation of the Plan is not likely to be followed by a liquidation, or the need for further financial reorganization, of the Debtor, except such liquidation of assets as is provided

for under the Plan. Accordingly, the Plan satisfies the requirements of § 1129(a)(11) of the Bankruptcy Code.

23.    All fees payable under 28 U.S.C. § 1930 have been paid or the Plan provides for payment of all such fees continuing until the Bankruptcy Case is closed. The Plan satisfies the requirements of § 1129(a)(12) of the Bankruptcy Code.

24.    Section 1129(a)(13) of the Bankruptcy Code is inapplicable because the Debtor does not maintain retiree benefits as contemplated by § 1114 of the Bankruptcy Code.

25.    Section 1129(a)(14) is not applicable because there is currently no order or statute(s) requiring the Debtor to pay a domestic support obligation.

26.    Section 1129(a)(15) is not applicable because no Holder of an Allowed Unsecured Claim objected to the confirmation of the Plan, which objection was not resolved before the Confirmation Hearing.

27.    Section 1129(a)(16) is not applicable because the Debtor is an individual.

28.    In accordance with Section 1141(a) of the Bankruptcy Code, upon confirmation of the Plan and the occurrence of the Effective Date, the Plan shall be binding upon the Debtor, all entities acquiring property under the Plan and all creditors that are impaired under the Plan or accepted the Plan.

29.    The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of § 5 of the Securities Act of 1933, as amended. The Plan complies with § 1129(d) of the Bankruptcy Code.

30.    Each executory contract and unexpired lease of the Debtor is rejected as part of the Plan (unless previously assumed or assumed pursuant to the Plan). The Plan provides the non-

Debtor party to the contract or lease with the treatment provided for by § 365 of the Bankruptcy Code.

31.     The Debtor has satisfied the burden of proving the elements of § 1129(a) of the Bankruptcy Code by a preponderance of evidence, which is the applicable evidentiary standard in the Bankruptcy Court for Confirmation of the Plan.

32.     The modification to the Plan set forth in this Confirmation Order constitute a technical modification or modification with respect to particular a Claim by agreement with the Holder of the Claim and does not adversely alter the treatment of any other Claims.  Accordingly, pursuant to Bankruptcy Rule 3019, these modifications do not require additional disclosure under § 1125 of the Bankruptcy Code, do not require resolicitation of votes under § 1126 of the Bankruptcy Code, and do not require that Holders of Claims be afforded an opportunity to change previously cast acceptances or rejections of the Plan.

33.     Based on the record before the Bankruptcy Court in the Bankruptcy Case, the Debtor, his counsel and all other professionals have acted in "good faith" within the meaning of § 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with, and related to, the formulations, negotiation, solicitation, implementation, confirmation and consummation of the Plan and the Disclosure Statement and in connection, and related to, their participation in the activities described in § 1125 of the Bankruptcy Code, and each is entitled to the protections afforded by § 1125(e) of the Bankruptcy Code and the limitations of liability set forth in the Plan.

34.     No further action of the Bankruptcy Court will be required to authorize the Debtor to enter into, execute and deliver, or adopt, as the case may be, the documents necessary to implement the provisions of the Plan.

35.    The Bankruptcy Court may properly retain jurisdiction over the matters set forth in Article XI of the Plan, § 1142 of the Bankruptcy Code and this Confirmation Order.

NOW, THEREFORE, BASED UPON, AMONG OTHER THINGS, ALL OF THE ABOVE-STATED FINDINGS OF FACT AND CONCLUSIONS OF LAW, AND GOOD CAUSE APPEARING, THE BANKRUPTCY COURT ORDERS THAT:

1.    <u>Bankruptcy Rule 7052</u>.  The findings of fact of the Bankruptcy Court set forth above and the conclusions of law stated below and on the record at the Confirmation Hearing, shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014.

2.    <u>Amendments</u>.    The following modifications to the Plan set forth in this Confirmation Order meet the requirements of §§ 1122, 1123, 1125, 1126 and 1127(a) and (c) of the Bankruptcy Code and Bankruptcy Rule 3019 and are accordingly hereby approved with such modifications being expressly incorporated into the Plan:

    A.    <u>Exhibit A</u> (modifications related to the Claims of the IRS).

    B.    <u>Exhibit B</u> (modifications related to the Claims of the DOL).

    C.    <u>Exhibit C</u> (modifications related to the Claims of BofA).

    A.    <u>Exhibit D</u> (specific modifications to various sections of the Plan).

    B.    <u>Exhibit E</u> (modifications to the form of the Liquidating Trust Agreement appended to the Plan).

    C.    <u>Exhibit F</u> (modifications related to the Claims of Old Point).

The Debtor, the Liquidating Trustee, and the Plan Agent are authorized to present as the "Plan" a unified restatement of the Plan and its attachments that they mutually agree embodies the foregoing modifications and other relevant provisions of this Order.  The version of the Plan, as so

restated, shall be appropriately and conspicuously identified and (together with a marked copy showing modifications) filed with the papers in the Bankruptcy Case with the endorsement of each of them and their respective counsel indicating their approval and conformity of the document with the terms of this paragraph.

3.    <u>Confirmation</u>.  The Plan, as modified in this Confirmation Order, is approved and confirmed under § 1129 of the Bankruptcy Code.  The terms of the Plan, as modified in this Confirmation Order, which modifications are incorporated by reference and are an integral part of the Plan, are binding upon the Debtor, all of his creditors and all parties in interest.

4.    <u>Other Plan Documents</u>.  Any Plan exhibit and any amendments, modifications, and supplements, all related documents and agreements or documents and agreements relating to consummation and implementation of the Plan and any other documents and agreements introduced into evidence by the Debtor at the Confirmation Hearing (including all exhibits and attachments and documents) or any document referenced by the Debtor at the Confirmation Hearing (collectively, the "Plan Documents"), and the execution, delivery, and performance by the Debtor are authorized and approved.  Without need for further order or authorization of the Bankruptcy Court, the Debtor, the Reorganized Debtor, Plan Agent and/or Liquidating Trustee, as applicable, is authorized and empowered to make any and all modifications to any and all documents included in any of the Plan Documents that do not materially modify the terms of such documents and are consistent with the Plan and this Order.

5.    <u>Provisions Of Plan And Confirmation Order Are Nonseverable And Mutually Dependent</u>.  The provisions of the Plan and this Order, including the findings of fact and conclusions of law, are nonseverable and mutually dependent.

6.    <u>Matters Relating To Implementation Of the Plan: Authorizations</u>.    The approvals and authorizations specifically set forth in this Order are nonexclusive and are not intended to limit the authority of the Debtor, Reorganized Debtor, Plan Agent or Liquidating Trustee, as the case may be, to take any and all actions necessary or appropriate to implement, effectuate and consummate any and all documents or transactions contemplated by the Plan or this Order.    The Bankruptcy Court authorizes the Debtor, Reorganized Debtor, Plan Agent or Liquidating Trustee, as the case may be, to consummate the Plan after entry of this Order.    The Debtor, Reorganized Debtor, Plan Agent or Liquidating Trustee, as the case may be, are authorized to execute, acknowledge, and deliver such deeds, assignments, conveyances, and other assurances, documents, instruments of transfer, uniform commercial code financing statements, trust agreements, mortgages, indentures, security agreements, and bills of sale and to take such other actions as may be reasonably necessary to perform, and to implement, the terms and provisions of the Plan, all transactions contemplated by the Plan, and all other agreements related thereto.

7.    <u>Classification Controlling</u>.    The classifications of Claims for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan.    The classifications set forth on the Ballot tendered to, or returned by, the Holders of Claims in connection with voting on the Plan:  (a) were set forth on the Ballot solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims under the Plan for distribution purposes;  and (c) shall not be binding on the Debtor, Reorganized Debtor, Plan Agent or Liquidating Trustee.

8.    <u>Exemption From Certain Taxes and Recording Fees</u>.    Pursuant to § 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of any security, or the making, delivery, filing

10

or recording of any instrument under or in connection with the Plan shall not be taxed under any law imposing a "stamp tax or similar tax"  within the meaning of Section 1146(a).  For the purpose of guidance, and without limiting the generality of the foregoing, the Bankruptcy Court deems any transfers of Plan Assets or Trust Assets or interest in Plan Assets or Trust Assets (including the grant of a security interest) from the Debtor or Reorganized Debtor to any Person, and any transfer or retransfer of Plan Assets or Trust Assets or an interest in Plan Assets or Trust Assets (including the grant of a security interest) by the Plan Agent or Liquidating Trustee to any Person, to be a transfer under the Plan.  The Bankruptcy Court shall retain its jurisdiction with respect to these matters.

9.    <u>Executory Contracts and Unexpired Leases</u>.  Except as otherwise provided in this Order and the Plan, all Executory Contracts and Unexpired Leases shall be rejected upon the Effective Date pursuant to Bankruptcy Code §§ 365 and 1123(b)(2).  Any cure Claim arising from the assumption and assignment of an Executory Contract or Unexpired Lease pursuant to an Order of the Bankruptcy Court entered prior to, or in connection with, this Order, to the extent not subject to an objection or agreement between the Debtor and the non-debtor party to such Executory Contract or Unexpired Lease, shall be paid in full by the Debtor on the Effective Date or as otherwise agreed between the parties to such Executory Contract or Unexpired Lease. Notwithstanding any language in the Debtor's descriptions of any of the Executory Contracts and/or Unexpired Leases in the Plan or the Plan Documents, the language contained in the Executory Contracts and Unexpired Leases themselves shall control.

10.    <u>Payment Of Fees</u>.  All fees payable by the Debtor under 28 U.S.C. § 1930 and that are due and owing shall be paid on or before the Effective Date.  Thereafter, the Reorganized Debtor, Plan Agent or Liquidating Trustee, as the case may be and in accordance with the Plan,

shall pay any statutory fees that may be due until the Bankruptcy Case is closed, converted or dismissed.

11.    <u>Professional Claims And Final Fee Applications</u>.  All Persons seeking an award by the Bankruptcy Court of a fee incurred through and including the Effective Date shall, unless otherwise ordered by the Bankruptcy Court, file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is no later than thirty (30) days after the Effective Date, unless such date is extended by the Bankruptcy Court.  Such fees shall be paid as provided in Article II of the Plan.  Following the Effective Date, a professional may be employed and paid by the Reorganized Debtor in the ordinary course and from Non-Plan Assets, without any further notice to, or action by, the Bankruptcy Court.

12.    <u>Other Administrative Claims</u>.  All other Allowed Administrative Expense Claims shall be paid as provided in the Plan.  Proofs of Administrative Expense Claims and requests for payment of Administrative Expense Claims must be electronically filed, on or before thirty (30) days after the Effective Date, with the Court and served on (a) Paul K. Campsen, Esquire, Counsel for the Reorganized Debtor, 150 West Main Street, Suite 2100, Norfolk, VA 23510 and (b) Kenneth N. Whitehurst, Esquire, Office of the United States Trustee, Room 625, Federal Building, 200 Granby Street, Norfolk, VA 23510.  Notwithstanding anything to the contrary, no proof of Administrative Expense Claim or application for payment of an Administrative Expense Claim need be filed for the allowance of fees of the United States Trustee arising under 28 U.S.C. § 1930 or for the allowance of administrative tax liabilities owed to the IRS.  Any Person that fails timely to file a proof of Administrative Expense Claim as provided in this Order or request for payment shall be forever barred from asserting such Claim against the Debtor, the Estate, the Reorganized Debtor, the Liquidating Trust, the Plan Agent or their respective property, and the

Holder shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset or recover such Administrative Expense Claim.  Allowed Administrative Expense Claims shall be paid in accordance with Article II of the Plan and the terms of <u>Exhibit A</u> relating to the IRS.

13.    <u>Resolution Of Other Claims</u>.    Except as otherwise ordered by the Bankruptcy Court, any Claim that is not an Allowed Claim shall be determined, resolved, or adjudicated in accordance with the terms of Article III of the Plan and this Confirmation Order.  The Debtor or Reorganized Debtor, as the case may be, may file objections in the Bankruptcy Court to the allowance of any Claim, except for the Claim of JEI in Class 3 at any time prior to the Effective Date and to Administrative and Priority Claims at any time.  Thereafter, only the Liquidating Trustee shall have authority to file, settle, compromise, withdraw or litigate the judgment objections to Claims, except for the Claim of JEI in Class 3.

14.    <u>Claims and Their Treatment</u>.    Allowed Claims of all other parties shall be paid or otherwise satisfied as provided in the Plan.

15.    <u>Effects of Confirmation</u>.    Except as otherwise specifically provided in, or contemplated by, this Order, the Plan together with the Plan Documents shall, in addition to the effects prescribed by Bankruptcy Code § 1141:

(a)    Bind (i) the Debtor and (ii) all Holders of Claims, whether or not they filed a proof of claim, whether or not they accept this Plan and whether or not the Claim of such Holder is impaired or Allowed under the Plan.

(b)    Bind (i) the Debtor and (ii) other relevant Persons to the terms and conditions of the respective contracts as amended by the Plan

13

16. <u>Injunctions; JEI Relief from Stay</u>.  The limited injunction provisions set forth in Article VIII of the Plan are approved in their entirety.  Except to the extent otherwise provided in the Plan, from and after the Effective Date all persons who have held, hold or may hold Claims against in the Debtor, except for JEI with respect to the property at 450 Alton Road, Unit #802, Miami Beach, Florida (the "Miami Condo"), as provided in Exhibit E to the Plan and Exhibit D to this Order, are permanently enjoined from taking any of the following actions against the Debtor on account of any such Claims:  (a) commencing or continuing, in any manner or in any place, any action or other proceeding; (b) enforcing or attaching, collecting or recovering, in any manner, any judgment, award, decree or order; (c) creating, perfecting or enforcing any lien or encumbrance; (d) asserting a setoff, right or subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor; and (e) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan.  JEI is hereby granted relief from the automatic stay of Section 362(a) of the Bankruptcy Code to enforce its alleged judgment lien against the Miami Condo in accordance with Exhibit E to the Plan and Exhibit D to this Order.

17. <u>Releases.</u>

a.    Release of Brenda Boddie and Kijafa Frank.  On the Effective Date, Brenda Boddie and Kijafa Frank shall:  (a) each deliver a signed financial statement; and (b) execute endorsements and/or assignments to the Liquidating Trustee, of all of their respective right, title and interest in the Contributed Notes and Investments.  In consideration for the assignments, on the Effective Date, Brenda Boddie and Kijafa Frank each shall be released from any and all claims arising from the specific payments identified in **Schedule 8.4** of the Plan.  This release is of all

claims with respect to **Schedule 8.4** of the Plan that could have been asserted by the Debtor, Reorganized Debtor, Liquidating Trustee, or any Trustee or Creditor.

b.    Release of Dischargeability Claims.    In consideration of the Post-Confirmation Income Contributions, all claims against the Debtor seeking to have a Claim excepted from discharge under § 523 of the Bankruptcy Code are released and any open adversary proceedings seeking relief under § 523 of the Bankruptcy Code is deemed dismissed with prejudice as of the Effective Date.  Notwithstanding the foregoing tax claims owed to the IRS that are not dischargeable under Section 523 of the Bankruptcy Code, perfected liens associated with such claims and the Allowed DOL Claim remain in full force and effect.

17.    <u>Controlling Provisions</u>.  In the event and to the extent that any provision of this Order is determined to be inconsistent with any provision of the Plan or any Plan Document, such provision of this Order shall control and take precedence in all respects.

18.    <u>Retention Of Jurisdiction</u>.  Pursuant to §§ 105(a), 1127 and 1142 of the Bankruptcy Code, and, notwithstanding the entry of this Order or the occurrence of the Effective Date, the Court shall retain jurisdiction of those matters set forth in Article XI of the Plan.

20.    <u>Notices</u>.  Notice required by the Plan, or given by any creditor or party in interest concerning the Plan, shall be to all of the following:

> Paul K. Campsen, Esquire
> Kaufman & Canoles, a
>   professional corporation
> 150 West Main Street, Suite 2100
> Norfolk, VA  23510
> Telephone:  (757) 624-3000
> Facsimile:  (757) 624-3169
>
> Kenneth N. Whitehurst, III, Esquire
> Office of the United States Trustee
> Room 625, Federal Building
> 200 Granby Street

Norfolk, VA  23510
Telephone:  (757) 441-6012
Telecopy:  (757) 441-3266

21.   <u>Notice of Entry of Confirmation Order</u>.  On or before the tenth (10th) Business Day following the date of entry of this Order, the Debtor shall serve notice of entry of this Order pursuant to Bankruptcy Rules 2002(f)(7), 2002(k), and 3020(c) on all Creditors, the United States Trustee, and other parties in interest, by causing notice of entry of this Order (the "Notice of Confirmation"), to be delivered to such parties by first-class mail, postage prepaid.  This notice is adequate under the particular circumstances and no other or further notice is necessary.

22.   <u>Budget</u>.  The Debtor shall retain Mr. Ira Spiegel to act in an official capacity as the Debtor's financial advisor for at lease two (2) years following the entry of this Order.  Moreover, during the two (2) year period following the entry of this Order the Debtor shall adhere to the budget attached as **Exhibit G** to this Order.  Mr. Spiegel shall notify the United States Trustee and the Liquidating Trustee of any material failure by the Debtor to comply with the foregoing.  At any time during the pendency of this requirement, the Debtor may petition the Bankruptcy Court to increase the amounts allocated for his personal living expenses if good cause exists, and, at the conclusion of this two (2) year period, the Debtor may petition the Bankruptcy Court to remove the requirements imposed by this paragraph; provided, however, that such petitions and the Bankruptcy Court's rulings on such petitions shall not have the effect of altering the Post-Confirmation Income Contributions payable by the Debtor pursuant to Section 5.3 of the Plan.  Any petition to alter the terms of this paragraph must be accompanied by notice to the Office of the United States Trustee, the Liquidating Trustee and all Creditors.

Newport News, Virginia                     ENTERED this ___ day of October 2009:

16

_____
United States Bankruptcy Judge

**WE ASK FOR THIS:**

Michael V. Blumenthal, Esq.
Steven B. Eichel, Esq.
CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, New York 10022
(212) 223-4000 – Telephone
(212) 223-4134 – Facsimile

and

 _/s/ Paul K. Campsen_____
Paul K. Campsen, Esq. (VSB No. 18133)
Dennis T. Lewandowski, Esq. (VSB No. 22232)
Kaufman & Canoles, a professional corporation
150 W. Main Street, Suite 2100
Norfolk, Virginia 23510
(757) 624-3000 – Telephone
(757) 624-3169 – Facsimile
*Counsel for the Debtor*


**SEEN:**


 _/s/ Ross C. Reeves_____
Ross C. Reeves, Esq. (VSB No. 13628)
John D. McIntyre, Esq. (VSB No. 35925)
Laura C. Pyle, Esq. (VSB No. 73338)
WILLCOX & SAVAGE, P.C.
One Commercial Place, Suite 1800
Norfolk, Virginia 23510
(757) 628-5500 – Telephone
(757) 628-5566 – Facsimile
*Counsel for the Official Committee of Unsecured Creditors*

  _/s/ Kenneth N. Whitehurst, III_
Kenneth N. Whitehurst, III, Esq. (VSB No. 48919)
Office of the United States Trustee
200 Granby Street, Room 625
Federal Building
Norfolk, Virginia 23510
(757) 441-6012 – Telephone
(757) 441-3266 – Facsimile
*Trial Attorney*


  _/s/ Linda Lemmon Najjoum_
Benjamin C. Ackerly, Esq. (VSB No. 09120)
Hill B. Wellford, Jr., Esq. (VSB No. 6020)
Arthur E. Schmalz. Esq. (VSB No. 36014)
Linda Lemmon Najjoum (VSB No. 22584)
Hunton & Williams LLP
951 East Byrd Street
Richmond, Virginia 23219
1751 Pinnacle Drive, Suite 1700
McLean, Virginia 22102
(804) 788-8200 – Telephone
(804) 788-8218 – Facsimile

and

Michael W. Smith (VSB No. 01125)
Warren David Harless (VSB No 20816)
Jennifer M. McLemore (VSB No. 47164)
Christian & Barton, L.L.P.
909 East Main Street, Suite 1200
Richmond, Virginia 23219
(804) 697-4100 – Telephone
(804) 697-4112 – Facsimile
*Counsel for Joel Enterprises, Inc.*

  */s/ Adam Welsh*
Adam Welsh, Esq.
Office of the Solicitor
Suite 630E, The Curtis Center
170 S. Independence Mall West
Philadelphia, PA  19106-3306
(215) 861-5159 – Telephone
(215) 861-5162 – Facsimile
welsh.adam@dol.com – Email
*Counsel for the United States Department of Labor*


  */s/ Robert K. Coulter*
Robert K. Coulter, Esq. (VSB No. 42512)
Assistant United States Attorney
2100 Jamieson Ave.
Alexandria, VA  22314
Tele:   (703) 299-3745
*Counsel for the United States of America*
  *on behalf of the Internal Revenue Service*


  */s/ Patrick J. McKenna*
Patrick J. McKenna, Esq. (VSB No. 31058)
Dana S. Power, Esq. (VSB No. 33101)
Glasser and Glasser, P.L.C.
Crown Center, Suite 600
580 E. Main Street
Norfolk, VA  23510
Tele:   (757) 625-6787
*Counsel for Old Point National Bank*


  */s/ Donna J. Hall*
Donna J. Hall, Esq. (VSB No. 26513)
Samuel I White, PC
5040 Corporate Woods Drive, Suite 120
Virginia Beach, Virginia 23462
Tele:   (757) 490-9284
*Counsel for Bank of America*


## **CERTIFICATE**

Pursuant to L.R. 9022-1(C)(2) of the Local Rules of the United States Bankruptcy Court for the Eastern District of Virginia, I certify that the proposed order has been served upon all necessary parties this 9th day of October, 2009.

19

_/s/ Paul K. Campsen_

08-50775~109200995551872.DOC

# EXHIBIT A

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Newport News Division

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| **MICHAEL D. VICK,** | ) | **Case No. 08-50775-FJS** |
| | ) | |
| Debtor. | ) | **Chapter 11** |
| | ) | |

## <u>CONSENT ORDER</u>

It is hereby represented, pursuant to Fed. R. Bankr. Pro. 3019, that the modifications to the plan contained in this Order and set forth below, do not adversely change the treatment of the claim of any creditor who has not accepted the modifications in writing, and in consideration for the modifications, the notice previously given of the confirmation hearing and the endorsements of the committee appointed under the Bankruptcy Code and the Office of the United States Trustee, no notice of the modifications is necessary.   Notwithstanding any provision of Michael D. Vick's ("Debtor" and "Reorganized Debtor" upon confirmation of the Plan) Third Plan of Reorganization ("Plan"), the following provisions shall apply to the payment of liabilities to the IRS ("IRS").

1.     <u>Post Petition Tax Liabilities of Michael Vick</u>: The tax liabilities of the Debtor to the IRS for any tax year or period which ends after the petition date, July 7, 2008, shall constitute a post petition liability of the Debtor and Reorganized Debtor to be paid in his normal course of

Robert K. Coulter (VSB No. 42412)
Assistant United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel: (703) 299-3745
*Counsel for the United States of America*

business and shall not be subject to the terms of this Plan including the discharge/release/injunction provisions thereto, except as provided herein.

2.    <u>Administrative Liabilities Owed to the U.S. Marshal's Service</u>: The Request for Payment of Administrative Liabilities filed by the U.S. Marshal's Service is allowed in full. The United States of America is permitted to set off such liability from funds available from the overpayment of restitution.

3.    <u>Administrative Tax Liabilities Owed to the Internal Revenue Service</u>: Administrative Expense Tax Liabilities of the Debtor's estate shall be paid by the Plan Agent in accordance with Plan § 2.2.2. The Plan Agent is authorized and directed to retain sufficient funds for the payment thereof.

4.    <u>Secured Claims</u>: The secured claim of IRS is allowed in full as filed on its proof of claim. The secured claim of the IRS shall be paid at the closing of the sale of real and personal property to which its lien has attached by virtue of its Notice of Federal Tax Lien (the "IRS Liened Property"). The IRS shall retain its liens upon the IRS Liened Property in the hands of the Plan Agent and/or the Liquidating Trust (excluding the IRS Liened Property identified in Section 2.3.2 of the Third Amended Plan) until the secured claim of the IRS is paid in full. In the event that the secured claim of the IRS is not fully satisfied (including interest thereon) within 18 months of the effective date, the secured claim of the IRS shall be paid by the Liquidating Trustee as a Priority Income Tax Claim as provided in the Plan plus interest at the rate of 4 percent per annum pursuant to 26 U.S.C., Sections 6621 and 6622, with the first payment due to commence eighteen (18) months after the Effective Date. Payment of the secured claim of the IRS by the Liquidating Trustee as a priority income tax claim pursuant to Section 2.3.2 shall not alter the obligation to pay the secured claim from the proceeds of the IRS

2

Liened Property. The Plan Agent and the Liquidating Trustee shall be free to use the proceeds of

the IRS Liened Property specifically identified in Section 2.3.2 of the Third Amended Plan free

and clear of the liens of the IRS, and such liens are hereby released.

The written consent of the IRS is required for the sale of the West Creek Property for any

amount less than one million dollars ($1,000,000).

5.     Priority Claim: As provided in the Plan, the unsecured Priority Income Tax

Claim of the IRS (including deficiencies on the secured claim of the IRS) shall be paid in equal

quarterly payments within 5 years of the Order of Relief, with interest from the petition date,

July 7, 2008, at the rate of 4 percent per annum pursuant to 26 U.S.C., Sections 6621 and 6622,

with the first payment due to commence eighteen (18) months after the Effective Date.

Paragraph 2.3.2(b) of the Plan is deleted in its entirety and replaced with the following:

> (b) Except as provided above, the Priority Income Tax Claims shall be
>
> paid, if not already paid from the liquidation of Plan Assets or another
>
> source, pro rata, from the proceeds of the sale of the Governor's Pointe
>
> Property. The Liquidating Trustee may elect to pay the Priority Income
>
> Tax Claims at any time after the Effective Date.

The Liquidating Trustee shall cause a first priority deed of trust to be placed on the

Governor's Pointe Property upon transfer of the property to the Liquidating Trust as security for

the payment of the priority tax liabilities due to the IRS. Such deed of trust shall be in favor of

the IRS, shall be duly recorded upon the transfer of the Governor's Pointe Property to the

Liquidating Trust, and shall be prepared, recorded and perfected at the Debtor's cost and

expense. The Liquidating Trustee shall take all action necessary to ensure the proper recording

thereof. Proof of the recordation of the deed of trust shall be provided to counsel for the IRS

3

within 10 days of its recordation. Upon the sale of the Governor's Pointe Property, the proceeds of the sale shall be applied first to the Priority Income Tax Claim of the IRS. In the event that the Governor's Pointe Property is not sold within eighteen (18) months of the Effective Date, the equal quarterly payments referred to above shall begin and shall continue until the Priority Income Tax Claim of the IRS is satisfied in full as a result of the quarterly payments or the sale of the Governor's Pointe Property.

6.    Discharge: Notwithstanding any provision of the Third Amended Plan to the contrary, including §§ 4.2(f), 7.2.3, 8.1, 8.2, 8.5, thereof and §2.2 of the Liquidating Trust Agreement, the Debtor shall not be discharged from any liability owed to the United States of America that is otherwise non-dischargeable pursuant to the relevant provisions of Title 11 and other non-Title 11 sourced statutes, and the liens of the IRS shall not be impaired, except as described herein and provided for in the Plan, as a result thereof. The Debtor agrees that the tax liabilities set forth on the proof of claim of the IRS as of the Confirmation Hearing are nondischargeable. Section 4.2(f) of the Third Amended Plan providing for a discharge of such liabilities shall not apply to the IRS. Section 8.2.1 of the Plan, providing for the satisfaction of claims and interests, is amended to exclude both priority and secured claims of the IRS.

7.    Set Off: Notwithstanding the provisions of the Plan, the United States of America shall be entitled, but not required, to set off those monies held by the U.S. Marshals Service as an overpayment of restitution in the approximate amount of $20,000, against any: (i) allowed administrative claim of the United States for expenses incurred in complying with the Writ of Habeas Corpus Ad Testificandum issued on or about March 13, 2009; and/or (ii) the prepetition tax claim of the IRS. Section 4.7 of the Liquidating Trustee agreement relating to set off shall not apply to the United States of America. Nothing in this Order or the Plan shall prohibit the

4

Debtor, Plan Agent or Liquidating Trustee from seeking to utilize the right of set off against the United States of America from a Court of competent jurisdiction.

8. <u>Claim Amendment</u>: Notwithstanding §7.3.2 of the Plan, nothing shall be construed as limiting the right of the IRS to file an amended claim in this proceeding based upon a readjustment of the Debtor's tax liabilities. The Debtor and/or any other proper party in interest shall retain their rights to oppose or contest such claim amendment.

9. <u>Jurisdiction</u>: Sections 11.1 and 11.2 of the Plan and Section 11.7 of the Liquidating Trust Agreement shall not be construed as to confer exclusive jurisdiction upon the Bankruptcy Court over matters involving the United States of America.

10. <u>Amendment of Trust Agreement</u>: Modification of the Liquidating Trust Agreement pursuant to Section 10.1 thereof shall not be permitted without notice and approval by the Bankruptcy Court to the extent such modification would change the terms of distribution or rights of the IRS.

11. <u>Default</u>:

(a) The Debtor and Reorganized Debtor will pay all federal income taxes as they become due, will file all federal tax returns on a timely basis, will comply with all provisions of Title 26, U.S.C. and will comply with all terms of the Plan applicable to the IRS. If the IRS declares the Debtor to be in default of these obligations, then the IRS may collect any unpaid liabilities through the administrative collection provisions of the Internal Revenue Code, without the need for Bankruptcy Court approval. This shall include full administrative collection powers and the rights of the IRS, including, but not limited to, the assessment of taxes, the filing of a Notice of Federal Tax lien and the powers of levy, seizure, and sale under Subtitle F, Procedure and Administration, of the Internal Revenue Code, provided, however, Plan Assets,

5

Trust Assets and payments under Section 2.2.4 of the Plan shall be exempt from such collection process. In the event of a default, the IRS may utilize its administrative collection remedies against property that does not constitute a Plan Asset, Trust Asset and payments under Sec. 2.2.4 of the Plan, and/or future compensation over and above that dollar amount required by the Plan to be paid to the Liquidating Trust.

(b)     If the Plan Agent or Liquidating Trustee fails to make any payment to the IRS called for under the Plan, or fails to abide by any other term of the Plan applicable to the IRS, then the IRS may declare the Plan Agent or Liquidating Trustee to be in default and the defaulting party shall have 30 days thereafter to cure excepting in the case of a non-monetary default, the defaulting party shall have a reasonable time to cure. Failure to declare a default does not constitute a waiver by the IRS of the right to declare a default.

If the Plan Agent or Liquidating Trustee defaults in a payment obligation to the IRS under the Plan which remains uncured after written notice of the default, then the entire liability, together with any unpaid current liabilities, shall become due and payable by the Plan Agent or Liquidating Trustee immediately upon written demand to the Plan Agent or Liquidating Trustee. If full payment is not made, then the IRS may collect any unpaid liabilities through the administrative collection provisions of the Internal Revenue Code, without the need for Bankruptcy Court approval.

(c)     The rights of the IRS in the event of default are clarified as follows:

1.     The IRS shall retain its full administrative powers with regard to real property encumbered by its Notice of Federal Tax Lien. In the event that such real property is not sold within 18 months, the IRS is entitled to, but not required to exercise such rights to the fullest extent allowed by law.

6

2.      Personal property, once transferred to the Plan Agent or Liquidating Trust shall not be subject to levy/garnishment powers of the IRS.  The IRS shall be entitled to, but not required to, seek to collect against such property by redress to a court of competent jurisdiction.

3.      In the event of default, the IRS may utilize its administrative collection remedies against property that does not constitute a Plan Asset, Trust Asset, payments under Sec. 2.2.4 of the Plan, and/or future compensation over and above that dollar amount required by the Plan to be paid to the Liquidating Trust.  Plan Assets, Trust Assets and payments under Sections 2.2.4 of the Plan shall be exempt from the administrative collection process.

12.    Unclaimed Property: The provisions of Section 4.9 of the Liquidating Trust Agreement shall not apply to the IRS.  The provisions of Section 7.4 of the Plan relating to unclaimed property shall apply in lieu thereof, with respect to the IRS.

13.    Priority Tax Claim: Section 1.69 of the Plan, which defines the terms "Priority Tax Claim" and "Priority Income Tax Claim" is amended to provide that such terms shall include all tax claims of the IRS entitled to priority pursuant to Section 507 of the Bankruptcy Code.

Date:  October ____, 2009                    Entered this ____ day of October, 2009


                                             _____
                                             The Honorable Frank J. Santoro
                                             United States Bankruptcy Court Judge

7

**STIPULATED AND AGREED:**

/s/ Robert K. Coulter
Robert K. Coulter (VSB No. 42512)
Assistant United States Attorney
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel: (703) 299-3745
Fax: (703) 299-2584
*Counsel for the United States of America*

/s/ Paul K. Campsen
Paul K. Campsen, Esq. (VSB No. 18133)
Dennis T. Lewandowski, Esq. (VSB No. 22232)
Kaufman & Canoles, a professional corporation
150 W. Main Street, Suite 2100
Norfolk, Virginia 23510
(757) 624-3000 – Telephone
(757) 624-3169 – Facsimile
*Counsel for the Debtor*


Kenneth N. Whitehurst, III, Esq. (VSB No. 48919)
Office of the United States Trustee
200 Granby Street, 625 Federal Building
Norfolk, Virginia 23510
(757) 441-6012 – Telephone
(757) 441-3266 – Facsimile
*Trial Attorney*

/s/ Ross C. Reeves
Ross C. Reeves, Esq. (VSB No. 13628)
John D. McIntyre, Esq. (VSB No. 35925)
Laura C. Pyle, Esq. (VSB No. 73338)
WILLCOX & SAVAGE, P.C.
One Commercial Place, Suite 1800
Norfolk, Virginia 23510
(757) 628-5500 – Telephone
(757) 628-5566 – Facsimile
*Counsel for the Official Committee of Unsecured Creditors*

8

### CERTIFICATE

I hereby certify that in accordance with Local Rule 9022-1(C)(1), this Consent Order has been endorsed by all necessary parties.

_____

::ODMA\PCDOCS\DOCSNFK\1543471\2

9

# EXHIBIT B

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NEWPORT NEWS DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MICHAEL D. VICK, | ) | Case No. 08-50775 (FJS) |
| | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |

## STIPULATION

Pursuant to Fed. R. Bankr. Pro. 3019, the parties respectfully represent that the provisions of

this Stipulation do not adversely change the treatment of the claim of any creditor who has not

accepted the Order in writing.  Notwithstanding any provisions of Michael D. Vick's ("Debtor's")

Third Amended Plan of Reorganization ("Plan," "POR") in the above-captioned matter, the

following provisions shall apply to Debtor's obligations to and the payment of liabilities to the

United States Department of Labor ("Secretary") and the MV7 Defined Benefit Pension Plan

("Pension Plan"):

1.      Notwithstanding any provision of the POR to the contrary, Debtor's debt to the
Pension Plan and the Secretary ("DOL Allowed Claim"), as set forth in the proposed
adjudication of Solis v. Vick, et al., 4:09cv37 (attached as Exhibit 1 to Debtor's
Motion to Approve Compromise at docket entry no. 728), is an Allowed Claim and is
non-dischargeable.

2.      Provisions in the POR that seek to dismiss with prejudice any open adversary
proceedings seeking relief under § 523 of the Bankruptcy Code as of the
Confirmation Date, specifically including but not limited to ¶ 8.5, shall not affect or
control any adversary proceeding of the Secretary.  The Secretary and Debtor believe
that they have resolved the adversary proceeding, Solis v. Vick, Adv. Pro. No. 09-
05009-FJS (attached as Exhibit 2 to Debtor's Motion to Approve Compromise at
docket entry no. 728) and expect that it will be dismissed following entry of a consent
order in that matter.

3.      Notwithstanding any provisions of the POR to the contrary, including but not limited

to ¶¶ 7.2.3, 8.1, 8.2, and 8.5 that seek to discharge a non-dischargeable debt, the DOL Allowed Claim shall not be discharged.

4.    No monies that were removed from the Pension Plan shall be used as a payment for legal services.  Pursuant to the terms of the proposed consent order in <u>Solis v. Vick, et al.</u>, 4:09cv37, the parties agree that a total of $416,461.10 shall be returned to the Pension Plan within ninety days following entry of the consent judgment.  The consent judgment also provides that additional payments may be necessary.

5.    Any recovery of Pension Plan assets from Debtor's pending lawsuit in <u>Vick v. Wong, et al.</u>, 2:09cv30, shall be returned to the Pension Plan and shall not become part of the bankruptcy estate or be delivered to Debtor.  This paragraph does not apply to any recovery by Debtor of non-Pension Plan assets.

6.    Any provisions, including but not limited to ¶¶ 11.1(f), which seek to extend the jurisdiction of the Bankruptcy Court over lawsuits pending in federal district court, including but not limited to <u>Solis v. Vick, et al.</u>, 4:09cv37, shall not apply to federal district court actions filed by the Secretary and shall not preclude the removal of the Secretary's adversary action, <u>Solis v. Vick</u>, Adv. Pro. No. 09-05009-FJS, from the Bankruptcy Court to the District Court.

7.    To the extent that the Plan seeks to transfer assets from MV7, LLC to pay for Debtor's individual debts, no such transfer shall occur until MV7 has satisfied its liabilities in <u>Solis v. Vick, et al.</u> 4:09cv37.

8.    Any provision that contains releases or other exculpatory language for parties, including professionals, other than the Debtor shall not be construed to bar or limit actions by the Secretary against non-Debtors.

STIPULATED AND AGREED:


_____
Adam Welsh, Esq.
Office of the Solicitor
Suite 630E, The Curtis Center
170 S. Independence Mall West
Philadelphia, PA  19106-3306
(215) 861-5159 – Telephone
(215) 861-5162 – Facsimile
welsh.adam@dol.com – Email
*Counsel for the United States Department of Labor*

 */s/ Paul K. Campsen*

Paul K. Campsen, Esq. (VSB No. 18133)
Dennis T. Lewandowski, Esq. (VSB No. 22232)
Kaufman & Canoles, a professional corporation
150 W. Main Street, Suite 2100
Norfolk, Virginia 23510
(757) 624-3000 – Telephone
(757) 624-3169 – Facsimile

and

Michael V. Blumenthal, Esq.
Steven B. Eichel, Esq.
CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, New York 10022
(212) 223-4000 – Telephone
(212) 223-4134 – Facsimile
*Counsel for the Debtor*

::ODMA\PCDOCS\DOCSNFK\1541883\3

# EXHIBIT C

**3.3**      **Class 3 shall consist of all Allowed General Unsecured Claims.**

**3.4**      **Class 4 shall consist of all Allowed Secured Claims, other than the Allowed**

**B of A Secured Claims and Allowed Secured Tax Claims.**

**3.5**      **Class 1, Class 2, Class 3 and Class 4 are impaired under the Plan and all**

**Holders of Allowed Claims in each Class are entitled to vote on the Plan[1]. If there are no**

**creditors in a class at commencement of the Confirmation Hearing, that class shall no**

**longer exist.**

## ARTICLE IV

## TREATMENT OF CLAIMS[2]

**4.1**      **Class 1 Claims.**

(a)      Class 1(a) Secured Claim.  The Allowed Class 1(a) Secured Claim shall be

paid from the proceeds of the sale of the Darlington Run Property, as provided in section 5.1 of

the Plan.  The Net Proceeds must be sufficient to fully satisfy the total payoff due to B of A with

the Proceeds to be paid directly to B of A at closing.  The sale will be subject to the B of A deed

of trust, which will be satisfied at closing.

If an offer of purchase may result in less than full payoff of the Allowed

Class 1(a) Secured Claim, the offer, in order to be considered, must be forwarded to B of A and

---

[1] Notwithstanding the foregoing, Claims that are Disputed Claims are not entitled to vote on the Plan unless an order authorizing such Holder of the Disputed Claim to vote is entered by the Court.
[2] To the extent that any property serving as collateral for a Secured Claim is sold prior to Confirmation, then that Secured Claim shall be paid in accordance with any applicable sale order, as opposed to the terms of this Plan.

its counsel for review.  Only with the express written consent of B of A can a "short" sale proceed.

If the Net Proceeds from the sale of the Darlington Run Property are not sufficient to pay the Allowed Class 1(a) Secured Claim in full, the unpaid portion of the Claim shall be treated as a Class 3 Claim.

If on or before October 1, 2009, the Darlington Run Property has not been sold or the B of A's Allowed Class 1(a) Secured Claim has not been paid in full, then B of A shall have relief from the automatic stay with no further notice, opportunity for objection or order required.

(b)  Class 1(b) Secured Claim.  The Allowed Class 1(b) Secured Claim shall be paid from the proceeds of the sale of the West Creek Property, as provided in section 5.1 of the Plan.  The Net Proceeds must be sufficient to fully satisfy the total payoff due to B of A with the proceeds to be paid directly to B of A at closing.  The sale will be subject to the B of A deed of trust, which will be satisfied at closing.

If an offer of purchase may result in less than full payoff of the Allowed Claim 1(b) Secured Claim, the offer, in order to be considered, must be forwarded to B of A and its counsel for review.  Only with the express written consent of B of A can a "short" sale proceed.

If the Net Proceeds from the sale of the West Creek Property are not sufficient to pay the Allowed Class 1(b) Secured Claim in full, the unpaid portion of the claim shall be treated as a Class 3 Claim.

If on or before October 1, 2009, the West Creek Property has not been sold or the B of A Class 1(b) Secured Claim has not been paid in full, then B of A shall have relief from the automatic stay with no further notice, opportunity for objection or order required.

(c)     Class 1(c) Secured Claim.  The Allowed Class 1(c) Secured Claim shall be paid from the proceeds of the sale of the Carlas Hope Property, as provided in section 5.1 of the Plan.  The Net Proceeds must be sufficient to fully satisfy the total payoff due to B of A with the proceeds to be paid directly to B of A at closing.  The sale will be subject to the B of A deed of trust, which will be satisfied at closing.

If an offer of purchase may result in less than full payoff of the Allowed Claim 1(c) Secured Claim, the offer, in order to be considered, must be forwarded to B of A and its counsel for review.  Only with the express written consent of B of A can a "short" sale proceed.

If the Net Proceeds from the sale of the Carlas Hope Property are not sufficient to pay the Allowed Class 1(c) Secured Claim in full, the unpaid portion of the claim shall be treated as a Class 3 Claim.

If on or before October 1, 2009, the Carlos Hope Property has not been sold or the B of A Allowed Class 1(b) Secured Claim has not been paid in full, then B of A shall have relief from the automatic stay with no further notice, opportunity for objection or order required.

(d)     Class 1(d) Secured Claim.   The Debtor has the election to retain the Haywagon Trail Property.

If he chooses to retain it, then the terms of the loan secured by the Haywagon Trail Property shall be modified as follows:  (i) the aggregate arrearage due on the note secured by the Haywagon Trail Property, estimated to be $63,268.44, shall be paid by the Reorganized Debtor from Retained Assets on or before October 15, 2009; and (ii) commencing on August 1, 2009, and on the first day of each succeeding month, the Debtor shall pay the monthly (including real estate tax and insurance escrows) payments required by the loan documents secured by the Haywagon Trail Property, until the Allowed Class 1(d) Secured Claim is paid in full.  B of A shall retain its first priority lien on the Haywagon Trail Property.

If the arrearage required to be paid by the preceding paragraph is not paid timely, then B of A shall have relief from the automatic stay with no further notice, opportunity for objection or order required.

(e)   Upon the discharge of the Debtor pursuant to 11 U.S.C. § 1141(d), the treatment accorded in section 4.1 and section 5.1 of the Plan shall be in full and complete satisfaction and release of all claims held by the Holder of the Allowed Class 1 Secured Claim.

## ARTICLE V

## MEANS OF IMPLEMENTATION

## INTRODUCTION AND PLAN SUMMARY

The Plan of Reorganization of Michael D. Vick divides his assets and future earnings into three categories:  Retained Assets, Plan Assets, and Trust Assets.

The Debtor will be allowed to keep the "Retained Assets." They consist of a house with little equity, an automobile, his interest in a retirement plan, specific personal property and Abandoned Actions.

The "Plan Assets" consist of investment interests and property that can be liquidated over a short period of time. They will be liquidated by an independent company and used primarily for the payment of secured claims plus "administrative expenses" incurred during the reorganization period. (Administrative expenses are by law entitled to priority in payment over other unsecured claims if approved by the court.) Any left over proceeds of "Plan Assets" will be paid over to the trust described below.

The "Trust Assets" will be transferred to a Liquidating Trust established for the benefit of the unsecured creditors, including tax authorities. The trustee under the Liquidating Trust is an experienced asset manager who is unrelated to the Debtor. The Trust Assets are shielded from "administrative expenses." They are to be collected and liquidated over time solely for the benefit of unsecured creditors and Priority Income Tax Claims. The Trust Assets consist of excess Plan Assets that may become available after the Plan Assets are liquidated; a home owned by an investment partnership; a substantial share of the Debtor's future income; and the proceeds the Trust receives from liquidating legal claims the Debtor or his creditors have against third parties.

5.0    **Assets.** Upon the confirmation of the Plan, the Plan Agent and the Liquidating Trustee under the Liquidating Trust will be appointed to carry out the terms of the confirmed Plan.

5.0.1    <u>Transfer of Assets to Plan Agent</u>.  On the Effective Date, the Debtor shall convey to the Plan Agent the Plan Assets and all proceeds, interest, and other earnings generated from the Plan Assets.

5.0.2    <u>Transfer of Assets to Liquidating Trust</u>.  On the Effective Date, the Debtor shall convey to the Liquidating Trustee the Trust Assets, and all proceeds, interest, and other earnings generated from the Trust Assets.

**5.1**    **Plan Agent**.  The Plan Assets will be transferred to the Plan Agent, who shall liquidate the Plan Assets.

5.1.1.    <u>Disbursement of Net Proceeds</u>.  The Net Proceeds from the liquidation of the Plan Assets will be used to pay:  first, the Deficit due to the Non-Debtor Professionals as provided in section 2.2.1 of the Plan; second, $800,000 to the Debtor Professionals on account of their Allowed Administrative Expense Claims; and third, 50% of each subsequent dollar to the Debtor Professionals on account of their Allowed Administrative Expense Claims until paid, and 50% of each subsequent dollar to the Liquidating Trustee; and fourth, all remaining amounts after the Allowed Administrative Expense Claims of the Debtor Professionals have been paid.

5.1.2.    <u>Sale of Real Property</u>.  If not sold by the Effective Date, the Plan Agent shall continue the marketing of the Surry Farm, Darlington Run Property, the West Creek Property and the Carlas Hope Property.  The Plan Agent shall have the right to sell the properties, without order of the Bankruptcy Court, at a private sale or at auction, for a purchase price deemed adequate by the Plan Agent, free and clear of all liens and interests, which shall attach to the proceeds, subject to the rights of B of A set forth in Article 4.1 of the Plan.

5.1.3.  <u>Auction Procedures</u>.  In the event that any of the Surry Farm, Darlington Run Property, West Creek Property or Carlas Hope Property is sold at a public auction by the Plan Agent, the auction shall be conducted in the following manner:

(a)     For at least three successive weeks prior to the auction, the Plan Agent shall cause a notice of the auction sale to be published in a newspaper of daily circulation in the city or town where the property to be sold is located.  The sale shall be free and clear of all liens, claims, encumbrances, equities and interests, of any nature or kind, except for the B of A liens as set forth in Article 4.1.

(b)     The successful bidder at the sale shall be required to make a ten percent (10%) deposit to the Plan Agent, unless a Holder of a valid and unavoidable lien on such property is the successful bidder at the auction.  If a lien Holder of a valid and unavoidable lien on such property is the successful bidder, it shall only be required to make a deposit if its winning bid exceeds the amount of its credit bid under § 363(k) of the Bankruptcy Code.  In such case, the deposit shall be 10% of the difference between its winning bid and the credit bid.

The deposit shall be made in Cash or an official bank, certified or cashiers check drawn on and payable by a federally insured commercial bank (collectively, "Acceptable Funds").  It shall be delivered to the Plan Agent upon execution of the sales contract required by section 5.1.3(d) of the Plan.

If the highest bidder defaults under the sales contract, the Plan Agent will be entitled to keep the deposit as liquidated damages and shall deposit such funds into the Plan Agent's account, which shall thereafter be distributed pursuant to the terms of this Plan.

(c)     The successful bidder at the auction shall pay at closing all outstanding state and local taxes constituting a lien on the parcel(s), unpaid water and sewer charges and any other charges owed to any state or local governmental entity or unit, which are a lien or charge on the parcel(s) (collectively refereed to as the "Charges").  Bids submitted at the auction shall not include amounts due for the Charges.

(d)     Immediately following the auction, the highest bidder shall execute a sales contract in a form acceptable to the Plan Agent.  It may provide, among other things, that: (i) the closing of the sale shall occur no later than thirty days after the date of the auction; (ii) the closing shall not be conditioned upon financing by the purchaser; and (iii) time is of the essence with respect to the Closing.

(e)     Any transfers under this § 5.1 shall: (i) be exempt under any law imposing a stamp or similar tax pursuant to § 1146 of the Bankruptcy Code; and (ii) constitute a sale under §§ 105, 363(b), 363(f), 1123(b) (4) and 1129 of the Bankruptcy Code.

(f)     If the highest bidder is unable to close within the requisite time period, the Plan Agent shall contact the party with the next highest bid and enter into a sales contract for the amount of such bid.  The sales contract with the second highest bidder shall comply with § 5.1.2(d) of the Plan.

(g)     The Holder of a valid and unavoidable mortgage or lien on the property being auctioned (or its nominee, designee or assignee) shall have the right under § 363(k) of the Bankruptcy Code to credit bid at the auction up to the full amount of its Allowed Secured Claim.

(h)    The Plan Agent shall have the authority to execute all documents and instruments that are necessary for the closing of the sale of the properties.  His authority shall include, without limitation, the authority to execute deeds to the properties, and transfer tax returns and questionnaires, and such other and further documents and instruments as are necessary to effectuate the auction sale contemplated under the Plan.  The Debtor irrevocably makes and appoints the Plan Agent as Debtor's true and lawful attorney-in-fact with the sole authority to sign the name of the Debtor on any document or instrument and to take such other and further action as contemplated under this section 5.1.1 of the Plan.

5.1.4.  Pre-Emption of Auction Sale.

(a)    The Plan Agent shall give Holder of an Allowed Class 1 Claim and the Holder of an Allowed Class 2 Claim at least thirty (30) days notice of any proposed auction sale.

(b)    Notwithstanding any other provision in the Plan, at any time after October 1, 2009, the Holder of the Class 1 Claim may, but shall not be required to, demand that the Plan Agent conduct an auction sale of any property on which it has a lien and the Plan Agent shall promptly comply.

(c)    At any time prior to the tenth (10th) business day before any scheduled auction, the Holder of the Class 1 Claim may elect to pre-empt the auction sale by delivering written notice of such election to the Plan Agent.  In that event, at the option of the Holder of the Class 1 Claim, the Plan Agent shall either (i) deliver a special warranty deed to the parcel; or (ii) the Class 1 Creditor shall be free to foreclose under applicable state law.  If the Class 1 Creditor elects to receive a special warranty deed, the Class 1 Creditor shall be deemed to have waived any deficiency with respect to the obligation secured by such lien.

**5.2**     **Liquidating Trust.**   The key component of the Plan is the creation of a
Liquidating Trust.

5.2.1   Establishment of Liquidating Trust.

(a)     On the Effective Date, the Liquidating Trust shall be established and the
Liquidating Trustee shall assume his responsibilities hereunder.  The Liquidating Trust shall be
governed by, and operated in conformity with, the Liquidating Trust Agreement, the form of
which is attached as **Schedule C**.   The terms of the Liquidating Trust Agreement are
incorporated in the Plan in their entirety as if fully stated in the Plan.

(b)     On the Effective Date, the Creditors' Representative(s) shall be appointed
and shall assume the responsibilities of Creditors' Representative(s).   The Creditors'
Representative(s) shall not be a fiduciary or trustee of the Liquidating Trust, but shall be a
representative of Creditors of the Estate and shall have standing to pursue their rights and
remedies in the Bankruptcy Court or other forum on their behalf to protect their interests or to
enforce performance of the Plan.

**5.3**     **Debtor's Post-Confirmation Income Contributions.**   In order to enhance the
distribution to General Unsecured Creditors, the Reorganized Debtor has agreed to contribute
significant amounts of his future income to the Liquidating Trust, which will be distributed to the
Holders of Allowed Priority Income Tax Claims and Allowed General Unsecured Claims.

5.3.1   Contributions.

(a)     Unless the Liquidating Trustee elects otherwise as set forth in
section 5.3.1(b) of the Plan, in each year of the Payout Period, the Reorganized Debtor shall

make Post-Confirmation Income Contributions to the Liquidating Trust for the benefit of the

Holders of Allowed Class 3 Claims and Allowed Priority Income Tax Claims based upon the

following formula:

| Modified Gross Income | Contribution Percentage |
|---|---|
| $0 – 750,000 | 10% |
| $750,001 – $2,500,000 | 25% |
| $2,501,001 – $10,000,000 | 30% |
| Above $10,000,001 | 40% |

The foregoing percentages apply in each applicable year, and shall not be aggregated from year

to year during the Payout Period.   **Schedule D** illustrates the division of the Reorganized

Debtor's future income under the Plan.

(b)     If the Reorganized Debtor receives a forfeitable signing bonus during the

Payout Period, then, for purposes of distribution to the Liquidating Trust, it shall be allocated

over the term of the contract in accordance with the forfeiture periods within the Payout Period.

The non-forfeitable portion of the signing bonus in each year of the Payout Period shall be

included in Modified Gross Income (the "Bonus Adjustment").

(c)     Notwithstanding section 5.3.1(a), the Liquidating Trustee may elect to

receive payments for the 2009-2014 calendar years pursuant to the formula set forth above,

instead of receiving payments for the 2010-2015 calendar years.  The Liquidating Trustee shall

make his election, in writing, prior to January 31, 2010.  If he makes the election, then the

Reorganized Debtor's obligations under sections 5.3.1, 5.3.2 and 5.3.3 of the Plan, the

Termination Date and the Tail Period shall all occur and/or terminate one year earlier.  The

# EXHIBIT D

## EXHIBIT D

The Plan shall be modified in the following respects:

1.     Section 5.0.2 of the Plan is amended to add the following clause at the end of the sentence:

> "plus the cash sum of $100,000."

2.     Section 1.53(b)(ii) of the Plan is amended to add the following parenthetical after the word "insider" in the fourth line:

> "(including, without limitation, retirement plans other than a plan or plans sponsored and administered through the Debtor's primary employer, the National Football League, or the NFL Players Association or any successor labor organization)"

3.     Section 6.1(a) of the Plan is amended to add the following clause after the words "tax returns" in the second line:

> "and forms, including estimated tax vouchers and 1099 information forms"

4.     Section 6.1 of the Plan is supplemented by the addition of the following paragraph:

> "(i) The Reorganized Debtor shall provide the Liquidating Trustee, at least annually, commencing January 30, 2010, a signed personal financial statement in a form customary for use by commercial banks, and shall provide such other financial information as the Liquidating Trustee shall reasonably request from time to time. The Liquidating Trustee shall keep said financial statements and other financial information in strict confidence and shall execute such confidentiality agreements as the Reorganized Debtor may reasonably request."

5.     Section 5.3.1(c) of the Plan is amended by replacing its last sentence with the following sentence:

> "The Reorganized Debtor shall provide the Liquidating Trustee all 1099 and W-2 Statements

and Forms K-1 for the immediately preceding calendar years by March 15th of each of the years 2010 through 2016 (and the years 2017 and 2018 if the Debtor is required to make Post-Confirmation Income Contributions during the Tail Period), or, if any expected W-2 Statements and Forms K-1 have not by then been received, a statement by the Reorganized Debtor's certified public accountant estimating the amounts that should appear when the W-2 Statements and Forms K-1 appear.

6.      Section 4.3 of the Plan is amended to add the following subsections:

(d)      Exhibit E to this Plan shall be incorporated herein by reference.

(e)      JEI shall have an Allowed Claim in Class 3 of the Plan in the amount of $6,000,000 for purposes of distribution under this Plan, which Allowed Claim shall not be subject to objection, subordination or avoidance by the Debtor, the Reorganized Debtor, the Plan Agent or the Liquidating Trustee.

(f)      JEI shall retain its alleged judgment lien on the real property located at 450 Alton Road, Unit #802, Miami Beach, Floprida (the "Miami Condo"), to enforce the alleged judgment lien against the Miami Condo and shall retain any recovery obtained as a result of such enforcement. The Net Recovery obtained by JEI from such enforcement shall reduce JEI's Allowed Class 3 Claim followed by a corresponding recalculation of distributions to the Holders of Class 3 Claims retroactively. "Net Recovery" shall mean the gross recovery less the expenses of recovery, including attorneys' fees.

7.      Section 1.37 of the Plan is amended to provide that the Effective Date shall be November 1, 2009.

::ODMA\PCDOCS\DOCSNFK\1539351\2

2

# EXHIBIT E

# MICHAEL VICK

# LIQUIDATING TRUST AGREEMENT

This Michael Vick Liquidating Trust Agreement (the "Trust Agreement") is made as of November 1, 2009, by and among (i) Michael D. Vick (the "Chapter 11 Debtor") in the chapter 11 bankruptcy cases docketed as <u>In re Michael D. Vick</u>, Case No. 08-50775 (the "Bankruptcy Case"), pending in the United States Bankruptcy Court for the Eastern District of Virginia (the "Bankruptcy Court"), (ii) the Official Committee of Unsecured Creditors (the "Official Committee") appointed in the Bankruptcy Case, and (iii) Joseph J. Luzinsky, as trustee under this Trust Agreement (the "MDV Trustee") and pursuant to and in accordance with the Chapter 11 Debtor's Third Amended Plan of Reorganization confirmed on August 27, 2009 (the "Plan").[*]

## RECITALS:

On July 8, 2008, a petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") was filed by the Chapter 11 Debtor;

On or about July 15, 2008, the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee");

On July 2, 2009, the Chapter 11 Debtor filed the Plan;

On September 27, 2009, the Bankruptcy Court entered an order confirming the Plan (the "Confirmation Order") (Docket No. ___);

---

[*]    All defined terms used herein shall have the meanings ascribed in the Plan unless otherwise defined in this Trust Agreement.

The Effective Date under the Plan is the date of this Trust Agreement;

The Plan provides for the creation of the Michael D. Vick Liquidating Trust (the "MDV Trust") to administer certain post-Effective Date responsibilities and exercise post-Effective Date rights under the Plan, with the powers, authority, responsibilities and duties of the MDV Trust to be set forth in and governed by this Trust Agreement for the benefit of holders of certain Allowed Claims who are the beneficiaries of the MDV Trust (the "Vested Beneficiaries"), with any residual assets to be held for and distributed to Michael D. Vick (the "Residual Beneficiary");

The Plan provides for, among other things, the distribution to the Vested Beneficiaries of the net receipts of the MDV Trust created hereby until performance of all Plan obligations, following which any remaining net receipts or properties shall be distributed to the Residual Beneficiary;

The MDV Trust is created pursuant to, and to effectuate, the Plan;

The MDV Trust is created primarily on behalf of, and for the sole benefit of, the beneficiaries;

The MDV Trust is intended to qualify as a liquidating trust that is treated as a "grantor trust" for federal income tax purposes and the MDV Trust shall operate and be maintained in accordance with sections 1.671-4(a) and 301.7701-4(d) of the Treasury regulations (the "Treasury Regulations") promulgated under the Internal Revenue Code of 1986, as amended (the "Internal Revenue Code"), and all subsequent guidelines or revised, amended or substitute

Treasury Regulations regarding liquidating trusts issued by the United States Treasury Department and/or Internal Revenue Service (the "IRS"); and

Unless defined in this Trust Agreement, capitalized terms used herein shall have the respective meanings assigned to such terms in the Plan.

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements contained herein and in the Plan, the Chapter 11 Debtor, the Official Committee and the MDV Trustee hereby agree as follows:

## ARTICLE I

## THE MDV TRUSTEE

1.1   **Appointment**.  Joseph J. Luzinski is hereby appointed, pursuant to the Plan and the Confirmation Order and this Trust Agreement, to serve as the MDV Trustee under the Plan, and hereby accepts such appointment and agrees to serve in such capacity, effective upon the Effective Date of the Plan.  A successor MDV Trustee shall be appointed as set forth in Article V hereof in the event that the MDV Trustee is removed, resigns or otherwise vacates the position.

1.2   **Generally**.  The MDV Trustee shall be the representative of the MDV Trust.  The MDV Trustee shall be responsible for administering the Trust Assets and shall have the power and authority to hold, manage and distribute the Trust Assets.  The MDV Trustee's powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the purposes of the Plan and this Trust Agreement.  The MDV Trustee shall have the power to bind the MDV Trust subject only to the limitations expressly set forth herein.  The MDV Trustee shall for all purposes hereunder be acting solely in his capacity as the MDV Trustee and not individually.

1.3    **Powers of the MDV Trustee**.  The MDV Trustee is authorized to perform any and all acts necessary or desirable to accomplish the purposes of this Trust Agreement and the Plan.  Without limitation, the MDV Trustee shall be expressly empowered to, but shall not be required to:

(a)    hold legal title to the Trust Assets and any and all rights of the Beneficiaries in or arising from the Trust Assets;

(b)    together with the Plan Agent, exercise the powers and assert the rights of a trustee under the Bankruptcy Code, including, without limitation, commencing, prosecuting or settling actions assigned to the MDV Trustee objecting to Claims, enforcing contracts, and asserting claims, defenses, offsets and privileges of the Chapter 11 Debtor or his estate, excepting only the Abandoned Actions;

(c)    manage, invest, supervise, protect, sell, transfer, assign, abandon or deal in any other manner with any of the Trust Assets as the MDV Trustee may deem advisable consistent with the terms of this Trust Agreement and the Plan;

(d)    protect and enforce the rights to the Trust Assets by any method deemed appropriate including, without limitation, by instituting or intervening in judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity;

(e)    liquidate the Trust Assets and effect the distribution of the net proceeds thereof to the Beneficiaries in accordance with the provisions of the Plan and this Trust Agreement;

(f)        borrow funds, incur or assume liabilities, and pledge any portion of the Trust Assets on behalf of the MDV Trust, in furtherance of or in connection with the MDV Trustee's or the MDV Trust's duties, powers, authority, and obligations under this Trust Agreement, and determine and satisfy any and all liabilities created, incurred or assumed by the MDV Trust;

(g)        file, if necessary, any and all tax and information returns with respect to the MDV Trust, and pay taxes, if any, properly payable by the MDV Trust;

(h)        make any tax election, settle or compromise any tax liability, consent to any claim or assessment relating to taxes or take any action consistent with the treatment of the MDV Trust as a "liquidating trust" within the meaning of Treasury Regulation section 30 1 .770 1-4(d);

(i)        request any appropriate tax determination with respect to the MDV Trust;

(j)        pay all expenses and make all other payments relating to the Trust Assets;

(k)        obtain appropriate insurance coverage with respect to his liabilities and obligations as MDV Trustee under this Trust Agreement (in the form of an errors and omissions policy or otherwise) and obtain appropriate insurance coverage, if any, with respect to real and personal property that may be part of the Trust Assets;

(l)        consistent with the terms of this Trust Agreement and the Plan, and subject to the provisions of Section 4.4 hereof, retain and pay such counsel and other professionals (including professionals which have been engaged in the Bankruptcy Case or with which the MDV Trustee is affiliated, so long as they hold no interest adverse to the Trust) as the MDV Trustee may select to assist him in his duties, on such terms, including contingency-fee

arrangements, as the MDV Trustee deems appropriate, without Bankruptcy Court approval.  The past or current retention of any professional by the Chapter 11 Debtor shall not be asserted by any party as a basis to disqualify such firm from being retained by the MDV Trustee and such professional shall not by that reason alone be disqualified from representing or otherwise serving the MDV Trustee solely because of its current or prior representation of the Committee, the Debtor, or any Creditor in the Bankruptcy Case; provided, however, that counsel representing the Chapter 11 Debtor shall not be employed by the MDV Trustee while engaged in any such representation;

(m)         retain and pay such non-professional persons (including a claims agent) as the MDV Trustee may deem necessary or appropriate to assist the MDV Trustee in carrying out his powers and duties under this Trust Agreement and the Plan;

(n)         compromise, adjust, arbitrate, settle, sue on or defend, pursue, prosecute, abandon, exercise rights, powers, and privileges with respect to, or otherwise deal with, actions assigned to the MDV Trustee, and defend actions against the MDV Trust, as the MDV Trustee shall deem advisable in his absolute and sole discretion;

(o)         object to any Claim, except for the Class 3 Claim of Joel Enterprises, Inc. filed in the Bankruptcy Case (including the exercise of offsets and counterclaims against any such Claims), prosecute such objections, continue the prosecution of any such objections filed by the Chapter 11 Debtor (excepting Abandoned Actions), take and defend appeals of any court orders as he may deem appropriate with respect to all such objections, join the Chapter 11 Debtor as co-plaintiff in any action or claim, and settle and compromise all such objections, subject to the provisions of Section 7.3.1 of the Plan regarding settlement of objections to Claims;

(p)         seek, by motion or otherwise, to estimate any unliquidated and/or disputed Claims as he may deem appropriate, continue the prosecution of any such motions filed by the Chapter 11 Debtor, take and defend appeals of any court orders as he may deem appropriate with respect to such motions, and settle and compromise such motions;

(q)         make interim (at least annual) and final distributions of Trust Assets to the beneficiaries as their interests appear;

(r)         take or refrain from taking any and all actions the MDV Trustee reasonably deems necessary or convenient for the continuation, protection and maximization of the Trust Assets, to carry out the purposes hereof and the Plan, and to enforce the provisions of the Plan;

(s)         to discount, viaticate, sell, redeem, or otherwise liquidate in such terms as the MDV Trustee deems reasonable any insurance policy, investment contract, annuity, instrument, obligation, claim, charge, or intangible asset;

(t)         to the extent required, file reports with the U.S. Trustee and pay fees and charges on distributions the MDV Trustee makes (unless the fees and charges previously have been paid) assessed pursuant to section 1930 of title 28 of the United States Code;

(u)         exercise in person or by proxy all voting rights and other incidents of ownership related to investments and securities; and

(v)         exercise all other powers, duties and rights granted to the MDV Trustee under this Trust Agreement or under the Plan or incidental thereto.

1.4    **Other Activities**.  The MDV Trustee shall be entitled to perform services for and be employed by Persons in matters unrelated to the Bankruptcy Case and his rights or duties

hereunder. The MDV Trustee may delegate the performance of services and the fulfillment of responsibilities to other Persons. Such other Persons shall be entitled to reasonable compensation and to be reimbursed for out of pocket expenses.

1.5    **Limitations on MDV Trustee's Powers**. The MDV Trustee shall not, and shall not be authorized to, engage in any trade or business with respect to the Trust Assets or any proceeds therefrom except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the MDV Trust and shall take such actions consistent with the prompt and orderly liquidation of the Trust Assets as are required by applicable law and consistent with the Plan and the treatment of the MDV Trust as a liquidating trust under Treasury Regulation 301.7701-4(d). For the avoidance of doubt, the parties recognize that the MDV Trustee is authorized to continue to operate the business investments and properties pending sale, and the parties regard those actions as reasonably necessary to, and consistent with, the liquidating purpose of the MDV Trust. The MDV Trustee shall not retain cash or cash equivalents in excess of a reasonable amount: to meet claims and contingent liabilities (including disputed claims) or to maintain the value of the assets during liquidation.

1.6    **Books and Records**. The MDV Trustee shall maintain the books and records relating to the Trust Assets and income of the MDV Trust and the payment of expenses of, and liabilities or claims against or assumed by, the MDV Trust in such detail and for such period of time as may be necessary to enable him to make full accounting in respect thereof. Except as provided in the Plan or this Trust Agreement, nothing herein requires the MDV Trustee to file any accounting or seek approval of any court with respect to the administration of the MDV Trust or as a condition for making any payment or distribution of the Trust Assets.

1.7     **Additional Powers**.  Except as otherwise set forth in this Trust Agreement and subject to the Treasury Regulations governing liquidating trusts and the retained jurisdiction of the Bankruptcy Court as provided for in the Plan and the Confirmation Order, but without prior or further authorization, the MDV Trustee may control and exercise authority over the Trust Assets and over the protection, conservation and disposition thereof.  No person dealing with the MDV Trust shall be obligated to inquire into the authority of the MDV Trustee in connection with the protection, conservation or disposition of the Trust Assets.

1.8     **Authorization to Expend MDV Trust Assets**.  The MDV Trustee may expend or reserve the assets of the MDV Trust as necessary (i) to meet contingent liabilities and to maintain the value of the assets of the MDV Trust, (ii) to pay administrative expenses of the MDV Trust (including, but not limited to, any taxes imposed upon the MDV Trust, compensation of the MDV Trustee or professionals employed by him or the Committee), (iii) to maintain reserves, (iv) to acquire Trust Assets at foreclosure, and (v) to satisfy other liabilities incurred or assumed by the MDV Trust (or to which its assets are otherwise subject) in accordance with this Trust Agreement or the Plan.

1.9     **Compensation of the MDV Trustee**.  The MDV Trust shall pay compensation for the services provided by the MDV Trustee at the hourly rate of $445 per hour for the balance of 2009, which rate shall increase by 5% over the prior year on January 1 of each year commencing on January 1, 2010.

1.10     **Reliance by MDV Trustee**.

(a)          The MDV Trustee may rely, and shall be protected in acting upon, any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or

other paper or document believed by him to be genuine and to have been signed or presented by the proper party or parties.

(b)     The MDV Trustee may consult with his legal counsel, financial or accounting advisors, and other professionals to be selected by him using his good faith judgment, and the MDV Trustee shall not be liable for any action reasonably taken or omitted to be taken by him in accordance with the advice thereof.

(c)     Persons dealing with the MDV Trust shall look only to the Trust Assets to satisfy any liability incurred by the MDV Trustee to such person in carrying out the terms of this Trust Agreement and the Plan, and neither the MDV Trustee nor any member of the Committee shall have any personal liability with respect thereto.

1.11    **No Bond**.  The MDV Trustee shall serve without bond.

1.12    **Investment and Safekeeping of Trust Assets**.  Subject to Section 1.5 hereof, cash held by the MDV Trustee on behalf of the MDV Trust shall be maintained in United States dollars or shall be invested by the MDV Trustee in (i) direct obligations of, or obligations guaranteed by, the United States of America, (ii) obligations of any agency or corporation which is or may hereafter be created by or pursuant to an act of Congress of the United States of America as an agency or instrumentality thereof, or (iii) such other obligations or instruments as may from time to time be permitted under Bankruptcy Code section 345 or as may have been authorized by an order of the Bankruptcy Court; provided, however, that the MDV Trustee may, to the extent necessary to implement the provisions of the Plan and facilitate his administration of the MDV Trust, deposit moneys in demand or time deposits at any banking institution or trust company having combined capital stock and surplus in excess of $100,000,000.00 based upon its

most recently available audited financial statements, regardless of whether such investments and deposits are insured.  Such investments shall mature in such amounts and at such times as the MDV Trustee shall deem appropriate to provide funds when needed to transfer funds or make distributions under the Plan.

1.13    **Termination**.  The appointment of the MDV Trustee shall terminate upon the termination of the MDV Trust as provided in Article IX hereof.

# ARTICLE II

# ESTABLISHMENT OF THE TRUST

2.1    **Establishment of the MDV Trust**.  The MDV Trust is hereby established and shall be governed pursuant to the terms of this Trust Agreement and the Plan.

2.2    **Transfer to Creditors Trust**.  All Trust Assets not distributed to the holders of Allowed Claims or the Plan Agent on or before the Effective Date shall automatically by operation of the Confirmation Order be transferred to the MDV Trust and shall vest in the MDV Trust free and clear of all Claims and Interests of Creditors and other Persons, except for the rights of the holders of Secured Claims in property securing such Claims, any rights or interests of the co-tenants in the co-tenant Properties or the net proceeds of sale thereof, and the rights to distribution afforded to Creditors under the Plan.  In consideration of these transfers, the MDV Trustee, as the representative of the MDV Trust, shall make the distributions required under the Plan in accordance with the terms of this Trust Agreement and the Plan.  After the Effective Date, the Debtor shall have no liability to Creditors or Interest holders other than as provided for in the Plan.

2.3    **Title to Assets**.  The transfer of the Trust Assets to the MDV Trust shall be made for the benefit of holders of Allowed Claims entitled to distribution under Section 5.2.3 of the Plan.  On the Effective Date, the title to all Trust Assets shall be transferred to the MDV Trust. For federal income tax purposes, all parties shall treat the transfer of the Trust Assets as a transfer to the holders of Vested Beneficiaries entitled to distribution under the Plan.

2.4    **Assignment to the MDV Trust of Creditor Causes of Action and Authority to Pursue Such Actions**.  On or after the Effective Date, any holder of a cause of action on account of a Claim ("Creditor Cause of Action") shall have the right, but not the obligation, to assign any and all right, title and interest in and to said Creditor Cause of Action to the MDV Trust.  The MDV Trustee shall be authorized to prosecute, settle, discontinue, reassign or otherwise resolve, in whole or in part, any such assigned Creditor Cause of Action in the exercise of his business judgment.  Any and all proceeds from recovery on any Creditor Cause of Action assigned to the MDV Trust shall be held by the MDV Trustee and distributed to Vested Beneficiaries in accordance with the terms of the Plan, subject to any agreement between the assignor and the MDV Trust made prior to the recovery.

2.5    **Incorporation of Plan**.  The Plan and the Confirmation Order are each hereby incorporated into this Trust Agreement and made a part hereof by reference; provided, however, to the extent that there is a conflict between the provisions of this Trust Agreement, the provisions of the Plan and/or the Confirmation Order, each such document shall have controlling effect in the following order:    (i) the Confirmation Order, (ii) the Plan, and (iii) the Trust Agreement.

2.6    **The Committee**.  A Committee (the "Committee") comprised of Royal Bank of Canada, Wachovia Bank, and the Atlanta Falcons Football Club shall serve hereunder.  The Committee shall operate in accordance with its by-laws as may from time to time be in effect (or as subsequently modified), including by-laws determining succession.   The Committee is authorized from and after the Effective Date to retain the services of such professionals as may be necessary and appropriate to assist the Committee, and the MDV Trustee may, subject to the provisions of Section 4.4 hereof, pay charges incurred after the Effective Date for the fees of such professionals.   The Committee shall be compensated at the rate of $500 per meeting, increasing 5% on January 1 of each year.

2.7    **Valuation of Assets**.  As soon as practicable after the Effective Date, the MDV Trustee shall conduct a good faith valuation of the Trust Assets and shall make such valuation available to the Beneficiaries by filing such valuation with the Bankruptcy Court promptly after its receipt.   The valuation report shall be used consistently by all parties (including both the Trustee and the Creditors) for federal income tax purposes.

2.8    **Conveyances**.  Attached as **Schedule A** is a list of assignments and instruments of transfer executed in furtherance of the Trust, but no such assignment or transfer shall be in derogation of the transfers provided for in the Plan except as expressly stated therein with specific reference to this Section 2.8.

## ARTICLE III

## BENEFICIARIES

3.1    **Identification of Vested Beneficiaries**.  In order to determine the actual names, addresses and tax identification numbers of the Vested Beneficiaries for any purpose under this

Trust Agreement or the Plan, the MDV Trust and the MDV Trustee shall be entitled to conclusively rely on the names, addresses and tax identification numbers set forth in the filed proofs of claim, a ballot submitted in connection with voting on the Plan or as specified by a Vested Beneficiary or its authorized agent in a request filed with the Bankruptcy Court or the MDV Trustee's designated claims agent.  In addition, the MDV Trustee may, but shall not be required, to request such information from the Vested Beneficiaries.  Each Vested Beneficiary's right to distribution from the MDV Trust is dependent upon the Vested Beneficiary's classification under the Plan and Vested Beneficiaries shall be required to update and advise the MDV Trustee (or his designated claims agent) as to any changes in such Vested Beneficiary's information.  All distributions by the MDV Trust shall be made in accordance with the terms of the Plan and this Trust Agreement.

## ARTICLE IV

## PURPOSE AND DISTRIBUTIONS

4.1    **Purpose of the MDV Trust**.  The MDV Trust is established for the primary purpose of liquidating the assets transferred to it, in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the MDV Trust.  Accordingly, the MDV Trust shall, in an expeditious but orderly manner, liquidate and convert to cash the Trust Assets, make timely (at least annual) distributions of net income (other than amounts reasonably necessary to maintain the value of assets or to meet claims and contingent liabilities (including disputed claims)) under the Plan and not unduly prolong the duration of the MDV Trust.  The liquidation of the MDV Trust may include the prosecution,

compromise and settlement, abandonment or dismissal of any or all claims, rights or causes of action, or otherwise.

4.2    **Resolution of the Trust Assets by the MDV Trustee**.

(a)        The MDV Trustee shall be empowered to and may take appropriate action with respect to the prosecution, settlement or other resolution of the Trust Assets, and the MDV Trustee shall deal with all collections and settlements within the normal course of his duties.

(b)        The MDV Trustee may, but is not required to, submit a proposed settlement to the Bankruptcy Court or such other court of competent jurisdiction for its approval; but in any event shall notify the Committee and Residual Beneficiary of its interest to settle any matter by providing a notice to each of (i) the controversy, and (ii) the proposed settlement.

4.3    **Distribution of Trust Assets and Withholding**. The MDV Trust shall distribute all Trust Assets, and any proceeds therefrom as follows:  (i) first, to pay all the costs and administrative expenses of the MDV Trust including, without limitation, the compensation of the MDV Trustee, reimbursement of expenses of the Committee and the fees and expenses of their professionals, and (ii) second, in accordance with the terms of the Plan.  Notwithstanding anything to the contrary in this Section, prior to making any distributions under the Plan, the MDV Trustee may retain such amounts (i) as are necessary to meet contingent liabilities and to maintain the value of the Trust Assets during liquidation, (ii) to pay estimated administrative expenses (including any taxes), and (iii) to satisfy other liabilities incurred or assumed by the MDV Trustee (or to which the Trust Assets is otherwise subject), all for the term of the MDV Trust and in accordance with this Trust Agreement and the Plan; provided, however, that, from the net amount distributable, the MDV Trustee shall reserve in accordance with the provisions of

Section 6.1 hereof, such amounts as would be distributable in respect of Disputed Claims (treating such claims as if they were Allowed Claims for reserve purposes). The MDV Trustee may withhold from amounts distributable to any Person any and all amounts determined, in the MDV Trustee's reasonable sole discretion, to be required by any law, regulation, rule, ruling, directive or other governmental requirement. Beneficiaries may be required, as a condition to receiving distributions, to provide such information and take such steps as the MDV Trustee may reasonably require to ensure compliance with the withholding and reporting requirements, and to enable the MDV Trustee to obtain certifications and information as may be necessary or appropriate to make such distributions or to satisfy the provisions of any tax or other law.

4.4     **Compensation of Professionals**.    Any professional employed by the MDV Trustee or the Committee may receive compensation and reimbursement of expenses for services rendered after the Effective Date on a monthly basis without an order of the Bankruptcy Court provided that (a) the professional serves its monthly fee statement on the MDV Trustee and the Committee, and (b) neither the MDV Trustee nor the Committee objects to such statement within 30 days. In the event that an objection to a fee statement cannot be resolved by the professional, the MDV Trustee and the Committee, the objection shall be presented on motion to the Bankruptcy Court for determination.

4.5     **De Minimis Distributions**.    No cash payment of less than five dollars ($5.00) shall be made to any holder of an Allowed Claim unless a request therefor is made in writing to the MDV Trustee.

4.6     **Manner of Distribution**.    Unless otherwise expressly provided herein, the MDV Trustee may establish a record date (the "Record Date"), which he deems after consultation with

the Committee to be practical for determining the holders of beneficial interests in the MDV

Trust for a particular purpose including, without limitation, the making of distributions.  All

distributions made by the MDV Trustee shall be payable to holders of Allowed Claims of record

as of the Record Date.  Any payment made by the MDV Trustee on behalf of the MDV Trust

may be made either by check or by wire transfer and shall be made only in United States dollars.

Prior to making any proposed distribution, the MDV Trustee may file with the Bankruptcy Court

and serve via first class United States mail on the Committee and the Beneficiaries a notice of

such proposed distribution requesting that any objections thereto be filed and served within 15

days of the date of the notice.

4.7    **Setoff**.  The MDV Trustee may, but shall not be required to, set off against any

Claim, and the payments to be made under this Trust Agreement and the Plan in respect of such

Claim, any claims of any nature whatsoever the MDV Trustee, the Debtors or their estates may

have against the holder thereof, but neither the failure to do so nor the allowance of any Claim

hereunder shall constitute a waiver or release of any such claim against such holder.

4.8    **Delivery of Distributions**.  Except as otherwise provided herein, distribution and

delivery to holders of any Allowed Claim shall be made using the names, addresses and tax

identification numbers set forth in the filed proofs of claim or as specified by a Beneficiary or its

authorized agent in a request filed with the Bankruptcy Court.

4.9    **Distribution of Unclaimed Trust Assets**.  Any distribution that is unclaimed

after six months following the date of distribution shall be cancelled and added to reserves

pending final distribution of Trust assets, and the Creditor otherwise entitled to such cancelled

distribution shall not be entitled to any further distributions under the Plan.

4.10    **Compliance with Tax Requirements/Allocation**.  To the extent applicable, the MDV Trust shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit (as that term is defined in section 101(27) of the Bankruptcy Code), and all distributions pursuant to this Trust Agreement and the Plan shall be subject to such withholding and reporting requirements.  For tax purposes, distributions received in respect of Allowed Claims will be allocated solely to the principal amount of such Claims.

4.11    **Compliance with Laws**.  Any and all distributions of Trust Assets shall be in compliance with applicable laws, including, but not limited to, applicable federal and state securities laws.

## ARTICLE V

## SUCCESSOR MDV TRUSTEE

5.1    **Removal**.  The MDV Trustee may only be removed for cause by order of the Bankruptcy Court after notice and a hearing.

5.2    **Resignation**.  The MDV Trustee may resign upon not less than ninety (90) days prior written notice thereof filed with the Bankruptcy Court.

5.3    **Acceptance of Appointment by Successor MDV Trustee**.  Any successor MDV Trustee shall be appointed by the Committee upon ten (10) days' prior written notice to the Residual Beneficiary or, if the Committee fails to timely appoint such successor, the Bankruptcy Court.  Any successor MDV Trustee shall execute a written instrument accepting such appointment which shall be filed with the Bankruptcy Court.  Thereupon, any successor MDV Trustee shall, without any further act, become vested with all the estates, properties, rights,

powers, trusts and duties of his predecessor in the MDV Trust with like effect as if originally named herein; provided, however, that a removed or resigning MDV Trustee shall, nevertheless, when requested in writing by the successor MDV Trustee, execute and deliver any instrument or instruments conveying and transferring to such successor MDV Trustee under the MDV Trust all the estates, properties, rights, powers, and trusts of such predecessor MDV Trustee.

## ARTICLE VI

## DISPUTED CLAIM RESERVE

6.1     **Disputed Claim Reserve**. The MDV Trustee shall maintain, in accordance with the MDV Trustee's powers and responsibilities under the Plan and this Trust Agreement, a reserve for any distributable amounts on account of Disputed Claims.

## ARTICLE VII

## REPORTING

7.1     **Reports**. As soon as practicable after the close of each calendar quarter after the Effective Date, the MDV Trustee shall file a report with the Bankruptcy Court covering such calendar quarter (i) itemizing the receipt and disposition of all Trust Assets by the MDV Trust, including all fees and expenses paid by or to the MDV Trustee during such prior quarter, (ii) listing all unresolved Disputed Claims and all Disputed Claims resolved in the prior quarter, and (iii) summarizing Trust Assets remaining to be collected, sold, liquidated or abandoned. The MDV Trustee may post any report required to be filed under this Section on a web site maintained by the MDV Trustee in lieu of actual notice to the Beneficiaries (unless otherwise required by law) subject to providing notice to the persons listed in Section 11.9 hereof.

**7.2**    **Federal Income Tax**.

(a)    **Grantor Trust Status**.  Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the issuance of applicable Treasury Regulations, the receipt by the MDV Trustee of a private letter ruling if the MDV Trustee requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the MDV Trustee), the MDV Trustee shall file returns for the MDV Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a).   In general, as a grantor trust, the Beneficiaries will be treated as the grantors and deemed owners of the MDV Trust.

(b)    **Allocations of MDV Trust Taxable Income**.   Subject to the provisions of Section 7.2(a) hereof, allocations of MDV Trust taxable income shall be determined by reference to the manner in which an amount of cash equal to such taxable income would be distributed (without regard to any restriction on distributions described herein) if, immediately prior to such deemed distribution, the MDV Trust had distributed all of its other assets (valued for this purpose at their tax book value) to Beneficiaries (treating any holder of a Disputed Claim, for this purpose, as a current Vested Beneficiary entitled to distributions), taking into account all prior and concurrent distributions from the MDV Trust (including all distributions held in reserve pending the resolution of Disputed Claims).   Similarly, taxable losses of the MDV Trust will be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the remaining Trust Assets.  The tax book value of the Trust Assets for this purpose shall equal its fair market value on the Effective Date or, if later, the date such assets were acquired by the MDV Trust, adjusted in either case in accordance with tax accounting principles prescribed by the Internal Revenue Code, the Treasury Regulations and other applicable administrative and judicial authorities and pronouncements.

(c)      **Current Taxation**.  All of the MDV Trust's income shall be treated as subject to tax on a current basis by the Beneficiaries.

7.3      **Other Reports**.  The MDV Trustee shall also file (or cause to be filed) any other statements, returns, or disclosures relating to the MDV Trust that are required by any Governmental Unit.

## ARTICLE VIII

## TRANSFER OF BENEFICIARY'S INTERESTS

8.1      **Transfer of a Beneficial Interest**.  The beneficial interests in the MDV Trust shall not be certificated and shall not be transferable, assigned, pledged or hypothecated, in whole or in part, except with respect to a transfer by will or under the laws of descent and distribution or otherwise by operation of law (a "Permitted Transfer"); provided, however, that any Permitted Transfer shall not be effective until and unless the MDV Trustee (or his designated claims agent) receives written notice of such Permitted Transfer and has been provided with evidence satisfactory to him in his sole discretion of the legal right of such transferee to such beneficial interest.  The MDV Trustee shall not be required to record any Permitted Transfer in favor of any transferee which, in the sole discretion of the MDV Trustee, is or might be construed to be ambiguous or to create uncertainty as to the holder of the interest in the MDV Trust.  Until a Permitted Transfer is in fact recorded on the books and records maintained by the MDV Trustee for the purpose of identifying Beneficiaries, the MDV Trustee, whether or not in the receipt of documents of transfer or other documents relating to the transfer, may nevertheless make distributions and send communications to Beneficiaries, as though he

had no notice of any such transfer, and in so doing the MDV Trustee shall be fully protected and incur no liability to any purported transferee or other entity.

## ARTICLE IX

## TERMINATION OF MDV TRUST

9.1    **Termination of MDV Trust**. The MDV Trust will terminate five (5) years after the Effective Date or within a reasonable period after final distribution is made under Section 5.2 of the Plan, whichever is earlier; provided, however, that on or prior to the date six (6) months prior to such termination, the Bankruptcy Court, upon motion by a party in interest, shall extend the term of the MDV Trust for a finite period if necessary for the liquidating purpose hereof. Multiple extensions may be obtained provided that Bankruptcy Court approval is obtained at least 6 months prior to the expiration of each extended term; provided, however, that the MDV Trust receives a favorable opinion of counsel or a favorable ruling from the IRS that any further extension would not adversely affect the status of the MDV Trust as a grantor trust for federal income tax purposes. The MDV Trustee shall not unduly prolong the duration of the MDV Trust and shall at all times endeavor to resolve, settle or otherwise dispose of any claims that constitute Trust Assets and to effect the distribution of the Trust Assets to the Beneficiaries in accordance with the terms hereof and terminate the MDV Trust as soon as practicable. Prior to and upon termination of the MDV Trust, the Trust Assets will be distributed to the Beneficiaries in accordance with their distribution rights under the Plan, subject to the provisions set forth herein. If any distributions of the MDV Trust are not duly claimed, such distributions will be disposed of in accordance with the Plan.

9.2    **Continuation of MDV Trust for Winding Up**.  After the termination of the MDV Trust and for the purpose of liquidating and winding up the affairs of the MDV Trust, the MDV Trustee shall continue to act as such until his duties have been performed.  Prior to the final distribution of all of the remaining assets of the MDV Trust, the MDV Trustee shall be entitled to reserve from such assets all amounts required to provide for his own costs and expenses, in accordance with Section 1.9 hereof, until such time as the winding up of the MDV Trust is completed.  Upon termination of the MDV Trust, the MDV Trustee shall retain for a period of two years the books, records, Beneficiary lists, and the other documents and files that have been delivered to or created by the MDV Trustee.  At the MDV Trustee's discretion, all of such records and documents may, but need not, be destroyed at any time after two years from the completion and winding up of the affairs of the MDV Trust.  Except as otherwise specifically provided herein, upon the termination of the MDV Trust, the MDV Trustee shall have no further duties or obligations hereunder.

9.3    **Termination of Committee**.   Upon termination of the MDV Trust, the Committee shall be dissolved and the members' duties and functions shall terminate.

## ARTICLE X

## AMENDMENT

10.1    **Amendment**.  Except for amendments that change the terms of the Chapter 11 Debtor's settlement with Joel Enterprises, Inc. any substantive provision of this Trust Agreement may be amended (a) by written amendment signed by the MDV Trustee, the chairman of the Committee, and the Residual Beneficiary, or (b) upon motion to and with the approval of the Bankruptcy Court.  Technical amendments to this Trust Agreement may be made, as necessary,

to clarify this Trust Agreement or enable the MDV Trustee to effectuate the terms of this Trust Agreement with the consent of the chairman of the Committee, with notice to the Residual Beneficiary. The foregoing notwithstanding, no change shall be made to this Trust Agreement that would adversely affect the federal income tax status of the MDV Trust as a grantor trust.

**ARTICLE XI**

**MISCELLANEOUS PROVISIONS**

11.1    **Intention of Parties to Establish Grantor Trust**.   This Trust Agreement is intended to create a grantor trust for United States federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as a grantor trust.

11.2    **Preservation of Privilege**.  In connection with any Trust Assets and all the rights, claims, and causes of action that constitute part of the Trust Assets, any attorney-client privilege, work-product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) shall vest in the MDV Trust and the MDV Trustee is authorized to take all necessary actions to effectuate the transfer, or the assertion or waiver, of such privileges.

11.3    **Confidentiality**.  The MDV Trustee, his employees, the Committee, its members and any employees or professionals hired by such parties shall hold strictly confidential and not use for personal gain any material, non-public information of which they have become aware in their capacity as the MDV Trustee, the Committee or as employees or professionals thereof as the case may be; provided, however, that the MDV Trustee may in the exercise of his business judgment disclose such information and provided further that such information may be disclosed if (a) such disclosure is required under legal process by subpoena or other court order or other

applicable laws or regulations, and (b) reasonable notice of such required disclosure is provided to the MDV Trustee, the Reorganized Debtor, and the Committee so that the MDV Trustee, the Reorganized Debtor, or the Committee, as applicable, has sufficient time to object to or prevent such disclosure through judicial or other means.

11.4    **Liability of the MDV Trustee and the Committee**.  The MDV Trustee, the Committee and members thereof (in their capacity as such, and specifically excluding any member of the Committee as a vendor of, or in similar relationship or capacity to, the Chapter 11 Debtor or the MDV Trustee), and each of their respective officers, directors, employees, representatives, counsel, financial advisors, and agents, shall not have or incur any liability to any person for any act taken or omission occurring on or after the Effective Date in connection with or related to the MDV Trust or the Bankruptcy Case, including but not limited to any distributions made pursuant to this Trust Agreement and the Plan except for acts constituting willful misconduct, gross negligence or breach of fiduciary duty, and in all respects such parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under this Trust Agreement and the Plan; the MDV Trustee shall have no liability to any Beneficiary of the Trust for any action or omission arising from his good faith belief he was acting in the best interests of the Vested Beneficiaries and the Residual Beneficiary at such time he becomes entitled to distributions under the MDV Trust.

11.5    **Indemnification**.  The MDV Trust shall indemnify, defend and hold harmless the MDV Trustee, the Committee and members thereof (solely in their capacity as such) and each of their respective employees, representatives, counsel, financial advisors, and agents, from and against any and all claims, causes of action, liabilities, losses, damages and expenses (including attorneys fees and expenses) to the fullest extent permitted by applicable law, other than to the

extent determined by a Final Order of a court of competent jurisdiction to be solely due to their own respective gross negligence, willful misconduct, or criminal conduct.

11.6   **Choice of Law**.  This Trust Agreement shall be governed by and construed in accordance with the laws of the State of Virginia, without giving effect to rules governing the conflict of law.

11.7   **Choice of Forum**.  Any disputes or other issues regarding this Trust Agreement or the administration of the MDV Trust or the actions of the MDV Trustee shall be determined by the Bankruptcy Court.

11.8   **Severability**.  If any provision of this Trust Agreement or the application thereof to any Person or circumstance shall be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Agreement, or the application of such provision to Persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.  JEI shall not be bound if any term of the settlement agreement or term of the Plan is severed.

11.9   **Notice**.  Any notice required or permitted to be provided under this Trust Agreement shall be in writing and served by either (1) certified mail, return receipt requested, postage prepaid, (2) hand delivery, or (3) reputable overnight delivery service, delivery prepaid, to be addressed as follows:

If to the MDV Trust or the MDV Trustee:

Joseph J. Luzinski
Development Specialists, Inc.

200 South Biscayne Boulevard, Suite 1818
Miami, Florida 33131
Tele:   (305) 374-2717, EXT 1429
Fax:    (305) 374-2718
E-mail:jluzinski@dsi.biz

with a copy to:

_____

_____

_____

_____

_____

and a copy to (or if to the Committee):

_____

_____

_____

_____

and a copy to (or if to the Residual Beneficiary):

Paul K. Campsen, Esq.
Kaufman & Canoles
150 West Main Street, Suite 2100
Norfolk, VA 23510
Tele:   (757) 624-3253
Fax:    (757) 624-3169
E-mail: pkcampsen@kaufcan.com

11.10  **Notice to Beneficiaries**. Except as provided in Section 7.1 hereof, any notice or

other communication hereunder to a Beneficiary shall be deemed to have been sufficiently given,

for all purposes, if deposited, postage prepaid, in a post office or letter box (i) in the case of Vested Beneficiaries, addressed using the names and addresses set forth in such Vested Beneficiary's filed proof of claim or as specified by such Vested Beneficiary or its authorized agent in a request filed with the Bankruptcy Court or the MDV Trustee's designated claims agent, and (ii) in the case of the Residual Beneficiary, to the address specified by him from time to time by written notice to the MDV Trustee.

11.11  **Counterparts**.  This Trust Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original instrument, but all together shall constitute one agreement.

11.12  **Entire Agreement**.  This Trust Agreement (including the Recitals), the Plan and the Confirmation Order constitute the entire agreement by and among the parties hereto and no party hereto has made any representations, warranties, covenants or obligations except as set forth herein or therein.  This Trust Agreement, the Plan and the Confirmation Order supersede all prior and contemporaneous agreements, understandings, negotiations, and discussions, written or oral, of the parties hereto, relating to any transaction contemplated hereunder.

11.13  **Headings**.  The section headings contained in this Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Agreement or of any term or provision hereof.

IN WITNESS WHEREOF, the parties hereto have executed and acknowledged this Trust Agreement or caused it to be executed and acknowledged on their behalf by their duly authorized officers as of the date first above written.

_/s/ Michael D. Vick_____

Michael D. Vick


_/s/ Joseph J. Luzinski, MDV Trustee_____

Joseph J. Luzinski, MDV Trustee


Official Committee of Unsecured Creditors


By:     _/s/_____,Chairman___
        Chairman of the Committee and not individually


::ODMA\PCDOCS\DOCSNFK\1492244\4

# EXHIBIT F

## EXHIBIT F

Pursuant to the Agreement of Old Point National Bank ("Old Point") and the Debtor and MV7, LLC ("MV7"), within which the Debtor claims a 100 percent ownership interest   not withstanding any other provision in the Debtor's Third Amended Chapter 11 Plan (the "Plan") to the contrary, the Plan is amended to treat Old Point's claims as set forth below.   To the extent that the Plan differs with this Amendment, the provisions of this Amendment will control the treatment of Old Point's claims against the Debtor and MV7, LLC, as follows:

1.  References to the Surry Farm property in Paragraphs 2.3.1, 5.1.2 and 5.1.3 of the Plan shall be deleted.  The Plan's treatment of the disposal of the Surry Farm property shall be amended to incorporate the provisions of the Consent Order entered on March 4, 2009 resolving Old Point's Motion for Relief, filed herein, related to the Surry Farm property.    A copy of the Consent Order is attached hereto and incorporated herein by reference.

2.  MV7 and/or the Debtor will transfer title and surrender to Old Point the 2007 Lincoln Navigator (the "Navigator"), VIN#SLMFU28557L102938 and the 2007 Land Rover (gray) (the "Land Rover"), VIN#SALMF13427A253175 within 30 days of August 27, 2009 to Old Point. To the extent that MV7 and/or the Debtor remain in possession of the Land Rover past September 1, 2009, the monthly payment for September 2009 and any subsequent month wherein MV7 and/or the Debtor remain in possession of the Land Rover, shall be paid to Old Point.  Old Point shall liquidate said vehicles and shall first apply the proceeds to the lien upon the Land Rover with any surplus proceeds going toward satisfaction of the MV7 deficiency claim.

3.  Paragraph Number 2 of Schedule A entitled *Non-Plan Personalty*, will be amended to add the following language:  "The Debtor shall be able to retain the 2008 Infinity Truck (the "Infinity"), VIN#5N3AA08C08N901516, subject to the granting of a purchase money security interest in the Infinity to Old Point and the execution and payment of a loan in the amount of $25,000.00 by the Debtor.  The Debtor shall execute the necessary loan documents and security agreement no later then September 28, 2009.  The loan shall be paid over five years in monthly payments amounts of $471.78 and bear interest at the rate of 5% per annum.  Monthly payments shall begin on November 1, 2009.

4.  All assets owned by MV7, LLC, or to which MV7, LLC subsequently acquires title, shall be subject to the claims of Old Point until all Old Point claims against MV7, LLC have been paid in full.  Upon payment in full of all of the claims of Old Point against MV7, LLC, the assets of MV7, LLC, excepting the Retained Assets, shall belong to the Liquidating Trustee.  Paragraph 5 of the Schedule B of the Plan entitled *Investments of the Debtor to be Turned Over* shall be amended to incorporate the language in the *Order Approving and Authorizing the Debtor to Enter into the Settlements Between the Debtor and the United States Department of Labor* (the "DOL") resolving the DOL's Civil Action in the U.S. District Court regarding MV7 Defined Benefit Pension Plan and the Limited Objection filed by Old Point to the terms of that settlement.  A copy of the Order entered by the U.S. Bankruptcy Court on September 10, 2009, as Docket No. 808, is incorporated herein by reference.

5. The second paragraph under Article V, MEANS OF IMPLEMENTATION, INTRODUCTION AND PLAN SUMMARY on page 28 of the Plan shall be amended to add the words: "subject to a purchase money security interest of Old Point" immediately following "an automobile".

::ODMA\PCDOCS\DOCSNFK\1541890\3

# EXHIBIT G

**MICHAEL D. VICK**
**PROPOSED ANNUAL BUDGETS**

AS OF 9/25/09

| | INITIAL BASE BUDGET | | BUDGET PROJECTED BY CALENDAR YEAR AS SHOWN | | | | | | | TOTAL FOR |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | MONTHLY | ANNUALIZED | YR '0' 2009 | YR '1' 2010 | YR '2' 2011 | YR '3' 2012 | YR '4' 2013 | YR '5' 2014 | YR '6' 2015 | YRS 1 TO 6 |
| **LIVING EXPENSES** | | | | | | | | | | |
| Philadelphia Expenses | | | | | | | | | | |
| Rent | 3,500 | 42,000 | 17,500 B | 42,560 B | 44,262 B | 46,038 B | 47,877 B | 49,795 B | 51,788 B | 282,320 |
| Utilities & miscellaneous | 750 | 9,000 | 3,000 | 9,000 | 9,600 | 9,600 | 10,000 | 11,000 | 11,500 | 60,900 |
| Apartment Set-up Costs | | | 10,000 | | | | | | | |
| Haywagon Property | | | | | | | | | | |
| Mortgage + Escrow | 3,712 | 44,544 | 11,136 | 44,544 | 45,144 B | 45,744 B | 46,344 B | 47,244 B | 48,144 B | 277,164 |
| Utilities | 800 | 9,600 | 3,200 | 9,600 | 9,600 | 9,800 | 10,000 | 11,000 | 11,500 | 61,500 |
| Miscellaneous | 486 | 5,832 | 2,000 | 6,000 | 6,000 | 6,000 | 7,000 | 7,000 | 7,000 | 39,000 |
| Living Expenses | 7,600 | 91,200 | 30,400 | 91,200 | 93,000 B | 95,000 B | 97,500 B | 100,000 B | 104,000 B | 580,700 |
| Private school - Jada / London | 1,355 | 16,260 | 16,260 | 17,000 B | 17,500 B | 18,000 B | 37,000 B | 38,000 B | 40,000 B | 167,500 |
| Automobile | 472 | 5,664 | 944 | 5,664 | 5,664 | 5,664 | 5,664 | 5,664 | 4,720 | 33,040 |
| Old Point note | 500 | 6,000 | 2,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 36,000 |
| Other costs | 3,000 | 36,000 | 9,000 | 36,000 | 36,000 | 36,000 | 40,000 | 40,000 | 40,000 | 228,000 |
| ameka Taylor for Mitez Vick | 325 | 3,900 | 975 | 3,900 | 3,900 | 3,900 | 3,900 | 3,900 | 3,900 | 23,400 |
| JS Trustee | 2,500 | 30,000 | 7,500 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 180,000 |
| tenda Bodie Vick | | | | | | | | | | |
| Held for 2010 until new earnings | | | 186,085 (A) | | | | | | | |
| **TOTAL BASE BUDGET** | 25,000 | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | 1,800,000 |
| ESCALATIONS (B) | 0 | 0 | 0 | 1,468 | 6,670 | 11,946 | 41,285 | 49,603 | 58,552 | 169,524 |
| **TOTAL CURRENT BUDGET** | 25,000 | 300,000 | 300,000 | 301,468 | 306,670 | 311,946 | 341,285 | 349,603 | 358,552 | 1,969,524 |
| **FEES / COMMISSIONS** | | | | | | | | | | |
| Joel Segal – NFL agent fee | n/a | 32,500 | 32,500 | 32,500 | 104,000 | 160,000 | 160,000 | 160,000 | 160,000 | 776,500 |
| Post-bankruptcy attorney and accounting fees | unknown | unknown | | unknown | unknown | unknown | unknown | unknown | unknown | |
| Other agent fees/commissions relating to marketing income | unknown | unknown | | unknown | unknown | unknown | unknown | unknown | unknown | |
| **TOTAL FEES / COMM.** | 0 | 32,500 | 32,500 | 32,500 | 104,000 | 160,000 | 160,000 | 160,000 | 160,000 | 776,500 |
| **ESCROW ACCOUNTS** | | | | | | | | | | |
| Effective Date | | | 210,000 | | | | | | | |
| Bank of America Cure | | | 56,000 | | | | | | | |
| DOL settlement | | | 180,000 | | | | | | | |
| Income Taxes | | | 650,000 | 1,322,500 | 2,162,500 | 2,162,500 | 2,162,500 | 2,162,500 | 2,162,500 | 12,135,000 |
| Unsecured Creditors | | | | 748,750 | 1,168,750 | 728,000 | | | | 2,645,500 |
| Ch. 11 Professional Fees | | | 114,500 (A) | 714,782 | 1,058,080 | 1,437,554 | 2,136,215 | 2,127,897 | 2,118,948 | 9,593,476 |
| M. Vick | | | 114,500 (A) | 2,080,000 | 3,200,000 | 3,200,000 | 3,200,000 | 3,200,000 | 3,200,000 | 18,080,000 |
| **TOTAL ESCROWS (C)** | | | 1,325,000 | 4,866,032 | 7,589,330 | 7,528,054 | 7,498,715 | 7,490,397 | 7,481,448 | 42,453,976 |
| **TOTAL MODIFIED AGI** | | | 1,625,000 | 5,200,000 | 8,000,000 | 8,000,000 | 8,000,000 | 8,000,000 | 8,000,000 | 45,200,000 |

**MICHAEL D. VICK**
**PROPOSED ANNUAL BUDGETS**

AS OF 9/25/09

FOOTNOTES:

(A)    Should the Liquidation Trustee select 2009 as Year 1, then no funds will be available for professionals and the funds held for 2010 will be reduced to $121,355. Funds for 2010 reflect that the earliest first salary payment will be March 2010.

(B)    The change in value for these items, base year versus current year, accumulate to the total escalations.

(C)    Escalations and extraordinary events will reduce the originally projected 50% of excess.