Brett M. Amron (FBN 148342)
Dana R. Quick (FBN 0074402)
Bast Amron LLP
One Southeast Third Avenue, Suite 1440
Miami, Florida 33131
Telephone: 305.379.7904

and

Michael A. Condyles  (VSB No. 27807)
Kimberly A. Pierro (VSB No. 71362)
Kutak Rock LLP
Bank of America Center
1111 East Main Street, Suite 800
Richmond, Virginia 23219
Telephone: (804) 644-1700
*Attorneys for 802 Icon, Inc.*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

In re:                                              Case No. 08-50775 (FJS)

MICHAEL VICK,                                       Chapter 11

            Debtor.

_____

**802 ICON, INC.'S MOTION FOR LIMITED RELIEF FROM ORDER
CONFIRMING THIRD AMENDED PLAN OF REORGANIZATION
AND FOR RELIEF FROM THE AUTOMATIC STAY**

802 Icon, Inc. ("802 Icon"), by and through undersigned counsel, files its Motion for

Limited Relief from the Order Confirming Third Amended Plan of Reorganization of Michael D.

Vick Dated July 2, 2009, as Modified (DE #821), only as it relates to the injunction set forth in

paragraph 16, and states as follows:

**PRELIMINARY STATEMENT**

802 Icon is compelled to file the instant motion because its rights were abrogated without

due process upon the entry of this Court's Order Confirming the Debtor's Third Amended Plan

of Reorganization.  Prior to the Petition Date 802 Icon purchased a condominium in Miami,

Florida from the Debtor.  The Debtor provided 802 Icon with a deed and affidavits that declared

there were no liens on the property.  This information was apparently false, a fact that 802 Icon

discovered when Joel Enterprises, Inc. ("JEI") recently brought an action in Florida state court to

enforce its lien against 802 Icon.  Although the Debtor brought an adversary proceeding in this

bankruptcy case to avoid JEI's lien on 802 Icon's real property, ultimately the settlement

between JEI and the Debtor allowed the lien to remain in place.  Apparently, part and parcel of

the settlement was the injunction incorporated into paragraph 16 of the Confirmation Order

which purports to preclude, without proper notice, any party, including 802 Icon, from asserting

claims against the Debtor relative to the Miami condominium and sale transaction.  Based on the

foregoing and as set forth herein, 802 Icon should be granted relief from the injunction in

paragraph 16 of the Confirmation Order.  Alternatively, the Court should determine that 802 Icon

is not bound by the Confirmation Order and injunction contained therein due to a lack of notice.

Finally, 802 Icon should be granted relief from the automatic stay to pursue its claim against the

Debtor in JEI's state court foreclosure proceeding.

## FACTS SUPPORTING RELIEF REQUESTED

### A.  JEI Obtains Judgment And Records Lien

1.      On April 28, 2008, JEI obtained a judgment against the Debtor in the amount of

$3,980,066.  Subsequently, on May 9, 2008, JEI recorded the judgment lien (the "Lien") against

real property owned by the Debtor located at 450 Alton Road, Unit #802, Miami Beach, Florida

(the "Miami Condo").  The Lien was recorded in the public records of Miami-Dade County,

Florida, in Book 26369 at Page 1365.

2.      Notice of the Lien was mailed to the Debtor at his temporary residence in

Leavenworth, Kansas upon recording.

**B.  The Debtor Sells The Miami Condo To 802 Icon**

3.       The Debtor sold the Miami Condo to 802 Icon for $1.1 million following arms length negotiations between the parties.  The Debtor provided 802 Icon with a full warranty deed (the "Deed"), which stated in part: "the grantor does hereby fully warrant the title to said land, and will defend the same against lawful claims of all persons whomsoever." The Deed was properly signed, witnessed, and notarized on June 17, 2008.  The Deed was subsequently recorded in the public records of Miami-Dade County, Florida on June 26, 2008, in Book 26451 at Page 3434.  A true and correct copy of the Deed is attached hereto at **Exhibit A**.

4.       In addition to the Deed, the Debtor provided 802 Icon with affidavits regarding the Real Property.  The Debtor executed an Affidavit of No Lien, dated June 9, 2008, in which he affied, among other things:

> 2.  That the [Real Property] is free and clear of all liens, taxes, encumbrances and claims of every kind, nature and description whatsoever, except for mortgage or mortgages, if any, described in the deed given between the parties named herein, and except for real estate and personal property taxes for the year 2008.
> …
> 8.  That this affidavit is made for the purpose of inducing 802 Icon, Inc., a Florida Corporation, to purchase said property from affiant(s): Michael D. Vick.
> …
> 10.  That no judgment or decree has been entered in any court of this state or the United States against said affiant(s), and which remain unsatisfied.
> …
> 12.  That there are no matters pending against the Seller that could give rise to a lien that would attach to the property between the date of the Commitment and the recording of the interest to be insured, and that the Seller has not and will not execute any instrument that would adversely affect the title or interest to be insured.

A true and correct copy of the Affidavit of No Lien is attached hereto at **Exhibit B**.

5.        The Debtor also provided 802 Icon with an Owner's Affidavit, dated June 9, 2008, in which he affied, among other things, that:

> 2.  There is no outstanding contract for the sale of the property to any person or persons whomsoever, nor any unrecorded deed, mortgage or other conveyances affecting the title to the [Real] Property.
>
> 3.  There are no liens, encumbrances, mortgages, claims, boundary or other disputes, demands or security interests in, on or against the [Real] Property or any goods, furnishings, appliances, fixtures or equipment now installed in or which are to be affixed to the [Real] Property; (except for mortgages described in the deed given by the undersigned); that there are no unpaid taxes, levies, assessments, paving liens or utility liens against the [Real] Property (other than real estate taxes for the current year).
>                                  …
>
> 5. There are no matters pending against Seller which could give rise to a lien that would attach to the [Real] Property during the period of time between the effective date of the title insurance commitment and the time of recording of the instruments evidencing the Buyer's fee simple or other interests in the [Real] Property; and that the Seller has not executed and will not execute any instrument that would adversely affect the title to the Property from the date of this Affidavit forward.
>
> 6.   There are no judgments, claims, disputes, demands or other matters pending against Seller that could attach to the [Real] Property. …
> Under penalties of perjury, I declare that I have examined this certification and to the best of my knowledge and belief it is true, correct and complete, and I further declare that I have authority to sign this document as or on behalf of the Seller, and that the number shown on this statement is Seller's correct TIN.
> Seller states that this instrument is given for the express purpose of inducing 802 Icon, Inc., a Florida Corporation, to purchase the [Real] Property and to cause Rojas & Stanham, L.L.P. as agents for Attorney's Title Insurance Fund, Inc. to insure title to said property.  This Affidavit is made under the full understanding of the law regarding liability for any misrepresentation herein.

A true and correct copy of the Owner's Affidavit is attached hereto at **Exhibit C**.

6.      However, despite the foregoing, the Debtor failed to disclose JEI's Lien, which would have been known to the Debtor at the time he signed the Deed and the Affidavits, and the Lien was not discovered by 802 Icon because it was recorded just prior to the sale.

**C.  The Debtor files for bankruptcy and seeks to avoid the JEI Lien.**

7.      On July 7, 2008, the Debtor, Michael D. Vick (the "Debtor"), filed his voluntary petition for relief under chapter 11 of title 11 of the United States Code.  The Debtor's sale of the Miami Condo to 802 Icon was properly disclosed on the Debtor's Statement of Financial Affairs. 802 Icon is not otherwise scheduled as a creditor of the Debtor, and was not noticed of these bankruptcy proceedings.

8.      In addition to the Miami Condo, JEI had apparently also recorded liens against other real property belonging to the Debtor, including:

(a)  21 Haywagon Trail, Hampton, VA on April 18, 2008;

(b)  5108 W. Creek Court, Suffolk, VA on April 18, 2008;

(c)  3720 W. Carlas Hope, Williamsburg, VA on April 22, 2008; and

(d)  2927 Darlington Run, Duluth, GA on May 13, 2008.

9.      As part of the bankruptcy proceedings, the Debtor commenced an adversary case to avoid the liens recorded against the Miami Condo and the real property listed in paragraph 8 above (collectively, the "Properties"), in the case styled *Michael D. Vick, v. Joel Enterprises, Inc.*, Adv. Case No. 08-05027, commenced on December 10, 2008 (the "Avoidance Action").

10.     The Debtor and JEI ultimately reached an agreement in the Avoidance Action, wherein JEI agreed to release the liens on the Properties, while being permitted to retain its lien on the Miami Condo (the "Settlement Agreement").  The Settlement Agreement also provided

JEI with immediate stay relief to pursue foreclosure of its Lien on the Miami Condo.  The Court

subsequently approved the Settlement Agreement with the following terms:

- JEI shall have an Allowed General Unsecured Claim (as defined in the Third Amended Plan filed on July 2, 2009) (such Claim not being subject to future objection, subordination or avoidance), solely for purposes of distribution under the confirmed plan, in the amount of $6.0 million, an increase of $1.4 million over the amount set forth in the JEI Claim.

- JEI shall vote the JEI Claim in the original amount of $4,602,064.20 in favor of the Third Amended Plan or any other plan that incorporates the terms of this settlement.

- JEI shall retain its lien rights in and to the alleged Judgment Lien on the Miami Condo, shall be granted relief from the automatic stay of Section 362 of the Bankruptcy Code to enforce the alleged Judgment Lien against the Miami Condo and shall retain any recovery obtained as a result of such enforcement.  The Net Recovery obtained by JEI from the enforcement of the alleged Judgment Lien against the Miami Condo shall reduce the JEI Claim (in the increased amount set forth in the preceding subparagraph) followed by a corresponding recalculation of distributions to General Unsecured Creditors retroactively. "Net Recovery" shall mean the gross recovery less the expenses of the recovery, including attorneys' fees.

- With the exception of the alleged Judgment Lien on the Miami Condo, JEI will disclaim, and there will be preserved for the benefit of the estate, the Judgment Liens on all real, personal, and intangible property of the Debtor.

- To offset the dilution to general unsecured creditors caused by the increase in the JEI Claim, the Debtor, in his forthcoming Third Amended Plan of Reorganization (which was since filed on July 2, 2009), shall increase his proposed post-confirmation income contributions to general unsecured creditors at each income level as follows: the Debtor will contribute 10% of the first $750,000; 25% of $750,001 to $2,500,000; 30% of $2,500,001 to $10,000,000; and 40% of amounts over $10,000,000.  The Debtor's post-confirmation income contributions shall be based on his Modified Gross Income as that term is defined in Section 1.53 of the Third Amended Plan filed on July 2, 2009.

- No claims shall be paid from the percentages of the Debtor's future income set forth in the preceding paragraph and the Governor's Pointe

Property (as defined below) other than claims of (a) general unsecured creditors and (b) priority income tax claims (if such priority income tax claims are not paid from Plan Assets [as defined in the Third Amended Plan] or another source).

- The Debtor shall not receive a discharge in his Chapter 11 bankruptcy proceeding upon confirmation of a plan or on the Effective Date of any plan confirmed.  Rather, the Debtor shall have leave after two (2) years after the Effective Date to seek a discharge pursuant to section 1141(d)(5)(B)(4), subject to the objection of parties in interest.  JEI shall not object to the Debtor's discharge solely on the basis that the Debtor has not completed his obligations under the confirmed plan. The Debtor's obligations under the confirmed plan shall not be dischargeable in a future bankruptcy proceeding.

- The Debtor shall convey, or cause the conveyance of the real property located at 232 Wentworth Court, Suffolk, Virginia (the "Governor's Pointe Property") to the Liquidating Trust under the confirmed plan.

- The Debtor and the Committee will dismiss APN 08-05027 with prejudice and with each party bearing its own costs.

- The terms of the confirmed plan shall not adversely affect any of the foregoing terms.

### D.  The Debtor's Plan And Disclosure Statement And Confirmation

11.    In the interim, the Debtor filed his Plan of Reorganization, followed by several amendments and modifications thereto.

12.    The Debtor's Plan of Reorganization (DE #226), filed and served on October 2, 2008, did not include treatment for or any mention of the lien on the Miami Condo.[1]

13.    The Debtor's First Amended Plan of Reorganization (DE #264) and Disclosure Statement to the First Amended Plan of Reorganization (DE #265), filed on November 12, 2008, also did not include  treatment for, or any mention of, the lien on the Miami Condo except for a brief reference to the fact that the Debtor had previously owned real property in Miami, Florida.

---

[1] It appears from a review of the Court docket that there was no Disclosure Statement filed that corresponded to the Plan of Reorganization.

However, the Disclosure Statement noted that the timing of the Debtor's bankruptcy filing was to avoid the judgment liens filed by JEI, and that the Debtor intended to commence an adversary proceeding to avoid the JEI judgment liens.   Under the proposed treatment of JEI's secured claims, the plan provided that, to the extent the claims were allowed, they would attach to the proceeds from the sale of the liened properties, and the remainder of the claim would be treated as a general unsecured claim.

14.    The Debtor's Second Amended Plan of Reorganization (DE #400) and the Disclosure Statement to the Second Amended Plan of Reorganization (DE #401), filed on January 5, 2009, did not include treatment for, or any mention of, the lien on the Miami Condo and contained the same language as the First Amended Plan of Reorganization.

15.    The Debtor's Modified Second Amended Plan of Reorganization (DE #463) and the Disclosure Statement to the Modified Second Amended Plan of Reorganization (DE #465), filed on January 29, 2009, did not include treatment for, or any mention of, the lien on the Miami Condo and contained the same language as the First Amended Plan of Reorganization.

16.    The Debtor's Second Modified Second Amended Plan of Reorganization (DE #480) and the Disclosure Statement to the Second Modified Second Amended Plan of Reorganization (DE #482), filed on February 11, 2009, did not include treatment for, or any mention of, the lien on the Miami Condo and contained the same language as the First Amended Plan of Reorganization.

17.    The Debtor's Third Modified Second Amended Plan of Reorganization (DE #508) and the Disclosure Statement to the Third Modified Second Amended Plan of Reorganization (DE #510), filed on March 4, 2009, did not include treatment for, or any mention

of, the lien on the Miami Condo and contained the same language as the First Amended Plan of Reorganization.

18.    On March 18, 2009, the Debtor filed a supplement to his Third Modified Second Amended Plan of Reorganization (DE #545), which provided no reference the lien on the Miami Condo.

19.    Thereafter, on April 3, 2009, the Court entered an order denying confirmation of the Debtor's Second Amended Plan of Reorganization (DE #612).

20.    The Debtor's Third Amended Plan of Reorganization (DE #702) and the Disclosure Statement to the Third Amended Plan of Reorganization (DE #703), filed on July 2, 2009, stated that, in accordance with the settlement agreement entered into between the Debtor and JEI, JEI would release all of its liens on all assets that were considered assets of the estate, and specifically allowed JEI to retain its lien on the Miami Condo. The "key terms" of the settlement were described in the disclosure statement as follows:

(i)    the amount of JEI's Allowed Claim will be grossed up to $6 million dollars, reflecting an increase of $1.4 million from JEI's filed proof of claim;

(ii)    JEI will retain its lien on the property located at 450 Alton Road, #802, Miami Beach, FL 33139 (the "Miami Condo"), which was sold prepetition subject to JEI's lien, and is not an Asset of the Debtor;

(iii)    the Debtor agreed to pay increasing percentages on a sliding scale from 10% to 40% of his Modified Gross Income, as defined in the Plan, from 2010 through 2015 to the Liquidating Trustee for the benefit of and distribution to all unsecured creditors;

(iv)    JEI will release all liens asserted on all Assets, including both real estate and personal property; and

(v)    the adversary proceeding objecting to the Debtor's discharge and preference action will be dismissed, with prejudice, with each party to bear its own costs and attorneys' fees.

21.    On July 28, 2009, the Debtor filed a motion under Bankruptcy Rule 9019 for approval of the Debtor's settlement agreement with JEI regarding the Avoidance Action (DE #738) (the "9019 Motion").    The terms of the settlement are described in more detail in paragraph 10 herein.

22.    The Debtor's Modified Third Amended Plan of Reorganization (DE #744) and the Disclosure Statement to the Third Amended Plan of Reorganization (DE #746), filed on July 30, 2009, stated that, in accordance with the settlement agreement entered into between the Debtor and JEI, JEI would release all of its liens on all assets that were considered assets of the estate, and specifically allowed JEI to retain its lien on the Miami Condo.    The modified disclosure statement reiterated the same settlement terms stated in paragraph 20 above.

23.    On August 2, 2009, the Court entered an order approving the Debtor's Disclosure Statement to the Modified Third Amended Plan of Reorganization (DE #749).

24.    Thereafter, on October 28, 2009, the Court confirmed the Debtor's Modified Third Amended Plan, as Modified (DE #821) (the "Confirmation Order").    Paragraph 16 of the Confirmation Order, provides the following language specifically related to the Miami Condo:

> **Injunctions; JEI Relief from Stay.**  The limited injunction provisions set forth in Article VIII of the Plan are approved in their entirety. Except to the extent otherwise provided in the Plan, from and after the Effective Date all persons who have held, hold or may hold Claims against in [*sic*.] the Debtor, ***except for JEI with respect to the property at 450 Alton Road, Unit #802, Miami Beach, Florida (the "Miami Condo"), as provided in Exhibit E to the Plan and Exhibit D to this Order,*** are permanently enjoined from taking any of the following actions against the Debtor on account of any such Claims: (a) commencing or continuing, in any manner or in any place, any action or other proceeding; (b) enforcing or attaching, collecting or recovering, in any manner, any judgment, award, decree or order; (c) creating, perfecting or enforcing any lien or encumbrance; (d) asserting a setoff, right or subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor; and (e)

> commencing or continuing, in any manner or in any place, any action
> that does not comply with or is inconsistent with the provisions of the
> Plan. JEI is hereby granted relief from the automatic stay of Section
> 362(a) of the Bankruptcy Code to enforce its alleged judgment lien
> against the Miami Condo in accordance with Exhibit E to the Plan and
> Exhibit D to this Order.

(*Emphasis added*).  The language highlighted above (hereinafter referred to as the "Injunction") was not included in any prior draft of the Plan or Disclosure statement, nor was the language included in the 9019 Motion.  The Confirmation Order appears to be the first time the Injunction appears anywhere on the Court's record.

25.    802 Icon never received notice of the Debtor's bankruptcy case or any actions taken therein.  Specifically, in addition to each of the Debtor's proposed plans and disclosure statements, 802 Icon did not receive notice of and was not provided an opportunity to be heard on the Confirmation Order and the Injunction contained therein.

**E.  JEI Files Suit To Enforce Lien**

26.    Subsequently, on February 25, 2010, JEI filed a verified complaint commencing an action against 802 Icon to foreclose its Lien on the Miami Condo, in the action styled *Joel Enterprises, Inc. v. 802 Icon, Inc.*, Case No. 10-12694 CA 10, currently pending in the Circuit Court of Miami-Dade County, Florida (the "Foreclosure Action").  JEI later filed a verified amended complaint, which removed allegations related to certain dismissed defendants.  A true and correct copy of the Verified Amended Complaint is attached hereto at **Exhibit D**.

27.    Both the initial and amended complaints are completely devoid of any reference to the bankruptcy case, Confirmation Order, Injunction, or settlement agreement with the Debtor.

28.    802 Icon first became aware that there was a potential Lien on the property following its review of the Foreclosure Action complaint.

29.     Upon notice of the Foreclosure Action, and pursuant to warranties granted in the Deed, 802 Icon turned its attention to the former owner, the Debtor, who had verified that there were no outstanding liens, mortgages, or encumbrances against the property, and who would be liable for damages upon discovery of such.   However, 802 Icon only then discovered that the Debtor had filed for bankruptcy protection.   A review of the extensive docket in the bankruptcy case revealed the Confirmation Order and the language that appears to be intended to preclude 802 Icon from proceeding with its claims against the Debtor, while allowing JEI to bring an action against the Debtor specifically related to the Miami Condo.

30.     The Confirmation Order effectively creates a bar order and channeling injunction terminating 802 Icon's rights, without prior notice to 802 Icon, but allows JEI the unfettered right to commence litigation against 802 Icon and others related to the Miami Condo.

31.     So that it may enforce its rights and properly defend itself against JEI's claims, 802 Icon seeks relief from Paragraph 16 of the Confirmation Order, titled "Injunction/JEI Relief from Stay," or a determination from this Court that it is not bound by the Order.

32.     In addition, 802 Icon seeks relief from the automatic stay in order to pursue its claims against the Debtor that relate to the Miami Condo, as JEI was granted such relief in the settlement agreement to pursue its lien against the Miami Condo.

## LEGAL ARGUMENT AND CITATION TO AUTHORITY

### A. The Confirmation Order Is Not Binding Upon 802 Icon Because The Necessary Elements Of Claim Preclusion Have Not Been Satisfied.

Pursuant to 11 U.S.C. § 1141(a), the confirmation of a plan of reorganization is generally considered res judicata.  Under the doctrine of res judicata, which encompasses both the ideals of issue preclusion and claim preclusion, once a plan of reorganization is confirmed neither the

debtor nor a creditor may assert rights inconsistent with the plan. *In re Varat Enter., Inc.*, 81

F.3d 1310, 1315 (4th Cir. 1996).

Claim preclusion occurs when the following conditions have been met:

> (1) The prior judgment was final on the merits, and rendered by a court of competent jurisdiction **in accordance with the requirements of due process**;
> (2) The parties are identical, or in privity, in the two actions; and
> (3) The claims in the second matter are based upon the same cause of action involved in the earlier proceeding.

*In re Varat Enter., Inc.*, 81 F.3d at 1316-1317 (emphasis added).   Additionally, courts in this

district have held that "the binding effect of confirmation is qualified by the requirement that

creditors be given clear notice before a plan can take away certain types of rights." *In re Huddle*,

Case No. 06-11076-SSM, 2007 WL 2332390, at *6 (Bankr. E.D. Va. Aug. 13, 2007).  *See also,*

*In re Weidel*, 208 B.R. 848, 850 (Bankr. M.D.N.C. 1997).

In order for the Confirmation Order to be binding, the party against whom it is sought to

be enforced must have been provided with proper notice.   "Notice" within the context of a

confirmation hearing is governed by Rule 2002(b) of the Bankruptcy Rules of Procedure, which

states:

> **Twenty-eight-day Notices to Parties in Interest.** Except as provided in subdivision (*l*) of this rule, the clerk, or some other person as the court may direct, shall give the debtor, the trustee, all creditors and indenture trustees not less than 28 days notice by mail of the time fixed (1) for filing objections and the hearing to consider approval of a disclosure statement or, under § 1125(f), to make a final determination whether the plan provides adequate information so that a separate disclosure statement is not necessary; and (2) for filing objections and the hearing to consider confirmation of a … chapter 11 … plan.

(Emphasis supplied).

Adequate notice is "[a]n elementary and fundamental requirement of due process in any

proceeding which is to be accorded finality." *Mullane v. Central Hanover Bank & Trust*, 339

U.S. 306 (1950).  Due process is, in fact, so paramount, that courts afford it protection above the preference usually provided to the finality of judgments. *In re Martin*, 427 B.R. 573, 578 (Bankr. W.D. Va. 2010).  For example, in *In re Deutchman*, 192 F.3d 457 (4th Cir. 1999), the Fourth Circuit was asked to look at the binding effect of a confirmed and completed chapter 13 plan upon the IRS.  The court found that the IRS had received actual notice of the bankruptcy, the plan, and the confirmation hearing.  Although the IRS indisputably knew of the confirmation hearing and had an opportunity to object to the plan, the Fourth Circuit held that the IRS did not have adequate notice as required by due process because the debtor did not sufficiently notify the IRS of the treatment of its claim.  Therefore, the Fourth Circuit held that despite the fact that the debtor had completed payments under the plan, the confirmation order could not be given preclusive effect due to the inadequate notice to the IRS.

Likewise, in the instant case, 802 Icon, who would otherwise have had the right to bring its claim against the Debtor based on the Deed and Affidavits, received less than adequate notice of the confirmation hearing – indeed it received ***no notice*** of ***any*** of the proceedings herein, including the confirmation hearing.  Therefore, the Confirmation Order cannot held to be res judicata against 802 Icon, and 802 Icon's right to assert defenses to JEI's state court claims and bring its claims against the Debtor, survive the entry of the Confirmation Order.

**B.  Injunctive Relief Is Not Appropriate Under The Circumstances.**

In order to obtain an injunction, a party must demonstrate:

(1) that it has suffered irreparable injury;
(2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury;
(3) that, considering the balance of hardship between the plaintiff and defendant, a remedy in equity is warranted; and
(4) that the public interest would not be disserved by a permanent injunction.

*Christopher Phelps & Assoc. v. Galloway*, 492 F.3d 532 (4th Cir. 2007) (*citing eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 390 (2006)).   In the instant case, neither the face of the Confirmation Order, nor facts of the case, provide any support for a finding that injunctive relief is appropriate.   The Debtor has not suffered irreparable injury.   In fact, he has suffered no injury.   Instead, the Debtor has caused injury to 802 Icon by providing 802 Icon with what appears to be a fraudulent Deed and Affidavits, then failing to notice 802 Icon of the bankruptcy at any point in the proceedings, and finally by causing entry of the Confirmation Order which purports to enjoin any party, save JEI, without notice and an opportunity to be heard from bringing any claims against the Debtor relative to the Miami Condo.   Further, whatever damages the Debtor may suffer are purely monetary.   The Debtor sold the Miami Condo and his interest has already been reduced to a liquidated value.   On the other hand, if JEI were to prevail in the Foreclosure Action 802 Icon could lose its interest in the Miami Condo, a unique parcel of real property, the funds it used to purchase the Miami Condo, and its right to bring a claim against the Debtor for the potential fraud committed regarding the Deed and Affidavits.   Clearly the hardship faced by 802 Icon in allowing the Injunction to stand outweighs whatever benefit it may provide or have provided to the Debtor.   Finally, public policy weighs in favor of striking down the Injunction, as allowing it to stand violates 802 Icon's due process rights.   Therefore, the Injunction as applied to 802 Icon is not warranted under law or equity.

### C.  Reconsideration Of The Confirmation Order Is Proper Under Rule 60.

Alternatively and in addition to the arguments raised above, Federal Rule of Civil Procedure 60(b)(1), made applicable to these proceedings by Bankruptcy Rule 9024, allows for reconsideration of the Confirmation Order. Rule 9024 allows such reconsideration when there is:

(1) mistake, inadvertence, surprise, or excusable neglect;
(2) newly discovered evidence;

(3) fraud, misrepresentation, or other misconduct of an adverse party;

(4) the judgment is void;

(5) a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or

(6) any other reason justifying relief from the operation of the judgment.

In addition to the foregoing, a motion for reconsideration must "be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken." Fed. R. Civ. Pro. 60(c)(1).

### *(1) Relief from the Confirmation Order is appropriate under Rule 60(b)(1)*

Although Rule 60(b)(1) is generally used to relieve a party of its own mistake, the similar "excusable neglect" standard, also used in Bankruptcy Rule 9006, has been applied to creditors who did not receive notice of the bankruptcy case. *Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd.*, 507 U.S. 380 (1993) (hereinafter "*Pioneer*"); *Dynamic Changes Hypnosis Center, Inc., v. PCH Holding, LLC*, 306 B.R. 800, 808 (E.D. Va. 2004) (hereinafter "*Dynamic Changes*"); *In re Nat'l Spa & Pool Institute*, 257 B.R. 784, 787 (Bankr. E.D. Va. 2001) (hereinafter "*National Pool*"). In assessing whether a party's actions constitute "excusable neglect," courts generally consider: the good faith of the claimant, the extent of the delay, and the danger of prejudice to the opposing party. *Pioneer*, 507 U.S. at 1497. In assessing the good faith of the party and the delay of its action, courts have considered the publicity of the bankruptcy case. *See, e.g., National Pool*, 257 B.R. at 788.

In the present case, the lack of notice to 802 Icon of the bankruptcy proceedings and Confirmation Order and, moreover, the adjudication of its rights in the bankruptcy case, was the reason for its failure to timely intervene in these proceedings. Unlike other cases, such as *National Pool*, in which the late-filing creditor was unknown to the debtor at the time notice of the bankruptcy could be given, in this case the Debtor and JEI knew of 802 Icon's existence and

its interest in the property but failed to provide 802 Icon with notice of the proceedings related to

the Miami Condo.  Further, while the Debtor's *criminal* legal proceedings are within the public

knowledge, his bankruptcy case has not been as widely publicized.  However, even if 802 Icon

was aware of the bankruptcy case through public reports, it would have had no reason to

investigate the proceedings for possible adjudication of its rights as it was unaware of JEI's Lien

on the property or the Debtor's efforts to obtain a *de facto* bar order.  Finally, both the Debtor

and JEI were aware that 802 Icon's rights were at stake and set to be compromised at several

points during the proceedings prior to the entry of the Confirmation Order, however they failed

to provide 802 Icon the notice that would have afforded it an opportunity to participate in the

proceedings prior to confirmation of the Plan.

### *(2) Relief from the Confirmation Order is appropriate under Rule 60(b)(4)*

Under Rule 60(b)(4), "a judgment is void only if the court that rendered it lacked

jurisdiction of the subject matter, or of the parties, or it acted in a manner inconsistent with due

process of law." *Carter v. Fenner*, 136 F.3d 1000, 1007 (5th Cir. 1998). *See also, Dynamic*

*Changes*, 306 B.R. at 809.  For purposes of Rule 60(b)(4), the violation of due process must rise

to the level of a violation of a party's Fifth Amendment rights to notice and an opportunity to be

heard when property interests are at stake. *Dusenbery v. U.S.*, 534 U.S. 161, 167 (2002). "Notice

is adequate for Fifth Amendment due process purposes if it is reasonably calculated, under all the

circumstances, to apprise interested parties of the pendency of the action and to afford them an

opportunity to present their objections." *Dynamic Changes*, 306 B.R. at 810 (*quoting Dusenbery*

*v. U.S.*, 534 U.S. at 168).

As previously stated, in the instant case 802 Icon received no notice of the pending

bankruptcy.  802 Icon was a <u>known</u> party that claimed an interest in the property and was entitled

under the Fifth Amendment to receive notice of the proceedings. *See, e.g., Wood v. CLC Corp. (In re CLC Corp.)*, 110 B.R. 335 (Bankr. M.D. Tenn. 1990) (creditor who did not file a claim or provide any notice to the debtor was not entitled to receive notice of a sale in accordance with 11 U.S.C. § 363). *See also, South Motor Co. of Dade County v. Carter-Pritchett-Hodges, Inc. (In re MMH Automotive Group, LLC)*, 385 B.R. 347 (Bankr. S.D. Fla. 2008) (billboard company with a recorded lease was entitled to receive notice of the sale of the property, because it did not receive notice and the property was sold, the leaseholder must be put in the same position it would have been in had it properly received notice).  The Debtor and JEI were aware that they were seeking to compromise 802 Icon's rights without notice to 802 Icon.  By failing to provide notice to 802 Icon of proceedings that affected its interest in the Miami Condo, thereby depriving 802 Icon of an opportunity to be heard, the Injunction contained in paragraph 16 of the Confirmation Order is void as to 802 Icon to the extent it deprives 802 Icon of its rights.

### (3) Relief from the Confirmation Order is appropriate under Rule 60(b)(3)

Rule 60(b)(3) allows a judgment to be set aside when it was procured through fraud on the court.  Not all fraud that may be committed during the course of a case will rise to the level of "fraud on the court."  Indeed, the standard is very high, and the claimant must demonstrate "corruption of the judicial process itself."  *Asterbadi v. Leitess*, Case No. 1:04CV286 JCC, 2004 WL 5154924, at *3 (E.D. Va. July 20, 2004) (*quoting Cleveland Demolition Co. v. Azcon Scraps Corp.*, 827 F.2d 984, 986 (4th Cir. 1987)).  While perjury alone is insufficient to give rise to a finding of fraud in the context of Rule 60(b)(3), the involvement of an attorney or officer of the court in a concerted "scheme to suborn perjury should certainly be considered fraud on the court." *Id.*

Here, it is clear from the Adversary Complaint that the parties realized there was another interested party in the matter, 802 Icon.  However, the Debtor and JEI decided to go forward without bringing that party into the litigation or, at a minimum, when the Injunction was put before the Court for consideration.  The Committee of Unsecured Creditors intervened in the Adversary and was ultimately the party that filed the motion to approve settlement, in which the Miami Condo Lien remained in place, while all of the Virginia Properties' Liens were avoided. The parties to the motion affirmed to the Court that the settlement was in the best interest of all creditors, without noting that the settlement was brokered on the back of one potential creditor, 802 Icon, who was not noticed on or represented in the proceedings.  The terms of the settlement agreement plus the Injunction were then incorporated into the Confirmation Order, without any notice that 802 Icon's rights were being abrogated.

### (4) Relief from the Confirmation Order is appropriate under Rule 60(b)(6)

Rule 60(b)(6) is the catch-all provision of Rule 60.  It allows a court to set aside a judgment or order to preserve justice, when none of the enumerated provisions appropriately apply to the situation.  In order to prevail under Rule 60(b)(6), a claimant must show that the circumstances were extraordinary.  *Clayton v. Ameriquest Mortgage Co.*, 331 B.R. 238 (M.D.N.C. 2005).  "Extraordinary" is precisely the word that would describe the circumstances here.

When taken in total, the facts of this case appear to show that the Debtor and its single largest creditor, JEI, set out on a course, whether intentionally or otherwise, to not only attempt to deprive 802 Icon of the property it purchased in good faith from the Debtor, but to then bar 802 Icon from seeking the avenues of recourse that might have otherwise been available to it during the bankruptcy case.  Effectively, if JEI prevails in the Foreclosure Action, 802 Icon may

be out not only the Miami Condo, but also the $1.1 million purchase price, while the rest of the

Debtor's creditors, those who were noticed of the bankruptcy, will share in any distributions

under the confirmed plan that they had an opportunity to review and consider.  The purpose of

Rule 60(b)(6) is to permit courts room to provide equity relief where needed and where

otherwise not enumerated in the rule.  Here, 802 Icon respectfully requests that the Court grant it

relief from the Injunction in the Confirmation Order that purports to bars its rightful claims,

while allowing protection to the parties that crafted it.

### D.  802 Icon Should Be Granted Relief From The Automatic Stay To Pursue Its Claims Against The Debtor Relative To The Miami Condo.

Pursuant to 11 U.S.C. § 362(a), upon the commencement of a bankruptcy case, the debtor

is granted an automatic stay of actions, including the "commencement or continuation … of a

judicial, administrative, or other action or proceeding against the debtor that was or could have

been commenced before the commencement of the case under this title, or to recover a claim

against the debtor that arose before the commencement of the [bankruptcy] case."  The automatic

stay is in effect until the earliest of:

> (1) closure of the case;
> (2) dismissal of the case; or
> (3) discharge of the Debtor.

11 U.S.C. § 362(c)(2).  Although it is unclear here whether 802 Icon's claim against the Debtor

arose prior to the commencement of the bankruptcy, in an abundance of caution, 802 Icon seeks

relief from the automatic stay to pursue its claim against the Debtor relative to the Miami Condo.

A court may grant stay relief under § 362(d)(1) "for cause."  Because "cause" is not

defined, courts generally have broad discretion to determine when stay relief is appropriate,

depending on the facts of the case.  *In re Mac Donald*, 755 F.2d 715, 717 (9th Cir. 1985).  The

Fourth Circuit has held that courts should consider the following factors when deciding whether

to grant relief from the automatic stay:

> (1) whether the issues in the pending litigation involve only state law,
> so the expertise of the bankruptcy court is unnecessary;
>
> (2) whether modifying the stay will promote judicial economy and
> whether there would be greater interference with the bankruptcy
> case if the stay were not lifted because matters would have to be
> litigated in bankruptcy court; and
>
> (3) whether the estate can be protected properly by a requirement that
> creditors seek enforcement of any judgment through the
> bankruptcy court.

*In re Robbins*, 964 F.2d 342, 345 (4th Cir. 1992).

JEI has commenced the Foreclosure Action against 802 Icon to enforce a judgment lien

that the Debtor failed to advise 802 Icon existed.  In fact, the Debtor swore under oath and

penalty of perjury that there were no liens or encumbrances upon the Miami Condo.  802 Icon

has a potential third party claim against the Debtor for fraud and fraud in the inducement arising

from the Deed and Affidavits.  Further, 802 Icon is not able to effectively defend itself in the

Foreclosure Action unless it can assert its claims against the Debtor and JEI.  Both the

Foreclosure Action, and the breach of warranty deed and fraud claims are state law claims,

which do not require the expertise of the Bankruptcy Court to resolve.  Indeed, allowing 802

Icon to pursue its claim in state court would promote judicial economy as the state court in

Florida is most familiar with the law governing the claims of both JEI and 802 Icon, and it is

where the subject property is located.  Finally, the bankruptcy estate would be properly protected

because 802 Icon is not bringing any claims it would not have otherwise asserted had it been

properly noticed of the bankruptcy proceeding.  Therefore, 802 Icon should be granted stay relief

to pursue its claims against the Debtor related to the Miami Condo.  In the alternative, 802 Icon

should be permitted limited relief from the automatic stay to liquidate its claim against the Debtor.

WHEREFORE, 802 Icon, Inc., respectfully requests this Court enter an order: (i) granting 802 Icon relief from the Injunction contained in paragraph 16 of the Confirmation Order; (ii) determining that 802 Icon is not bound by the Injunction contained in paragraph 16 of the Confirmation Order; (iii) granting 802 Icon relief from the automatic stay to pursue its claims against the Debtor relative to the Miami Condo; and (iv) granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Kimberly A. Pierro
Brett M. Amron (FBN 148342)
Dana R. Quick (FBN 0074402)
BAST AMRON LLP
One Southeast Third Avenue, Suite 1440
Miami, Florida 33131
Telephone: 305.379.7904
Facsimile: 305.379.7905
Email: bamron@bastamron.com
Email: dquick@bastamron.com

  *AND*

Michael A. Condyles  (VSB No. 27807)
Kimberly A. Pierro (VSB No. 71362)
KUTAK ROCK LLP
Bank of America Center
1111 East Main Street, Suite 800
Richmond, Virginia 23219
Telephone: (804) 644-1700
Facsimile: (804) 783-6192
Email: kimberly.pierro@kutakrock.com
*Attorneys for 802 Icon, Inc.*

## NOTICE OF MOTION

<u>Your rights may be affected</u>.  You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case.  (If you do not have an attorney, you may wish to consult one).  If you do not want the court to grant the relief sought in the Motion, or if you want the court to consider your views on the Motion, then you or your attorney must:

1.      File with the court, at the address shown below, a written response pursuant to Local Bankruptcy Rules 9013-1.  If you mail your response to the court for filing, you must mail it early enough so the court will receive it on or before the date stated above.

>       Clerk of the Court
>       United States Bankruptcy Court
>       600 Granby Street
>       Norfolk, Virginia 23510

2.      You must also mail a copy to:

>       Michael A. Condyles, Esquire
>       Kutak Rock LLP
>       1111 East Main Street, Suite 800
>       Richmond, Virginia 23219

3.      Attend the hearing to consider the Motion.  You will receive a separate notice of the hearing.  If you or your attorney do not take these steps, the Court may decide that you do not oppose the relief sought in the Motion and may enter an order granting that relief.

## CERTIFICATE OF SERVICE

Pursuant to the Local Rules, I hereby certify under penalty of perjury that on August 4, 2010, a true and exact copy of the foregoing Motion was served via this Court's electronic filing system or by first class mail with postage fully prepaid to the following necessary parties:

Michael V. Blumenthal, Esq.
Crowell & Moring LLP
590 Madison Avenue, 20th Floor
New York, NY 10022
and
Paul K. Campsen, Esq.
Kaufman & Canoles, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA 23510
*Counsel for the Debtor*

Ross C. Reeves, Esq.
Willcox & Savage, P.C.
One Commercial Place, Suite 1800
Norfolk, VA 23510
*Counsel for the Official Committee of Unsecured Creditors*

Kenneth N. Whitehurst, III, Esq.
Office of the U.S. Trustee
200 Granby Street, Rm 625
Norfolk, VA 23510

Benjamin C. Ackerly, Esq.
Hunton & Williams LLP
951 East Byrd Street
Richmond, VA 23219
and
Jennifer M. McLemore, Esq.
Christian & Barton, LLP
909 East Main Street, Suite 1200
Richmond, VA 23219
*Counsel for Joel Enterprises, Inc.*

/s/ Kimberly A. Pierro